## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WILLIAMS & CONNOLLY LLP,<br>680 Maine Ave S.W.,<br>Washington, DC 20024<br><br>        *Plaintiff*,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY,<br>245 Murray Lane, SW<br>Washington, DC 20528-0485<br><br>UNITED STATES CUSTOMS AND BORDER<br>PROTECTION,<br>1300 Pennsylvania Avenue, Suite 4.4-B<br>Washington, D.C. 20229<br><br>UNITED STATES IMMIGRATION AND<br>CUSTOMS ENFORCEMENT,<br>500 12th Street, S.W.,<br>Washington, D.C. 20536-5009<br><br>UNITED STATES CITIZENSHIP AND<br>IMMIGRATION SERVICES<br>5900 Capital Gateway Drive<br>Camp Springs, MD 20588-0009<br><br><br>        *Defendants*. | Case No. 24-2322 |

## <u>COMPLAINT</u>

1.     Williams & Connolly LLP ("Plaintiff") brings this action against Defendants

United States Department of Homeland Security ("DHS"), United States Customs and Border

Protection ("CBP"), United States Immigration and Customs Enforcement ("ICE"), and United

States Citizenship and Immigration Services ("USCIS"), under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory relief to compel compliance with the requirements of FOIA by immediately releasing improperly withheld records.  DHS has improperly withheld records responsive to Plaintiff's request for documents and communications relating to Reza Zarrab, an individual who has pleaded guilty to federal felonies in the Southern District of New York, *see United States v. Zarrab, et al.*, No. 15-867 (S.D.N.Y.), and Hüseyin Korkmaz, a fugitive from justice in the Republic of Türkiye who has publicly admitted to stealing Turkish law-enforcement materials and fraudulently obtaining a passport using a false identity.  Plaintiff respectfully requests that the Court compel DHS and its sub-agencies to comply with FOIA.

2.      Williams & Connolly LLP represents Türkiye Halk Bankası A.Ş. ("Halkbank") in ongoing proceedings in the Southern District of New York, *see* Case No. 15-867.  In those proceedings, Halkbank is alleged, among other things, to have conspired with Reza Zarrab to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705, 18 U.S.C. §§ 1344, § 1956(a)(2)(A).  Halkbank is also alleged to have conspired with Zarrab to defraud the United States in violation of 18 U.S.C. § 371.  *See* Case No. 15-867, ECF No. 562. These charges are based largely on documents stolen from Türkiye by former Turkish police officer—and now government witness—Hüseyin Korkmaz.  Halkbank has pleaded not guilty.

3.      Reza Zarrab has already pleaded guilty to seven counts, including conspiracy to impair governmental functions and operations of the U.S. Department of Treasury; conspiracy to violate IEEPA; bank fraud; conspiracy to commit bank fraud; money laundering; conspiracy to commit money laundering; and conspiracy to bribe a U.S. public official, and possession of contraband in a federal detention center.  He later provided seven days of widely publicized and detailed testimony admitting how he moved Iran's oil and gas proceeds held at Halkbank to

accounts he controlled in Dubai.  *See generally United States v. Atilla*, No. 15-867, ECF No. 400, 402–04, (S.D.N.Y.).  Hüseyin Korkmaz has admitted to stealing materials from Türkiye and smuggling them to the United States, lying to immigration authorities along the way.  *Id.* at ECF No. 420, Tr. 1791–92, 1796–97, 1800.

4.      This action seeks to compel the production of information related to any immigration benefits provided by DHS to Reza Zarrab and Hüseyin Korkmaz in exchange for their testimony, including any decisions to admit or permit them to remain in the United States.  This information is of immense interest to any member of the public interested in knowing what the federal government is doing and how it functions.

5.      Reza Zarrab's and Hüseyin Korkmaz's criminal and immigration histories are already well-known publicly and have been freely admitted by Zarrab and Korkmaz.[1]  What is not yet publicly known is whether DHS has provided these individuals favorable treatment in exchange for their testimony or whether DHS has acted negligently or otherwise improperly in performance of its statutory duties in admitting and allowing these individuals to remain in the United States.

6.      Beginning in August 2021, Plaintiff submitted FOIA requests to DHS and its sub-agencies, CBP, ICE, and USCIS, seeking information regarding Reza Zarrab and Hüseyin Korkmaz.  Plaintiff requested communications and records related to Reza Zarrab, Zarrab's known

---

[1] *See, e.g.*, Tom Stocks et al., '*The Government Is in on It': An Insider's Account of the Reza Zarrab Conspiracy*, Organized Crime & Corruption Reporting Project (Sept. 20, 2020) (OCCRP), https://www.occrp.org/en/the-fincen-files/the-government-is-in-on-it-an-insiders-account-of-the-reza-zarrab-conspiracy; Kelly Bloss et al., *Notorious Money Launderer Reza Zarrab's Lavish Life and New Business in Miami*, OCCRP (Dec. 7, 2021), https://www.occrp.org/en/how-iran-used-an-international-playboy-to-launder-oil-money/notorious-money-launderer-reza-zarrabs-lavish-life-and-new-business-in-miami; Benjamin Weiser, *Officer Said He Fled Turkey, Carrying Evidence of Corruption*, N.Y. Times (Dec. 11, 2017), https://www.nytimes.com/2017/12/11/world/europe/turkey-trial-zarrab.html.

associates, and several of Zarrab's companies.  Plaintiff also requested communications and records related to Hüseyin Korkmaz.  Plaintiff now brings this suit to compel compliance with the requirements of FOIA as it relates to all records related to Reza Zarrab and Hüseyin Korkmaz.

7.    Plaintiff has exhausted its administrative remedies and thus is entitled to seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.  The Court has authority to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.  The Court has personal jurisdiction over the parties.

9.    Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1) as a FOIA suit may be brought "in the District of Columbia."

## PARTIES

10.    Plaintiff Williams & Connolly LLP is a law firm located in Washington, D.C.  It is the requester of the withheld records via one of its research librarians.

11.    Defendant United States Department of Homeland Security ("DHS") is a federal agency as defined in FOIA.  *See* 5 U.S.C. § 552(f)(1).  DHS is headquartered in Washington, D.C., and has possession, custody, and control of records that Plaintiff seeks and is entitled to access.

12.    Defendant Customs and Border Patrol ("CBP") is a sub-agency of DHS responsible for border security.  U.S. CPB, About CBP, https://www.cbp.gov/about (last updated Apr. 9, 2024).

13.    Defendant Immigration and Customs Enforcement ("ICE") is a sub-agency of DHS and is responsible for criminal investigations and the enforcement of immigration laws.  U.S. DHS, About Us, https://www.ice.gov/mission (last updated May 9, 2024).

14.     Defendant United States Citizenship and Immigration Services ("USCIS") is a sub-agency of DHS responsible for adjudicating petitions and applications for certain immigration benefits.  USCIS, Mission and Core Values, https://www.uscis.gov/about-us/mission-and-core-values (last updated Feb. 2, 2024).

## BACKGROUND

### Reza Zarrab

15.     The first subject of Plaintiff's request is Reza Zarrab a/k/a Riza Zarrab, a/k/a Reza Sarraf, a/k/a Riza Sarraf; a/k/a Aaron Goldsmith, a/k/a Richard Ferrari, a citizen of Iran, Türkiye, and North Macedonia who was arrested in the United States in March 2016 for conspiring to violate IEEPA, among other crimes, by moving money for the Iranian government.  *See generally Atilla*, No. 15-867, ECF No. 400, 402–04.

16.     News of Zarrab's 2016 arrest—who by then was considered a celebrity in Türkiye and abroad given his opulent lifestyle and marriage to Ebru Gündeş, a Turkish pop star—was transmitted around the world.  *E.g.*, Larry Neumeister, *Feds Say Turkish Celebrity Who Faces Prison Is a Flight Risk*, AP News (May 25, 2016), https://apnews.com/5f7ece67a58e46cb87202bebe09fc69b; Nate Raymond, *U.S. Arrests Turkish Businessman Accused of Evading Iran Sanctions*, Reuters (Mar. 21, 2016), https://www.reuters.com/article/idUSKCN0WN295/.

17.     Zarrab eventually pleaded guilty to a series of federal crimes arising from his management of a money exchange business in Türkiye from 2010 to 2016.  *See generally Atilla*, No. 15-867, ECF No. 400, 402–04.  He pleaded guilty to seven crimes, including conspiracy to defraud the United States by impairing the Department of Treasury's enforcement of economic

sanctions against Iran, conspiracy to launder money, and conspiracy to violate IEEPA by moving money on behalf of the Iranian government through the United States financial system.

18.      Despite pleading guilty in 2017, nearly seven years later, Zarrab remains in the United States a free man living a life of opulence in Miami with access to the wealth he accumulated in violation of U.S. law.  *See* Kelly Bloss et al., *Notorious Money Launderer Reza Zarrab's Lavish Life and New Business in Miami*, OCCRP (Dec. 7, 2021), https://www.occrp.org/en/how-iran-used-an-international-playboy-to-launder-oil-money/ notorious-money-launderer-reza-zarrabs-lavish-life-and-new-business-in-miami.    How  U.S. authorities, and DHS specifically, have allowed a notorious money launderer who has violated U.S. law to remain in the United States despite his well-documented criminal history and guilty plea is unknown and should be known to the American public.

19.      In exchange for leniency, Zarrab agreed to, among other things, testify at any trial or other court proceedings as requested by the United States Attorney's Office for the Southern District of New York ("U.S. Attorney's Office").  Yet, although Zarrab's plea agreement is publicly available, any arrangement Zarrab reached with U.S. authorities regarding his immigration status is unknown.

20.      In accordance with his plea deal, Zarrab served as the U.S. Attorney's Office's star witness against Mehmet Hakan Atilla, former Deputy General Manager of Halkbank, in *United States v. Atilla*, No. 15-867.  In testimony that spanned nearly seven full days, Zarrab outlined in detail how he moved Iran's oil and gas proceeds held at Halkbank to accounts he controlled in Dubai.

21.      The trial, and Zarrab's testimony in particular, received extensive media coverage, not only in the United States but also in Türkiye and beyond.  Elif Key, *Reza Zarrab tanık*

*kürsüsünde: New York'taki adliyede neler yaşandı? [Reza Zarrab on the Witness Stand: What Happened in the New York Courthouse?]*, BBC News Turkey (Dec. 4, 2017), https://www.bbc.com/turkce/haberler-dunya-42218624.  Details regarding Zarrab's personal life, financial dealings, and criminal acts were disclosed by Zarrab himself, *see Atilla*, No. 15-867, ECF No. 400, 402–04, and news outlets were quick to fill in further details, *see, e.g.*, Benjamin Weiser, *Reza Zarrab, Turk at Center of Iran Sanctions Case, Is Helping Prosecution*, N.Y. Times (Nov. 28, 2017), https://www.nytimes.com/2017/11/28/world/europe/reza-zarrab-turkey-iran.html; Amanda Sloat, *Why Turkey Cares About the Trial of Reza Zarrab*, Brookings (Nov. 22, 2017), https://www.brookings.edu/articles/why-turkey-cares-about-the-trial-of-reza-zarrab/; *Reza Zarrab Case: Turkey Seizes Assets Of Trader in US Trial*, BBC (Dec. 1, 2017), https://www.bbc.com/news/world-europe-42203274; Dexter Filkins, *A Mysterious Case Involving Turkey, Iran, and Rudy Giuliani*, New Yorker (Apr. 14, 2017), https://www.newyorker.com/news/news-desk/a-mysterious-case-involving-turkey-iran-and-rudy-giuliani; Elif Key, *supra.*

22.     Years later, media coverage of Zarrab's schemes and lifestyle has not disappeared. OCCRP, *Frequently Asked Questions: Who is Reza Zarrab?*, OCCRP (Apr. 27, 2021), https://www.occrp.org/en/how-iran-used-an-international-playboy-to-launder-oil-money/frequently-asked-questions-who-is-reza-zarrab.  Media reports suggest that Zarrab still has access to, and employs, the very funds and networks he used to commit the crimes to which he pleaded guilty in order to maintain a life of luxury in Miami.  *See, e.g.*, Kelly Boss et al., *Money Launderer for Iran, Dubbed 'the Turkish Gatsby' Enjoys Lavish Life in Miami*, Mia. Herald (Apr. 5, 2023) https://www.miamiherald.com/news/local/community/broward/article256046312.html.

23.     DHS's denial of Plaintiff's FOIA requests as to Zarrab's immigration records proports to protect Zarrab's privacy interests, but Zarrab's high profile lifestyle and testimony has made him a public figure.  Zarrab's high-profile personal life is not only well documented in the media, but also well documented through Zarrab himself through his own personal social media posts.  As one article describes it:

> Today Zarrab is living the good life.  His picture for his WhatsApp account shows him prominently displaying a Richard Mille Swiss watch that sells for hundreds of thousands of dollars . . . .
>
> Zarrab's three-bedroom unit has been offered to rent at $10,000 per month in the past and is now listed for sale at $3.65 million.  Advertising by a Miami real estate agent shows multiple interior photos, including one in which a framed photo of Zarrab and his daughter is visible  . . . .
>
> Outside of the condo, much of Zarrab's Florida life revolves around horses . . .
>
> Zarrab has bought several horses in Florida, including Sonata MF, a sleek $300,000 show horse.  In August, photographs showed Zarrab ringside when Sonata MF won a dressage national championship in an arena not far from Chicago.
>
> Zarrab also is building a commercial stable complex in Davie.  Property records show that in September 2020 a newly formed company, Pegasus Equestrian Davie, Inc., bought the five-acre Twin Horse Farm for $1.2 million.
>
> Pegasus, recently renamed Next Level Performance Center, Inc., lists as president Aaron Goldsmith — Zarrab's government-approved alias . . . .
>
> Until recently, a sign at the entrance to the stables listed . . . Zarrab's own cell phone . . . .

*Id.*; *see also* Tom Stocks & Adam Klasfeld, *Reza Zarrab: the Money Launderer Who Wanted To Be Jacques Cousteau*, Courthouse News Serv. (Sept. 20, 2020), https://www.courthouse news.com/reza-zarrab-the-money-launderer-who-wanted-to-be-jacques-cousteau/.

24.     After Zarrab married Turkish pop star, A-list celebrity, and The Voice Turkey coach Ebru Gündeş, Zarrab built up a sizeable social media following, at one point maintaining over 45,800 followers on Instagram.  Such a marriage ensured Zarrab's notoriety as the couple constantly made the news.  *See, e.g.*, *Kocam bana Mars'ı da alacak [My Husband Will Also Buy Me Mars]*, Millyet (May 21, 2012), https://www.milliyet.com.tr/cadde/kocam-bana-mars-i-da-alacak-1542907.

25.     Even after his arrest, Zarrab has maintained a social media presence through his new company, the Next Level Performance Center:

a. An October 27, 2021 post by Zarrab, a/k/a Aaron Goldsmith, showcased his company:



Aaron Goldsmith, Facebook, https://www.facebook.com/aaron.goldsmith.735.

b.  A 2023 Instagram post by the Next Level Performance Center wished Zarrab a
    Happy Birthday:



Next Level Performance Center (@nlp.center), Instagram, https://www.instagram.com/
nlp.center/.

c.  A September 13, 2021 post by Zarrab's friend congratulated him:



Heather Reynolds, Facebook, https://www.facebook.com/HeatherReynoldsRacing.

26.     Just this June, Zarrab made headlines when claims arose that following his divorce from Ebru Gündeş, he married Turkish socialite Dilara Altintop. *Reza Zarrab ortaya çıktı: Bursalı sosyetikle evlendi [Reza Zarrab Emerged: He Married A Socialite From Bursa]*, ODA TV (June 17, 2024), https://www.odatv.com/magazin/reza-zarrab-evlendigi-iddia-edildi-dilara-altintopla-miamide-evlendigi-soyleniyor-120049107.  Zarrab quickly took to social media to rebut these rumors on his public Instagram account:



Translation:
Don't believe everything you read. Don't fall for everything that is said, I got bored, they didn't :)

One photo of 2 persons
From the back :))
Nothing more
you complete the rest

Translation:
FRANKLY SPEAKING, THEIR PROBLEMS IS THIS!!!!!
THEY ARE TRYING TO CREATE A PERCEPTION THAT WHEN MS. EBRU MARRIED SOMEONE I WOULD RETALIATE, THAT I RAN AND FOUND SOMEONE...

*Dilara Altıntop ile evlilik iddialarına Reza Zarrab'dan net cevap [A Clear Response from Reza Zarrab to the Allegations of Marriage with Dilara Altıntop]*, MauiKadin (June 18, 2024), https://www.mavikadin.com/reza-zarrabdan-evlilik-iddialarina-jet-cevap.

27.    That Zarrab is a noncitizen is similarly already known in the popular press.  First, Zarrab himself has publicly admitted that he is a noncitizen of the United States and rather a citizen of Türkiye, Iran, and North Macedonia.  *Atilla*, No. 15-867, ECF No. 400, 402–04.  Second, the

OCCRP has published a copy of Zarrab's Employment Authorization Card, a document issued only to non-citizens, which shows Zarrab's country of birth (Iran), the card's date of validity, and the card's date of expiry. OCCRP Team, *OCCRP ID: How Our Research Team Supports Investigative Journalists Around the World*, Medium (Jan. 21, 2022), https://medium.com/occrp-unreported/occrp-id-how-our-research-team-supports-investigative-journalists-around-the-world-3880192d937d. The document identifies Zarrab's name as Aaron Goldsmith. *Id.*; Boss et al., *supra.*

28.    The card also reveals that Zarrab was granted authorization to obtain employment in the United States under the category "C14," which corresponds with a grant of "deferred action," 8 C.F.R. § 274a.12(c)(14), a highly discretionary form of prosecutorial discretion or "a decision by an enforcement agency not to seek enforcement of a given statutory or regulatory violation for a limited period of time." *Arpaio v. Obama*, 27 F. Supp. 3d 185, 193 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015). "Deferred action does not confer any immigration or citizenship status or establish any enforceable legal right to remain in the United States and, consequently, may be canceled at any time." *Id.* Why DHS decided to exercise discretion and defer Zarrab's deportation from the United States, given his lengthy criminal history, and whether DHS has or intends to grant Zarrab some form of permanent immigration status notwithstanding the crimes he committed, are questions the American public deserves to have answered.

29.    Zarrab's plea agreement, which is available publicly, suggests that the United States Attorney's Office is in consultation with ICE:

> [T]his Agreement does not bind any federal, state, or local prosecuting authority other than this Office. This Office will, however, bring the cooperation of the defendant to the attention of other prosecuting offices, if requested by him. Nor does this Agreement bind the Bureau of Immigration and Customs Enforcement ("ICE"), although this Office will bring the

> cooperation of the defendant, as well as any safety concerns with
> respect to the defendant and his family, to the attention of ICE, if
> requested by him.

The American public has a right to know what those conversations entail.  Moreover, according to

the OCCRP, which obtained a copy of Zarrab's Employment Authorization Card, the card was

mailed to an FBI office in New York City, "show[ing] that authorities were helping Zarrab set up

a life in the United States as he continued to receive money from shady sources abroad."  OCCRP

Team, *OCCRP ID*, *supra*.  If Defendants have acted negligently or otherwise improperly in

allowing an admitted felon to live among the American public while other immigrants are deported

for much lesser offenses, the public has a strong interest in knowing that fact.

30.    The continued presence of a non-citizen who is an admitted felon in the United

States raises important questions as to whether DHS is enforcing U.S. immigration laws

consistently and impartially.  Noncitizens who have pleaded guilty to certain crimes are deemed

ineligible to remain in the United States.  8 U.S.C. § 1182.  The American public is entitled to

know why its government is departing from this common sense policy.

### **Hüseyin Korkmaz**

31.    The second subject of Plaintiff's FOIA request is Hüseyin Korkmaz, the former

deputy head of the Istanbul Police Financial Crime Department in Türkiye.  Information regarding

Korkmaz's identity and immigration status also are well documented.  Benjamin Weiser, *Officer

Said He Fled Turkey, Carrying Evidence of Corruption*, N.Y. Times (Dec. 11, 2017),

https://www.nytimes.com/2017/12/11/world/europe/turkey-trial-zarrab.html.    Korkmaz  is  a

citizen of Türkiye who also testified for the U.S. Attorney's Office against Mehmet Hakan Atilla,

Deputy General Manager of Halkbank, in. *Atilla*, No. 15-867.

15

32.     During his testimony, Korkmaz explained that he was responsible for the investigation into Reza Zarrab's illicit financial dealings in Türkiye.  Following this investigation, Korkmaz admitted to having stolen evidence from Türkiye and smuggled it to the United States, delivering it to law enforcement directly upon his arrival at the airport.  *Atilla*, No. 15-867, ECF No. 420, Tr. 1386, 1388.

33.     In order to get to the United States, Korkmaz testified that he hired a smuggler to leave Türkiye, traveled through a series of countries without authorization, and then lied to immigration authorities in an unknown country to obtain a passport with a fake name.  *See id.* at 1389–90.  Because he did not have a valid passport in his name prior to leaving Türkiye, Korkmaz was told by U.S. authorities that he could not travel to the United States.  *Atilla*, No. 15-867, ECF No. 420, Tr. 1383–84, 1389–90.  To circumvent these immigration rules, Korkmaz enlisted United States law enforcement, which helped him travel to and live in the United States despite not having a valid passport (and having lied to another country's authorities to obtain a passport).  *Id.* at 1391–92.  Korkmaz further testified that despite these issues, he received work authorization to obtain employment in the United States, which is a document issued only to noncitizens.  *Id.* at 1564.  Korkmaz's testimony was reported widely in the United States and abroad.  Weiser, *supra*; *Gülenist Korkmaz Confesses To Violating Turkish Law Multiple Times*, Daily Sabah (Dec. 14, 2017),      https://www.dailysabah.com/politics/2017/12/14/gulenist-korkmaz-confesses-to-violating-turkish-law-multiple-times.

34.     Americans—including immigrants who have either meticulously complied with DHS's requirements to obtain their immigration status or who have had their statuses revoked for doing much less than Korkmaz—have an interest in knowing if Defendants acted negligently or

otherwise improperly in allowing Korkmaz to enter the country and why it continues to allow him to remain in the country after he admitted to conduct that would be disqualifying for others.

## FACTUAL ALLEGATIONS

35.     This case arises out of Defendants' failure to comply with its obligations under FOIA.  Plaintiff requested records concerning Reza Zarrab and Hüseyin Korkmaz from three different DHS agencies, CBP, ICE, and USCIS, beginning in August 2021.  DHS has failed to provide Plaintiff with any of the records requested.

### FOIA Request to Customs and Border Protection

36.     On August 23, 2021, Plaintiff submitted a request for records under FOIA to DHS's Customs and Border Protection ("CBP").  Plaintiff requested several categories of records and communications, including records relating or referring to Reza Zarrab and Hüseyin Korkmaz.  *See* Ex. 1.

37.     CBP confirmed receipt and assigned it the reference number CBP-2021-097690.  *See* Ex. 2.

38.     A few days later on August 27, 2021, CBP closed the FOIA request with a form letter stating that because the request did not include authorization from the subject of record, it was reviewed as a third-party request and the information could not be released.  *See* Ex. 3.

39.     Plaintiff responded to CBP's denial of its request on October 19, 2021.  Plaintiff requested that CBP process its request and provide responsive documents notwithstanding Plaintiff's inability to provide written authorization by the subject of the records.  Plaintiff explained that, under DHS's regulations and FOIA, CBP was required to process its request and produce responsive documents even though it was unable to provide third-party consent.  *See* Ex. 4.

40.     A few weeks later, on November 2, 2021, CBP responded to Plaintiff's letter with the exact same form email it had previously received.  *See* Ex. 5.  The email again stated that the request was closed as insufficient because it was a third-party request without the individuals' written permission to release records.

41.     On January 19, 2022, Plaintiff appealed the denial of its FOIA request, arguing that the denial was erroneous because FOIA does not require consent for access to documents about a person or entity.[2]  *See* Ex. 6.

42.     On February 15, 2022, CBP acknowledged receipt of the appeal.  The appeal was assigned the reference number CBP-AP-2022-043757.  *See* Ex. 7.

43.     On February 23, 2022, CBP granted Plaintiff's appeal and remanded the request to CBP's FOIA Division for processing.  CBP concluded that the "FOIA Division should have substantively processed [Plaintiff's] request by searching for any responsive records and subsequently reviewing any identified records for releasability" rather than merely closing Plaintiff's request.  *See* Ex. 8.

44.     The following day, February 24, 2022, CBP asked Plaintiff to provide the dates of birth for those listed in the FOIA request and a more specific description of the businesses listed. That same day, CBP issued Plaintiff an invoice for $5,960.00 to conduct a search, which would take 146 hours.  *See* Ex. 9.

45.     On February 28, 2022, Plaintiff provided CBP with the requested dates of birth of the individuals listed in the FOIA request.  *See* Ex. 10.  Plaintiff also mailed full payment of the $5,960.00 requested.  *See* Ex. 11.

---

[2] Williams & Connolly had previously tried to appeal the decision by submitting an appeal via the DHS FOIA online link for initial requests on January 4, 2022, but was informed that the appeal could not be submitted there.

46.     On March 1, 2022, CBP informed Plaintiff that once payment was received, the search would begin but that CBP had a six-to eight-month backlog of requests.  CBP wrote to Plaintiff on two other occasions—April 22, 2022 and May 22, 2022—to advise that processing was pending due to a backlog of cases.

47.     On July 22, 2022, CBP informed Plaintiff that its request had reached the docket for processing, and that CBP "hope[d] to have an answer for [Plaintiff] on this case in the next two weeks."

48.     Nearly three months later, on October 4, 2022, Plaintiff received a denial of its FOIA request.  The denial outlined that a search of CBP databases had in fact "produced records responsive to [Plaintiff's] request" but all documents would be "withheld in full pursuant to Title 5 U.S.C. § 552 (b)(6), (b)(7)(C), and (b)(7)(E)," the privacy exemptions.  *See* Ex. 12.  Such exemptions prevent the disclosure of (i) information that, if disclosed, would invade an individual's privacy, (ii) law-enforcement information that, if disclosed, would invade an individual's privacy, and (iii) law-enforcement information that, if disclosed, would reveal investigative techniques, procedures, or guidelines.

49.     On December 28, 2022, Plaintiff appealed CBP's denial of its request and withholding of responsive documents.  It argued that documents were improperly withheld because the public's right to access these documents outweighed the privacy interest of those mentioned in the request.  *First*, Plaintiff explained that at least two individuals included in the original FOIA request are government witnesses in a public proceeding, *see Atilla*, No. 15-867, and therefore have diminished privacy interests under FOIA Exemption 6 and 7(C).  Reza Zarrab pleaded guilty to sanctions violations and bank fraud charges and Hüseyin Korkmaz is a fugitive from justice in the Republic of Türkiye who has publicly admitted to theft of materials belonging to the Turkish

government.  *Second*, Plaintiff argued that documents pertaining to these individuals were improperly withheld pursuant to Exemption 7(E) because it is hardly plausible that releasing any document that mentions the individuals in the request would reveal techniques and procedures for law enforcement investigations or implication concerns outlined in Exemption 7(E).  *Third*, Plaintiff contended that CBP failed to provide an adequate justification for invoking Exemption 7 given that it did not provide a response in the form of a *Vaughn* index, *see Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973), and CBP failed to produce all "reasonably segregable portion[s]" of the exempted documents, which do not fall within the scope of Exemption 7(E) rendering CBP's response inadequate, *see* Ex. 13.

50.    Nine months later, on September 26, 2023, CBP affirmed the FOIA Division's decision to withhold all responsive third-party records in full pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).  CBP outlined that "[t]he privacy consideration in this case is to protect CBP and other law enforcement employees from unnecessary 'harassment and annoyance in the conduct of their official duties and their private lives,' which could conceivably result from the public disclosure of their identities."  As it relates to third parties, CBP identified the privacy consideration as "to protect private persons or third-party individuals from 'unnecessary, unofficial questioning, harassment and stigmatization,' which could conceivably result from the public disclosure of their identities, and to protect their privacy interest in the avoidance of reprisals and embarrassment caused by being mentioned in law enforcement and investigative records and systems, as well as in keeping personal information private."  *See* Ex. 14.

### FOIA Request to Immigration and Customs Enforcement

51.    On October 19, 2021, Plaintiff submitted a request for records under FOIA to DHS. Plaintiff requested several categories of records and communications, including records regarding Reza Zarrab and Hüseyin Korkmaz.  *See* Ex. 15.

52.   On November 3, 2021, DHS sent Plaintiff a letter stating that due to the subject matter of its request, CBP transferred the request to ICE for processing.   *See* Ex. 16.

53.   On November 4, 2021, ICE acknowledged receipt of Plaintiff's request and assigned it the FOIA Case Number 2022-ICFO-01613.   *See* Ex. 17.

54.   On December 1, 2021, ICE sent Plaintiff what appeared to be a form letter, which indicated that it had considered Plaintiff's request but that no records responsive to the request had been located.   *See* Ex. 18.

55.   On January 4, 2022, Plaintiff appealed ICE's determination arguing that ICE failed to conduct an adequate search as to all individuals and entities listed in the request.   Plaintiff specified:

> As my request explained, I seek documents pertaining to individuals and entities associated with a sanctions evasion case in the Southern District of New York.  *See* Case No. 1:15-cr-00867- RMB; *see also* Attachment A.  One of the individuals mentioned in my letter— Reza Zarrab—has pleaded guilty to sanctions evasion.  *See* Attachment A.  The publicly available pleadings in that case strongly suggest that ICE possesses responsive documents.  Reza Zarrab's plea agreement indicates, for example, that the agreement does not "bind the Bureau of Immigration and Customs Enforcement ('ICE'), although [the U.S. Attorney's Office] will bring the cooperation of [Reza Zarrab], as well as any safety concerns with respect to [him] and his family, to the attention of ICE, if requested by him." Attachment C (Plea Agreement).  Based on that filing, it is reasonable to presume that ICE maintains documents that are responsive to my request; ICE's searches for responsive documents were thus presumably inadequate.
> *See* Ex. 19.

56.   On January 4, 2022, ICE acknowledged receipt of Plaintiff's appeal and assigned it the number 2022-ICAP-00275.   *See* Ex. 20.

57.   About one month later, on February 1, 2022, in a brief, two-page letter, ICE denied Plaintiff's appeal, stating: "Based on a complete review of the administrative record and the search

documentation which led to the determination on your FOIA request, ICE finds the search was adequate in all respects and was reasonably calculated to uncover all relevant documents." *See* Ex. 21.

### FOIA Request to United States Citizenship and Immigration Services

58.     On January 12, 2022, Plaintiff submitted a request for records under FOIA to USCIS asking for several categories of records and communications for Reza Zarrab and Hüseyin Korkmaz:

> I write to request that your agency produce all records, including but not limited to paper or electronic files, databases, spreadsheets, documents, records of meetings (including calendar invitations or placeholders, meeting agendas, meeting minutes, meeting attendee lists) or communications (including emails, text messages, messaging application messages (*e.g.*, Skype, Lync, WhatsApp, Zoom, WebEx), memos, letters, attachments), that mention any of the following:
>
> 1. Reza Zarrab (. . .), a/k/a Riza Zarrab, a/k/a Reza Sarraf, a/k/a Riza Sarraf, a/k/a Aaron Goldsmith, an individual that has pleaded guilty to sanctions evasion in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB; and
>
> 2. Huseyin Korkmaz, an individual that is mentioned in government pleadings in a sanctions evasion case in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB.

Plaintiff specifically explained that given that Reza Zarrab had pleaded guilty to sanctions violations and bank fraud charges and Hüseyin Korkmaz is a fugitive from justice in Türkiye, the "public has a right to know, among other things, whether these individuals have applied for permanent resident status; whether they have been granted work visas; and whether the U.S. Attorney assisted with their respective applications." *See* Ex. 22.

59.    On January 21, 2022, USCIS sent Plaintiff a form email stating that its request had been closed given Plaintiff's failure to provide authorization by the subject of record to release the records.

60.    On February 2, 2022, Plaintiff submitted another request to USCIS asking for documents pertaining to Reza Zarrab (FOIA Request No. NRC2022032747) and Hüseyin Korkmaz (FOIA Request No. NRC2022033272).  The request specifically outlined that disclosure of responsive documents was in the public interest.  *See* Ex. 23.

61.    On February 15, 2022, USCIS denied the requests for records pertaining to Reza Zarrab, *see* Ex. 24, and Hüseyin Korkmaz, *see* Ex. 25, in their entirety pursuant to 5 U.S.C. § 552(b)(6).  It determined that the request did not "clear[ly] demonstrate[e] that the public interest in disclosure outweighs the personal privacy interest(s) of the individual(s) that significant public benefit would result from the disclosure of the requested records."

62.    On May 11, 2022, Plaintiff appealed the denial of its requests for documents pertaining to Reza Zarrab and Hüseyin Korkmaz on two grounds.  *First*, it argued that USCIS applied the wrong public-interest test in evaluating the request, relying on an unduly narrow understanding of the public interest.  *See* Ex. 26.  The initial request had made clear that the requested information could shed light on the proper functioning not only of USCIS, the receiving agency, but also the proper functioning of public proceedings in our nation's courts, which USCIS failed to consider in determining whether the public interest in disclosure outweighed the privacy interest at stake.  *Second*, Plaintiff argued that USCIS improperly failed to provide all "reasonably segregable portion[s]" of documents not falling within the FOIA exemptions as required under 5 U.S.C. § 552(b).

23

63.   In a one-page letter dated June 10, 2022, USCIS acknowledged receipt of Plaintiff's appeal and denied the appeal, affirming the decision to withhold records responsive to Plaintiff requests in their entirety under 5 U.S.C. § 552(b)(6).  *See* Ex. 27 (Zarrab); 28 (Korkmaz).  USCIS did not respond to Plaintiff's arguments on appeal.

## CLAIMS FOR RELIEF

### Count One
### Violation of the FOIA, 5 U.S.C. § 552
### Failure To Conduct Adequate Searches for Responsive Records

64.   Plaintiff repeats and incorporates by reference the foregoing paragraphs as though fully set forth herein.

65.   Plaintiff submitted valid requests under FOIA that were delivered to and received by the Defendants.

66.   Plaintiff properly requested records within the possession, custody, and control of the Defendants.

67.   Defendants are agencies subject to and within the meaning of FOIA, and must therefore make reasonable efforts to search for requested records.

68.   Defendants have failed to promptly review agency records for the purpose of locating those records that are responsive to Plaintiff's FOIA requests.

69.   Defendants' failure to conduct adequate searches for responsive records violates FOIA and applicable regulations.

70.   Plaintiff has a statutory right to the information it seeks.

71.   Plaintiff is therefore entitled to declaratory relief requiring Defendants to promptly make reasonable efforts to search for records responsive to Plaintiff's FOIA requests.

### Count Two
### Violation of the FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

72.     Plaintiff repeats and incorporates by reference the foregoing paragraphs as though fully set forth herein.

73.     Plaintiff submitted valid requests under FOIA that were delivered to and received by Defendants.

74.     Plaintiff properly requested records within the possession, custody, and control of Defendants.

75.     Defendants are agencies subject to and within the meaning of FOIA, and must therefore release any non-exempt records and provide a lawful reason for withholding any materials in response to a FOIA request.

76.     Defendants are wrongfully withholding non-exempt agency records requested by Plaintiff by failing to produce non-exempt records responsive to Plaintiff's FOIA requests.

77.     Defendants are wrongfully withholding non-exempt agency records requested by Plaintiff by failing to segregate exempt information in otherwise non-exempt records responsive to Plaintiff's FOIA requests.

78.     Defendants' failure to provide all non-exempt responsive records violates FOIA and applicable regulations.

79.     Plaintiff has a statutory right to the information it seeks.

80.     Plaintiff is therefore entitled to relief requiring the Defendants to promptly produce all non-exempt records responsive to Plaintiff's FOIA requests and provide indices justifying the withholding of any responsive records withheld under claim of exemption.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1.   Declare unlawful the Defendants' failure to comply with FOIA;

25

2.  Declare that Plaintiff is entitled to the disclosure of the requested records;

3.  Order Defendants to immediately process Plaintiff's requests and to disclose, in their entirety, unredacted versions of all records responsive to Plaintiff's requests, including those improperly withheld, and including any non-identical copies of any such records;

4.  Retain jurisdiction of this action to ensure that no agency records are wrongfully withheld;

5.  Award Plaintiff reasonable attorney's fees and litigation costs incurred in this action under 5 U.S.C. § 552(a)(4)(E); and

6.  Grant such other relief as the Court may deem just and proper.

Dated: August 9, 2024                    Respectfully submitted,

/s/ Robert M. Cary
Robert M. Cary (431815)
Simon A. Latcovich (980319)
James W. Kirkpatrick (208935)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, D.C. 20024
Telephone: (202) 434-5175
Facsimile: (202) 434-5029
Email:  RCary@wc.com

*Attorneys for Plaintiff Williams & Connolly LLP*