## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WILLIAMS & CONNOLLY LLP, | ) ) |
| Plaintiff | ) ) |
| v. | )      Civil Action No. 24-2322 PLF ) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al., | ) ) ) |
| Defendants. | ) ) ) |

### <u>DECLARATION OF PATRICK HOWARD</u>

I, Patrick Howard, declare as follows:

1.　　I am a Branch Chief within the Freedom of Information Act Division (FOIA

Division) at U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security

(DHS). I have been a Branch Chief in the FOIA Division since February 8, 2015. In this

capacity, I oversee a staff of Government Information Specialists (GIS), the processing of

requests for records submitted to CBP pursuant to FOIA, 5 U.S.C. § 552, the Privacy Act (PA), 5

U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.

2.　　I am familiar with CBP's procedures for responding to FOIA requests. I provide

technical and administrative supervision and direction to a group of FOIA specialists in

processing FOIA requests and assist with FOIA/PA litigation matters, and I am personally

familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing for

adequacy and compliance with federal laws and regulations.

3.　　I am familiar with the FOIA request submitted to CBP by Plaintiff Williams &

Connolly, LLP (Plaintiff) on August 23, 2021.

4.      The statements I make in this declaration are based upon my personal knowledge, which includes knowledge acquired through information furnished to me in the course of my official duties and CBP files that I personally reviewed in the course of my official duties.

5.      The purpose of this declaration is to describe CBP's handling of Plaintiff's FOIA request. This declaration summarizes the relevant facts and correspondence regarding Plaintiff's FOIA request and explains the searches CBP conducted in responding to the request. This declaration also explains information that has been withheld and statutory exemptions claimed.

### ADMINISTRATIVE HISTORY OF PLAINTIFF'S FOIA REQUEST

6.      On August 23, 2021, Plaintiff submitted a request for records under FOIA to CBP relating or referring to seven individuals and five companies. *See* Exhibit 1.

7.      On August 23, 2021, CBP FOIA confirmed receipt of Plaintiff's FOIA request submission dated August 23, 2021, and assigned it tracking number CBP-2021-097690. *See* Exhibit 2.

8.      On August 27, 2021, CBP FOIA closed Plaintiff's FOIA request (CBP-2021-097690) as a third-party request which lacked authorization for the release of documents related to third parties as requested in Plaintiff's FOIA request dated August 23, 2021. *See* Exhibit 3.

9.      On October 19, 2021, Plaintiff sent a letter to CBP FOIA following up on CBP's August 27, 2021, letter which closed Plaintiff's FOIA request (CBP-2021-097690). In Plaintiff's letter, Plaintiff stated that it was unable to provide written authorization from the subjects of Plaintiff's request and requested that CBP continue to process the FOIA request. *See* Exhibit 4.

10.     On November 2, 2021, CBP FOIA responded to Plaintiff's October 19, 2021, letter and noted that the request (which CBP re-numbered with tracking number CBP-2022-

005907) was closed by CBP as insufficient as a third-party request without authorization. *See* Exhibit 5.

11. On January 19, 2022, Plaintiff submitted an appeal letter to CBP FOIA Appeals related to FOIA request CBP-2022-005907, seeking to appeal the response provided by CBP FOIA. *See* Exhibit 6.

12. On February 15, 2022, CBP FOIA Appeals acknowledged receipt of the FOIA Appeals request and assigned the appeals request to tracking number CBP-AP-2022-043757. *See* Exhibit 7.

13. On February 23, 2022, CBP FOIA Appeals informed Plaintiff that the appeal was granted and Plaintiff's FOIA request would be remanded to the FOIA Division.  *See* Exhibit 8.

14. On February 24, 2022, CBP FOIA contacted Plaintiff and requested the dates of birth for the persons listed in numbers 6-7 and 9-12 of Plaintiff's request. CBP also requested a more specific description of the types of records Plaintiff sought pertaining to the businesses listed in numbers 2-5 and 8 of Plaintiff's FOIA request. CBP FOIA also sent an invoice in the amount of $5,904 to Plaintiff for payment to conduct the records search. *See* Exhibit 9.

15. A half hour after the original letter was sent on February 24, 2022, CBP FOIA sent an amended letter and invoice in the amount of $5,960 to Plaintiff for payment to conduct the records search. *See* Exhibit 10.

16. On February 28, 2022, Plaintiff sent a letter to CBP FOIA which included the dates of birth for the individuals listed in Plaintiff's FOIA request and stated that Plaintiff was "unable to provide a Customs assigned number" for any of the entities mentioned in the request. *See* Exhibit 11.

17.     On or about February 28, 2022, CBP responded to Plaintiff by e-mail stating that once payment of the invoice, which was provided to Plaintiff on February 24, 2022, was received, the search for records would begin. *See* Exhibit 12.

18.     On March 1, 2022, Plaintiff mailed full payment of the records search fee to CBP in the amount of $5,960.  *See* Exhibit 13.

19.     On April 22, 2022, CBP contacted Plaintiff to advise that due to backlog issues, Plaintiff's request "[was] in the que to be worked," and that the FOIA Division would notify Plaintiff as soon as the request was completed. *See* Exhibit 14.

20.     On May 22, 2022, CBP contacted Plaintiff to provide another update on the delay of Plaintiff's FOIA request and stated that "[The Office of Information and Technology (OIT)] is working diligently on a large backlog of cases and this will be worked in the order it was received." *See* Exhibit 14.

21.     On July 22, 2022, CBP contacted Plaintiff to provide another update on the delay of Plaintiff's FOIA request and stated that CBP FOIA hoped to have an answer for Plaintiff in the next two weeks as Plaintiff's request had reached the docket for processing. *See* Exhibit 14.

22.     On October 4, 2022, CBP issued a determination letter in response to Plaintiff, which stated that the responsive records to FOIA request number CBP-2022-005907 were withheld in full pursuant to Title 5 U.S.C. §552 exemptions (b)(6), (b)(7)(C), and (b)(7)(E). The letter also noted that "[b]ased on the information [Plaintiff] provided, there [were] no records for the businesses listed in [Plaintiff's] request." *See* Exhibit 15.

23.     On December 28, 2022, Plaintiff appealed the October 4, 2022, response. *See* Exhibit 16.

24.     On September 26, 2023, CBP FOIA Appeals affirmed the October 4, 2022, decision to withhold all responsive records in full based on the exemptions. *See* Exhibit 17.

25.     Plaintiff requested records concerning third parties; however, at the time Plaintiff's FOIA request was processed by CBP, Plaintiff did not provide proof of death or otherwise indicate that any of the subjects of Plaintiff's request were deceased.  Although CBP did search for potentially responsive records, CBP did not release any records to Plaintiff regarding the third parties identified in its request because Plaintiff did not demonstrate that the public interest in such records, to the extent they exist, outweighed the privacy interests of the third parties.

## SEARCH FOR RESPONSIVE RECORDS

### TECS System

26.     On or about March 13-14, 2022, CBP conducted a search of CBP's TECS system. TECS is an overarching law enforcement information collection, risk assessment, and information sharing system and is a repository for law enforcement and investigative information, including inspection records.  *See* U.S. Customs and Border Protection – 011 TECS System of Records Notice, 73 Fed. Reg. 77778 (December 19, 2008); *see also* DHS/CBP/PIA-021: TECS System: Platform (Aug. 12, 2016), *available at* https://www.dhs.gov/publication/dhscbppia-021-tecs-system-platform.   TECS is comprised of several modules that are designed to collect, maintain and evaluate data, conduct targeting analysis, and make information available to appropriate law enforcement officers of the U.S. Government. For example, TECS includes border crossing information for all individuals who enter, are admitted or paroled into, and (when available) exit from the United States, regardless

of method or conveyance. *See* U.S. Customs and Border Protection-007 Border Crossing

Information System of Records, 81 Fed. Reg. 89957 (December 13, 2016).

27.     In the TECS system, CBP conducted a search for encounter records regarding

Reza Zarrab (also known as Riza Zarrab, Reza Sarraf, or Riza Sarraf), Mohammad Zarrab (also

known as Mohammad Sarraf), Hossein Zarrab (also known as Hossein Sarraf), Abdullah

Happani, Camelia Jamshidy, Hossein Najafzadeh, and Huseyin Korkmaz, using the names

(including the name variations) and corresponding dates of birth for each individual provided by

Plaintiff as search terms.  CBP also searched TECS for records regarding Royal Holding, A.S.,

Royal Group, Atlantis Capital, Bella Investments, and Al Nafees Exchange LLC, using the

company names provided by Plaintiff as search terms.  The searches of TECS were not limited to

a specific time period.

### Analytical Framework for Intelligence

28.     On or about March 13-14, 2022, CBP also conducted a search of CBP's

Analytical Framework for Intelligence system. The Analytical Framework for Intelligence

"enhances DHS's ability to identify, apprehend, and prosecute individuals who pose a potential

law enforcement or security risk, and aids in the enforcement of customs and immigration laws,

and other laws enforced by DHS at the border." The Analytical Framework for Intelligence

system provides enhanced search capabilities by creating "an index of the relevant data in

existing operational DHS source systems by ingesting this data from source data systems." *See*

DHS/CBP/PIA-010 Analytical Framework for Intelligence (June 2012), *available at*

https://www.dhs.gov/publication/analytical-framework-intelligence-afi.

29.     In the Analytical Framework for Intelligence, CBP conducted a search for

encounter records regarding Reza Zarrab (also known as Riza Zarrab, Reza Sarraf, or Riza

Sarraf), Mohammad Zarrab (also known as Mohammad Sarraf), Hossein Zarrab (also known as

Hossein Sarraf), Abdullah Happani, Camelia Jamshidy, Hossein Najafzadeh, and Huseyin

Korkmaz using the names (including the name variations) and corresponding dates of birth for

each individual provided by Plaintiff as search terms. The searches of the Analytical Framework

for Intelligence were not limited to a specific time period.

### Automated Commercial Environment

30.     CBP also identified that CBP's Automated Commercial Environment system may

contain potentially responsive records to Plaintiff's request for information regarding five

businesses. The Automated Commercial Environment is a commercial trade processing system

designed to improve communication, collaboration, and compliance efforts between CBP and the

trade community. This environment allows the trade community to file data directly to a

consolidated CBP system and allows CBP to use reports to query transactional data in the

Automated Commercial Environment Portal. Additional information regarding what the

Automated Commercial Environment system contains is available at

https://www.dhs.gov/publication/filing-data-acsace.

31.     CBP, however, was unable to conduct a search of the Automated Commercial

Environment for business information pertaining to Royal Holding, A.S.; Royal Group; Atlantis

Capital; Bella Investments; and Al Nafees Exchange, LLC, because the Plaintiff was unable to

provide the Importer of Record number for these business entities. The Importer of Record

number is a necessary search term for CBP FOIA to adequately conduct a search of the

Automated Commercial Environment in response to a FOIA request.

**Communication Records Search**

32.    Around June to July, 2022, CBP also conducted a search for communication records across all CBP electronic mailboxes, also including calendar invitations and placeholders, for the time period of January 1, 2007, to March 8, 2022. The search terms were Reza Zarrab; Riza Zarrab; Reza Sarraf; Riza Sarraf; Royal Holding, A.S.; Royal Group; Atlantis Capital; Bella Investments; Mohammad Zarrab; Mohammad Sarraf; Hossein Zarrab; Hossein Sarraf; Al Nafees Exchange, LLC; Abdullah Happani; Camelia Jamshidy; Hossein Najafzadeh; and Huseyin Korkmaz.

33.    CBP reviewed a sample of the communication records that were located by searching CBP electronic mailboxes using the business name search terms provided by Plaintiff and determined that the provided business names, without additional identifying information provided by Plaintiff, to include an Importer of Record number for each business, were inadequate as search terms for CBP to determine responsiveness of each record or to review the records for FOIA exempt information given the number of businesses that use the same names.

34.    As CBP determined after an initial review that all records regarding the individuals listed in Plaintiff's request would be withheld in full and that CBP would not confirm or deny whether CBP had any records specifically regarding each of the individuals listed in Plaintiff's request, CBP did not conduct a complete review of the communication records that may or may not have been related to the individuals listed in Plaintiff's request that were compiled from CBP electronic mailboxes for disclosure to Plaintiff.

**Search Results**

35.    Based on the information provided in Plaintiff's request and further information provided by Plaintiff, CBP located no responsive CBP records regarding the five businesses:

Royal Holding, A.S.; Royal Group; Atlantis Capital; Bella Investments; and Al Nafees Exchange, LLC.

36.     Any records that were located and deemed responsive to Plaintiff's request were withheld in full pursuant to 5 U.S.C. § 552(b)(6), (b)(7)(C), and (b)(7)(E).  CBP cannot confirm or deny for which individual(s) listed in Plaintiff's request CBP located responsive records, or how many or which type of responsive records were located, as described further below, as doing so would itself betray the privacy interests protected by Exemptions (b)(6) and (b)(7)(C). CBP also acknowledged that information was also being withheld pursuant to Exemption (b)(7)(E), as that withholding may be generally acknowledged without betraying the privacy interests protected by Exemptions (b)(6) and (b)(7)(C), as information that is protected by Exemption (b)(7)(E) commonly appears in CBP's encounter records.

37.     As described above, based on CBP's assessment of Plaintiff's request, including the limited identifying information provided regarding the businesses listed in Plaintiff's request which limited CBP's ability to conduct searches for responsive information, CBP searched all locations and files reasonably likely to contain responsive records that CBP was able to search based on the information provided by Plaintiff, and there is no basis for CBP to conclude that a search elsewhere would reasonably be expected to locate responsive records subject to the FOIA and Plaintiff has failed to suggest otherwise.

**JUSTIFICATION FOR WITHHOLDING INFORMATION UNDER FOIA**

38.     The justifications described in this declaration support CBP's withholdings of the records requested by Plaintiff related to the individual(s) listed in the Plaintiff's request.  As noted above, CBP cannot confirm or deny for which individual(s) listed in Plaintiff's request CBP located responsive records or how many responsive records were located, as doing so

would itself betray the privacy interests protected by Exemptions (b)(6) and (b)(7)(C).  CBP's prior FOIA and FOIA appeal responses to Plaintiff and this declaration, however, describe the withholdings that are being acknowledged by CBP (including pursuant to Exemptions (b)(6), (b)(7)(C), and (b)(7)(E)), both because of the privacy interests at issue and as the acknowledged withholdings are commonly applicable to CBP's records such that they may be generally acknowledged without betraying the privacy interests protected by Exemptions (b)(6) and (b)(7)(C), as described further below.  Additional exemptions and withholdings may apply to records that may be responsive to Plaintiff's request, but CBP did not fully review all records located as part of CBP's search, as described above.

### FOIA Exemption 5 U.S.C. § 552(b)(7) Threshold

39.    Section 552(b)(7) of Title 5 of the U.S. Code exempts from disclosure certain records or information that is "compiled for law enforcement purposes."

40.    CBP is a federal law enforcement agency comprised of more than 60,000 employees, a significant majority of whom are armed law enforcement officers engaged in carrying out CBP's broad border security mission.  CBP is charged with protecting the borders of the United States against terrorists and terrorist weapons, and with enforcing the customs, immigration, and agricultural protection laws of the United States, among other law enforcement tasks.  6 U.S.C. § 211.

41.    On a typical day, CBP encounters over one million individuals, hundreds of thousands of vehicles, and billions of dollars of goods as part of its law enforcement responsibilities to secure the U.S. border.  *See*  https://www.cbp.gov/newsroom/stats.  CBP compiles and maintains records as part of these law enforcement activities, a significant number of which contain personal or otherwise sensitive information.

42.    Given the breadth of CBP's law enforcement mission and the types of records for which CBP searched in response to Plaintiff's request, any responsive records would necessarily have been collected and maintained by CBP as part of its law enforcement mission and would readily meet the threshold requirement of Exemption 7.

**FOIA Exemptions (b)(6) and (b)(7)(C) - Clearly Unwarranted Invasion of Personal Privacy and Unwarranted Invasion of Personal Privacy**

43.    Exemptions (b)(6) and (b)(7)(C) exempt from disclosure information that would constitute a clearly unwarranted invasion of personal privacy or would reasonably be expected to constitute an unwarranted invasion of personal privacy.

44.    Section 552(b)(6) of Title 5 of the U.S. Code exempts from disclosure certain records and information "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Records that apply to or describe a particular individual qualify as "personnel," "medical" or "similar files" under Exemption (b)(6). This exemption requires balancing the public's right to disclosure against an individual's right to privacy, with the public's interest in the disclosure of the information being limited to information which would shed light on CBP's performance of its mission to secure the border of the United States.

45.    Section 552(b)(7)(C) of Title 5 of the U.S. Code similarly protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). This exemption extends to CBP as a law enforcement agency. Exemption (b)(7)(C) is designed to protect, among other things, law enforcement personnel from harassment and annoyance in the conduct of their official duties and in their private lives, which could conceivably result from the public disclosure of their identity. This exemption requires that the privacy interest in the information of an individual in the

document be balanced against any public interest in disclosure of that information, with the public's interest in the disclosure of the information being limited to information which would shed light on CBP's performance of its mission to secure the border of the United States.

46.    When asserting Exemptions (b)(6) and (b)(7)(C), CBP balances an individual's personal privacy interest against the public's interest in shedding light on CBP's performance of its statutory duties. In this case, the information CBP withheld pursuant to Exemption (b)(6) and (b)(7)(C) is exempt from disclosure because the privacy interests in that information outweigh the public interest in its disclosure.

47.    Exemptions (b)(6) and (b)(7)(C) were applied to "protect personally identifiable information (PII) of CBP and other law enforcement employees and third parties identified and mentioned in the records, specifically the names and identities of the individuals, telephone numbers and contact information, identification numbers, and other identifying information of the individuals, as well as other information in addition to PII where identities of individuals would be made apparent by certain detailed information in the record and its context." *See* Exhibit 17.

48.    Release of this information would constitute a clearly unwarranted invasion of privacy and could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Both Government employees and third parties have a protectable privacy interest in their identities that would be threatened by disclosure.  The release of this information would subject government employees to unwarranted harassment and publicity, which would limit their effectiveness in handling their respective law enforcement functions and duties, and would also subject third parties to unwanted contact, annoyance, or harassment.

49.    In addition, the identification of an individual in association with the performance of their duties at a law enforcement agency creates a safety threat. For this reason, the Office of Personnel Management (OPM) designated CBP a "Security Agency" exempting all CBP employees, not just front-line law enforcement, from OPM's salary information disclosure policy. *See* https://www.opm.gov/policy-data-oversight/data-analysis-documentation/data-policy-guidance/data-standards/data-release-policy-august-2020.pdf. As OPM recognized, disclosing a non-public facing CBP employee's name (and related information), absent a compelling public interest to do so, risks unnecessarily exposing that individual employee to potential safety threats.

50.    Release of this information would also not shed light on the actions of CBP and there is no public interest in the disclosure of this information. Plaintiff failed to indicate how "CBP and other law enforcement employee or third-party PII contained in the records would shed light on how the agency performs its statutory duties." *See* Exhibit 17. Plaintiff's argument that the requested information would address "the legitimacy of public proceedings in our nation's courts" was not an identifiable public interest as it was not focused on shedding light on CBP's actions. *See* Exhibit 17. In addition, Plaintiff's claim that the individuals listed in Plaintiff's request had a diminished privacy interest due to court proceedings did not mean that the individuals forfeited all rights to privacy. *See* Exhibit 17. Plaintiff also failed to show government misconduct sufficient to merit disclosure of the withheld information. *See* Exhibit 17. Accordingly, CBP has taken the position that the employees' and third parties' right to privacy outweighs whatever public interest, if any, might exist in knowing the information.

51.    Finally, CBP can neither confirm nor deny the nature or number of any responsive records regarding the individuals listed in Plaintiff's request, as doing so would betray the

privacy interests protected by Exemptions (b)(6) and (b)(7)(C) and would itself cause harm. CBP determined that the general public interest claimed by Plaintiff in their assertions regarding the individuals listed in Plaintiff's request is insufficient to outweigh those individuals' privacy interests in any CBP records about them that may or may not exist.  This type of response is warranted pursuant to Exemptions (b)(6) and (b)(7)(C) when members of the public are likely to draw adverse inferences from the mere fact that an individual is mentioned in the files of a law enforcement agency such as CBP, as this may cast the individual in an unfavorable or negative light.  Moreover, release of information about third parties could cause unsolicited and unnecessary attention or harassment to be focused on them.  As the law enforcement agency charged with protecting the U.S. border, CBP maintains sensitive personal information regarding the individuals encountered by CBP, and even acknowledging the existence of records related to third parties, such as the type or number of records that CBP maintains, could lead to adverse inferences regarding, and harassment of, the subject third party.  The individuals addressed in records maintained by CBP as a law enforcement agency have strong privacy interests in not having their personal information disclosed without their authorization in response to FOIA requests.  CBP has balanced the substantial privacy interests of the third party individuals listed in Plaintiff's FOIA request against the public interest in disclosure and has determined that any further acknowledgement of the existence or non-existence of responsive records regarding the third party individuals would constitute a clearly unwarranted invasion of personal privacy and could reasonably be expected to constitute an unwarranted invasion of personal privacy pursuant to Exemptions (b)(6) and (b)(7)(C).

**Exemption (b)(7)(E)**

52.    Section 552(b)(7)(E) of Title 5 of the U.S. Code exempts from disclosure law enforcement records or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

53.    The effectiveness of CBP's mission is dependent to a large extent on the use of sensitive investigative techniques and methods that are not known to the general public.  These law enforcement techniques and procedures are critical tools used by CBP officers to efficiently and effectively carry out CBP's mission to secure the border and to prevent threats, including terrorists, their weapons, and other dangerous items, from entering the United States, and to enforce customs, immigration, agriculture, and other federal laws at the border.  The disclosure of these techniques and methods would seriously compromise CBP's ability to perform its law enforcement mission at the border.

54.    As stated in CBP's September 26, 2023, appeal response, CBP withheld case file numbers, file locations, other unique identifiers, and otherwise unknown, specific law enforcement techniques, procedures, and guidelines followed by CBP when performing its border security mission.  *See* Exhibit 17.  Disclosure of this information would risk circumvention of the law and permit illicit actors to impede CBP's effectiveness as a law enforcement agency and frustrate CBP's ability to detect illicit activity and enforce the law. Additionally, disclosure of CBP**'s** law enforcement procedures not known to the public would be detrimental to CBP's ability to carry out its mission, enabling individuals to alter their patterns of conduct, adopt new methods of operations, and effectuate other countermeasures to circumvent

CBP's law enforcement techniques. CBP can acknowledge that this information is being withheld pursuant to Exemption (b)(7)(E) without betraying the privacy interests protected by Exemptions (b)(6) and (b)(7)(C), as information of this nature that is protected by Exemption (b)(7)(E) commonly appears in CBP's encounter records. As noted above, additional withholdings may apply to the records that were located, but CBP did not fully review them and cannot fully address them here, as CBP can neither confirm nor deny the nature or number of any responsive records regarding the individuals listed in Plaintiff's request, as doing so would betray the privacy interests protected by Exemptions (b)(6) and (b)(7)(C).

## SEGREGABILITY

55.    All responsive records that were identified in CBP's search for records that may be acknowledged in response to Plaintiff's FOIA request have been appropriately withheld in full as the information contained therein is not reasonably segregable because it is so intertwined with protected material that segregation is not possible, or its release would have revealed the underlying protected material. Except as otherwise explained in this declaration, CBP personnel have reviewed the documents determined to be responsive, line-by-line, to identify information exempt from disclosure or for which a discretionary waiver of exemption could apply, and no reasonably segregable portions of the relevant records have been located. Similarly, CBP personnel have considered the foreseeable harm standard when reviewing records and applying exemptions. In my determination, any release of the exempted materials could reasonably lead to the identification of the individuals or other items that are properly protected by the exemptions asserted.

Pursuant to 28 U.S.C. § 1746, I hereby affirm under penalty of perjury that the

information provided is true and correct to the best of my information, knowledge, and belief.

Signed this 21st day of May, 2025.

_Patrick Howard_

Patrick Howard
Branch Chief, FOIA Division
U.S. Customs and Border Protection
U.S. Department of Homeland Security

# EXHIBIT 1

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

CHELSEA B SEDDON
(202) 434-5310
Cseddon@wc com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 23, 2021

U.S. Customs & Border Protection
FOIA Officer
90 K Street, NW, 9th Floor, Mail Stop 1181
Washington, DC 20229-1181

To whom it may concern:

I am submitting this public records request under the Freedom of Information Act on behalf of Williams & Connolly LLP. I write to request that your agency produce all records, including but not limited to paper or electronic files, databases, spreadsheets, documents, records of meetings (including calendar invitations or placeholders, meeting agendas, meeting minutes, meeting attendee lists) or communications (including emails, text messages, messaging application messages (*e.g.*, Skype, Lync, WhatsApp, Zoom, WebEx), memos, letters, attachments), referring or relating to any of the following:

1. Reza Zarrab (date of birth ████████), a/k/a Riza Zarrab, a/k/a Reza Sarraf, a/k/a Riza Sarraf, an individual that has pleaded guilty to sanctions evasion in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB;

2. Royal Holding, A.S., a company affiliated with Reza Zarrab;

3. Royal Group, a company affiliated with Reza Zarrab;

4. Atlantis Capital, a company affiliated with Reza Zarrab;

5. Bella Investments, a company affiliated with Reza Zarrab;

6. Mohammad Zarrab, a/k/a Mohammad Sarraf, the brother of Reza Zarrab who has been indicted for sanctions evasion in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB;

7. Hossein Zarrab, a/k/a Hossein Sarraf, father of Reza Zarrab;

8. Al Nafees Exchange LLC, a company affiliated with Reza Zarrab and Hossein Zarrab;

9. Abdullah Happani, an individual that has been indicted for sanctions evasion in the

WILLIAMS & CONNOLLY LLP

August 23, 2021
Page 2

        Southern District of New York, *see* Case No. 1:15-cr-00867-RMB;

10. Camelia Jamshidy, an individual that has been indicted for sanctions evasion in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB;

11. Hossein Najafzadeh, an individual that has been indicted for sanctions evasion in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB; and

12. Huseyin Korkmaz, an individual that is mentioned in government pleadings in a sanctions evasion case in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB.

        This request extends to documents created from January 1, 2007, through the date of this search.

        I ask that you provide all "reasonably segregable portion[s]" of all of the above documents not falling within a FOIA exemption.[1]  Similarly, if documents falling into the above-mentioned categories are not subject to disclosure because of privacy concerns, I ask that the agency respond to the remaining aspects of the request that do not present similar concerns.  If possible, please provide all responsive documents in an electronic format.

        To help determine fees, you should know that I am a research librarian at Williams & Connolly LLP who is making this request on behalf of the firm.  This request is being made for commercial purposes.  I am willing to pay fees for this request up to $3000.  Please contact me if you anticipate the fees will exceed this amount or if advanced payment is necessary.

        Should you have any questions regarding this request or if any issues arise, please feel free to contact me at Cseddon@wc.com or 202-434-5310.

        Thank you for your time and consideration.

                Sincerely,

                /s/ Chelsea B. Seddon

---

[1] 5 U.S.C. § 552(b).

# EXHIBIT 2

# Request Confirmation

## Request Information

| | |
|---|---|
| **Tracking Number** | CBP 2021 097690 |
| **Requester Name** | Under Agency Review |
| **Submitted Date** | 08/23/2021 |
| **Request Phase** | Submitted |
| **Description** | Under Agency Review |

# EXHIBIT 3

Ms. Chelsea Seddon

Williams and Connolly LLP

725 Twelfth Street NW

Washington, DC, 20005

08/27/2021

CBP-2021-097690

Dear Ms. Chelsea Seddon,

Pursuant to 6 C.F.R. Part 5 §5.3(b) of the DHS FOIA regulations, you must describe the records you are seeking with as much information as possible to ensure that our search of appropriate systems of records can find them with a reasonable amount of effort. Your FOIA request has been closed as insufficient for **one or more of the following reasons**:

__X__ Your FOIA request was reviewed as a third party request and did not include authorization that information on this individual, or business, can be released to you.  All third party FOIA requests must include a signed G-28 or G-639 form, or a signed statement from the individual verifying that his/her information may be released to you. Or, if requesting records pertaining to a business or company, a signed statement on company letterhead.

   Because you have not provided this documentation, your request is not a proper FOIA request, and we are unable to initiate a search for responsive records.

_____  Your request did not include a date of birth.

_____  Your request did not include proof of identity

_____  Your request did not include a full name (and aliases as appropriate) of the individual in which you are seeking records

_____  Your request did not include a death certificate (or other proof that the subject is deceased)

_____   Your request did not include a clear and detailed description of the records being requested. Please be advised that the FOIA does not require federal agencies to answer inquiries or create records in response to a FOIA request, but rather is limited to requiring agencies to provide access to reasonably described, nonexempt records.  As you have failed to reasonably describe the records you are seeking, your request is not a perfected request, and we are unable to initiate a search for responsive records.

Please resubmit your FOIA request, along with the required information, by logging into your existing FOIAonline account or go to https://foiaonline.gov to create an account.

Sincerely,

U.S. Customs and Border Protection

# EXHIBIT 4

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

CHELSEA B SEDDON
(202) 434-5310
Cseddon@wc com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

October 19, 2021

U.S. Customs and Border Proection
FOIA Officer
90 K Street, NW, 9th Floor, Mail Stop 1181
Washington, D.C. 20229-1181

**RE: FOIA Case No. CBP-2021-097690**

To Whom it May Concern:

     This letter pertains to FOIA Case No. CBP-2021-097690 and responds to your most recent letter dated August 27, 2021. In your letter, you noted that my request "was reviewed as a third party request and did not include authorization that information on this individual, or business, can be released to [me]." Your letter further noted that "[a]ll third party FOIA requests must include a signed G-28 or G-639 form, or a signed statement from the individual verifying that his/her information may be released to you." Similar statements can be found on CBP's website, which notes that "DHS regulations require, in the case of third party information requests, a statement from the individual verifying his or her identity and certifying that individual's agreement that records concerning him or her may be accessed, analyzed and released to a third party." *Freedom of Information Act (FOIA) Frequently Asked Questions*, U.S. Customs and Border Protection (last visited October 18, 2021), https://www.cbp.gov/site-policy-notices/foia/faq-foia.

     I am unable to provide the documents you have requested. I nevertheless ask that you continue to process my FOIA request. I disagree that DHS regulations "require" "a signed G-28 or G-639 form, or a signed statement from the individual verifying that his/her information may be released to [me]." DHS regulations merely instruct that "[w]here a request for records pertains to a third party, a requester *may* receive greater access by submitting" certain documents. 6 C.F.R. § 5.3(a) (emphasis added). Nor do I request information about a third party "on behalf of that individual." *Cf.* 6 C.F.R. § 5.21(f). And even if DHS regulations require a FOIA requester to provide third-party consent, I acknowledge a split of authority on the issue but nevertheless respectfully contend that such regulations are invalid. Compare *Gonzales & Gonzales Bonds & Ins. Agency Inc. v. U.S. Dep't of Homeland Sec.*, 913 F. Supp. 2d 865, 876–77 (N.D. Cal. 2012), with *Vest v. Dep't of Air Force*, 793 F. Supp. 2d 103, 115 (D.D.C. 2011). Additionally, my understanding is that although some information pertaining to individuals may be protected from release under various FOIA exceptions absent a waiver, many documents can and must be released. *See* 5 U.S.C. § 552(b)(6) (exempting "personnel and medical files" if disclosure "would constitute

WILLIAMS & CONNOLLY LLP
RE: FOIA Case No. CBP-2021-097690
October 19, 2021
Page 2

a clearly unwarranted invasion of personal privacy"); *see also Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 685 n.44 (D.C. Cir. 1976) ("The sixth exemption has not been extended to protect the privacy interests of businesses or corporations.").

     For these reasons, I respectfully ask that you please provide all "reasonably segregable portion[s]" of the documents I originally requested not falling within a FOIA exception.  5 U.S.C. § 552(b).  To the extent feasible, please provide all responsive documents in an electronic format.

     Should you have any questions regarding this request or if any issues arise, please feel free to contact me at Cseddon@wc.com or 202-434-5310 to discuss this request.

     Thank you for your time and consideration.

Sincerely,


/s/ Chelsea B. Seddon
Research Librarian


Attachment: FOIA Request (August 23, 2021)

# EXHIBIT 5

Ms. Chelsea B Seddon

Williams and Connolly LLP

725 Twelfth Street NW

Washington, DC, 20005

11/02/2021

CBP-2022-005907

Dear Ms. Chelsea B Seddon,

Pursuant to 6 C.F.R. Part 5 §5.3(b) of the DHS FOIA regulations, you must describe the records you are seeking with as much information as possible to ensure that our search of appropriate systems of records can find them with a reasonable amount of effort. Your FOIA request for Reza Zarrab has been closed as insufficient for **one or more of the following reasons**:

**__X__  Your FOIA request was reviewed as a third party request and did not include authorization that information on this individual, or business, can be released to you.  All third party FOIA requests must include a signed G-28 or G-639 form, or a signed statement from the individual verifying that his/her information may be released to you.** Or, if requesting records pertaining to a business or company, a signed statement on company letterhead.

   Because you have not provided this documentation, your request is not a proper FOIA request, and we are unable to initiate a search for responsive records.

_____ Your request did not include a date of birth.

_____ Your request did not include proof of identity

_____ Your request did not include a full name (and aliases as appropriate) of the individual in which you are seeking records

_____ Your request did not include a death certificate (or other proof that the subject is deceased)

_____  Your request did not include a clear and detailed description of the records being requested. Please be advised that the FOIA does not require federal agencies to answer inquiries or create records in response to a FOIA request, but rather is limited to requiring agencies to provide access to reasonably described, nonexempt records.  As you have failed to reasonably describe the records you are seeking, your request is not a perfected request, and we are unable to initiate a search for responsive records.

Please resubmit your FOIA request, along with the required information, by logging into your existing FOIAonline account or go to https://foiaonline.gov to create an account.

Sincerely,

U.S. Customs and Border Protection

# EXHIBIT 6

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

CHELSEA B SEDDON
(202) 434-5310
Cseddon@wc com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

January 19, 2022

U.S. Customs and Border Protection
FOIA Appeals, Policy and Litigation Branch
90 K Street NE
Washington, D.C. 20229

**RE: FOIA APPEAL OF REQUEST NO. CBP-2022-005907**

To Whom it May Concern:

This letter pertains to FOIA request CBP-2022-005907; it is intended to formally appeal the response provided by U.S. Customs and Border Protection for this request.  *See* 5 U.S.C. § 552(a)(6)(A) (discussing requester's right to appeal).  As explained more fully below, CBP closed the request for information because the request did not include a consent form signed by (i) the individuals or (ii) the authorizing agents for the entities identified in my original request.  But FOIA does not require consent for access to documents about a person or entity, and any requirement imposed by CBP would violate CBP's FOIA obligations; the closure was therefore erroneous.

An initial request that complied with FOIA's requirements was submitted to CBP on August 23, 2021.  *See* Attachment A.  I specifically requested all documents pertaining to several individuals and entities associated with a sanctions evasion case pending in the Southern District of New York, including documents pertaining to (i) Reza Zarrab, a government form witness in that case, and (ii) several companies owned or affiliated with Reza Zarrab (*e.g.*, Royal Holding, Royal Group, Atlantis Capital, and Bella Investments).  Among other reasons, I believe responsive documents are in CBP's possession because Reza Zarrab was arrested after entering the country with over $100,000 in cash—a fact he acknowledged during an interview with CBP.  *See* Attachment B.

Despite the adequacy of my initial request, I was informed that CBP would not process the request until I provided third-party consent.  *See* Attachment C.  I responded by noting that I could not comply with CBP's demands and that such demands violated FOIA.  *See* Attachment D.  CBP responded with a template letter that again indicated my request was inadequate.  *See* Attachment E.  Because CBP's requirement that I obtain third-party consent is an improper basis to deny my request, I now appeal.

As I mentioned in my initial reply, I ask that CBP continue to process my FOIA request notwithstanding that I cannot provide the third-party consent forms CBP requested.  First, I do not believe DHS regulations require "a signed G-28 or G-639 form, or a signed statement from the

WILLIAMS & CONNOLLY LLP
RE: FOIA APPEAL OF REQUEST NO. CBP-2022-005907
January 19, 2022
Page 2

individual verifying that his/her information may be released to [me]." Attachment E. DHS regulations merely instruct that "[w]here a request for records pertains to a third party, a requester *may* receive greater access by submitting" certain documents. 6 C.F.R. § 5.3(a) (emphasis added). The regulation does not *require* such a form. Nor am I making a Privacy Act request which would seek information on a third party "on behalf of that individual." 6 C.F.R. § 5.21(f). CBP is therefore incorrect that DHS regulations require a third-party consent form for the request to be processed.

DHS regulations do not require a consent form for good reason: such a requirement would violate FOIA. The court in *Gonzales & Gonzales Bonds & Insurance Agency Inc. v. U.S. Dep't of Homeland Security* was presented with that precise situation. 913 F. Supp. 2d 865, 876 (N.D. Cal. 2012). There, DHS indicated that it "not only [would] withhold all records if a requester [did] not or cannot comply with [a third-party consent provision], but [would] not even determine what potential responsive materials exist" until third-party consent was provided. *Id.* "This procedure," the court noted, "renders it impossible for a requesting party to ascertain whether DHS has properly withheld the records, and nullifies the agency's burden of demonstrating that it correctly invoked the exemptions." *Id.* The court accordingly held that the provision "violates FOIA by allowing DHS to improperly withhold records, by releasing the agency from its obligation to demonstrate that FOIA's exemptions apply, and by circumventing judicial review of its determinations." *Id.*; *see also id.* at 877 n.13 (distinguishing *Vest v. Dep't of Air Force*, 793 F. Supp. 2d 103, 115 (D.D.C. 2011), which upheld the regulation "without explanation").

For similar reasons, I respectfully contend that CBP's treatment of my FOIA request was improper. Although some information pertaining to individuals—such as "personnel and medical files"—may be protected from release under various FOIA exceptions absent a waiver, the vast majority of documents can and must be released even if there is no waiver or third-party consent. 5 U.S.C. § 552(b)(6); *see also Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 685 n.44 (D.C. Cir. 1976) ("The sixth exemption has not been extended to protect the privacy interests of businesses or corporations."). <u>Accordingly, I once again respectfully ask that CBP process my valid FOIA request notwithstanding the fact that I cannot provide the third-party consent forms CBP apparently requires.</u>

Should you have any questions regarding this appeal or if any issues arise, please feel free to contact me at Cseddon@wc.com or 202-434-5310.

Thank you for your time and consideration.

Sincerely,

Chelsea Seddon

Chelsea B. Seddon
Research Librarian

WILLIAMS & CONNOLLY LLP
RE: FOIA APPEAL OF REQUEST NO. CBP-2022-005907
January 19, 2022
Page 3

Attachments:  [A]    Initial FOIA Request
              [B]    *United States v. Atilla*, No. 1:15-cr-00867-RMB (S.D.N.Y. May. 25, 2016),
                     ECF No. 18
              [C]    CBP Response
              [D]    FOIA Reply
              [E]    CBP Final Response

# EXHIBIT 7

| | |
|---|---|
| **From:** | no-reply@foiaonline.gov |
| **To:** | Seddon, Chelsea |
| **Subject:** | FOIA Appeal CBP-AP-2022-043757 Submitted |
| **Date:** | Tuesday, February 15, 2022 9:39:10 AM |

**This message has been archived. Please restore the message before filing it into iManage.**

This message is to notify you of a new appeal submission to the FOIAonline application. Appeal information is as follows:

    *   Appeal Tracking Number: CBP-AP-2022-043757
    *   Request Tracking Number: CBP-2022-005907
    *   Requester Name: Chelsea Seddon
    *   Date Submitted: 02/15/2022
    *   Appeal Status: Submitted
    *   Description: I ask that CBP continue to process my FOIA request notwithstanding that I cannot provide the third-party consent forms CBP requested.

# EXHIBIT 8



1300 Pennsylvania Avenue, NW
Washington, DC 20229

**U.S. Customs and
Border Protection**

February 23, 2022

DIS-3 OT:RR:RDL:FAPL
CBP-AP-2022-043757 LLO

Ms. Chelsea B. Seddon
Williams & Connolly, LLP
725 Twelfth Street, NW
Washington, DC 20005

Re:  FOIA Request Nos. CBP-2022-005907, CBP-2021-097690

Dear Ms. Seddon:

This letter responds to your appeal of U.S. Customs and Border Protection's (CBP)
denial of your Freedom of Information Act (FOIA) request for records related to 12
companies and individuals. By this letter, we grant your appeal and remand the request
to CBP's FOIA Division for processing.

You submitted your first request for information related to 12 enumerated individuals
and companies[1] in a letter dated August 23, 2021. CBP's FOIA case processing
system, FOIAonline, assigned that request Case File No. CBP-2021-097690. On
August 27, 2021, CBP's FOIA Division, which processes all agency initial requests,
closed your request as "insufficient" because it categorized your request as a "third
party request." FOIA Division explained that "[a]ll third party requests must include a
signed G-28 or G-639, or a signed statement from the individual verifying that his/her
information may be released to you."

---

[1] Because: (1) your request identifies those individuals by name; (2) that information may be considered
Personally Identifiable Information (PII); and (3) you do not have a FOIAonline account which provides
the protections of two-factor authentication, in accordance with Department of Homeland Security policy,
we have omitted the names of those individuals in this letter. We strongly recommend that you create a
FOIAonline account for future requests. It allows you to track your request, ensures that your
communications are routed to the correct location, provides for the fastest and easiest access to any
releasable records, and enables you to appeal determinations directly to this office electronically.

In a letter dated October 19, 2021, you acknowledged that you were unable to provide the requested documentation, but asked that FOIA Division process your request anyway. You highlighted that "DHS regulations merely instruct that '[w]her a request for records pertains to a third party, a requester *may* receive greater access by submitting' certain documents" 6 C.F.R. §5.3(a)(4) (emphasis yours). You conceded that at least "some information pertaining to individuals may be protected from release under various FOIA exceptions absent a waiver" but asked that FOIA Division process your request and provide all reasonably segregable portions of the requested records.

FOIA Division interpreted your communication as a new request, CBP-2022-005907. On November 2, 2021, it again denied your request as "insufficient" and provided you the same form letter it did on August 27, 2021, explaining that it lacked authorization from the subjects of the requests allowing the agency to release records related to them to you.

You appealed that determination in a letter dated January 19, 2022, but not received by this office until February 15, 2022.[2] In your appeal, you correctly noted that neither the FOIA nor the DHS FOIA regulations demand the type of authorization that FOIA Division found lacking in your initial request.

As you observed in your October 19, 2021 letter and re-asserted in your January 19, 2022 appeal, the DHS FOIA regulations emphasize that submitting such authorization may allow for greater access to agency records related to third parties. 6 C.F.R. §5.3(a)(4). However, those regulations do not require such authorization.[3] We concur with your assessment. FOIA Division should have substantively processed your request by searching for any responsive records and subsequently reviewing any identified records for releasability.

By this letter, we therefore grant your appeal and remand your request to FOIA Division for processing. In doing so, we preserve your appeal rights related to any future determination related to the records your requested. The administrative appeal process is important to agencies and requesters because the appeal process provides an agency with an opportunity to review its initial action taken in response to a request to

---

[2] Again, we strongly recommend creating a FOIAonline account for future requests. Whether your request was misrouted or delayed by the COVID-19 pandemic, both potentially intervening circumstances would have been avoided if you had the ability to electronically appeal the determination via FOIAonline.

[3] The FOIA Division processor may have conflated the language of the current regulations with the language in the original regulations which did make sure a requirement. Freedom of Information and Privacy Act Procedures, 68 Fed. Reg. 4065 (January 27, 2003) ("If you are making a request for records concerning an individual or on behalf of that individual, you must provide a statement from the individual verifying the identity of the individual as provided in paragraph (d) of this section. You must also provide a statement from the individual certifying the individual's agreement that records concerning the individual may be released to you"). DHS amended those regulations in 2016, at least in part in response to the Northern District of California's determination that such a requirement "violates FOIA by allowing DHS to improperly withhold records, by releasing the agency from its obligation to demonstrate that FOIA's exemptions apply, and by circumventing judicial review of its determinations." *Gonzales & Gonzales Bonds & Ins. Agency Inc. v. Dep't of Homeland Sec.*, 913 F. Supp. 2d 865, 876 (N.D. Cal. 2012).

determine whether corrective steps are necessary. The appeals process allows CBP to correct mistakes made at lower levels and thereby obviates unnecessary judicial review. Remanding your request assures you a second opportunity for administrative resolution of your request prior to resorting to litigation. We hope such review is unnecessary, but will be prepared should it be.

In the event that you are dissatisfied with the disposition of your appeal, you may obtain judicial review of this decision pursuant to the provisions of 5 U.S.C. §552(a)(4)(B) in the United States District Court in the District in which you reside, in the District where the agency records are situated, or in the United States District Court for the District of Columbia.

The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Sincerely,

Matthew Pollack, Chief
Disclosure Law and Judicial Actions Branch
Regulations and Rulings Directorate
Office of Trade
U.S. Customs and Border Protection

# EXHIBIT 9

| Correspondence to Requester | Fee Estimate | no-reply@foiaonline.gov | cseddon@wc.com | <p>Please see attached.</p> | No | No | 2/24/2022, 9:30 AM | Miller, Amy | Seddon, Chelsea |
| Correspondence to Requester | Amended Invoice | no-reply@foiaonline.gov | cseddon@wc.com | <p>Good Morning,</p><p>Please see the attached amended invoice and cover letter.</p><p>Thank you.</p> | No | No | 2/24/2022, 10:00 AM | Miller, Amy | Seddon, Chelsea |
| Correspondence to Requester | Required additional information | no-reply@foiaonline.gov | cseddon@wc.com | <p>Good Morning.</p><p>In order to conduct a search of records, CBP requires the dates of births for the persons listed in numbers 6-7 and 9-12 of your request. </p><p>Additionally, for records pertaining to the businesses listed in numbers 2-5 and 8 of your request, CBP requires a more specific description of the types of records you are seeking.  If you are seeking shipping or entry records, you must supply valid entry numbers and/or a valid importer of Record/IRS number.  Should the companies be foreign importers, please supply the Customs assigned number. </p><p>Are you do you not have an open FOIA account, you can supply this information via email to <a [REDACTED]</a></p><p>Thank you.</p> | No | No | 2/24/2022, 10:02 AM | Miller, Amy | Seddon, Chelsea |

# EXHIBIT 10



1300 Pennsylvania Avenue, NW
Washington, DC 20229

**U.S. Customs and Border Protection**

February 24, 2022

**SENT BY ELECTRONIC MAIL TO:** cseddon@wc.com

Ms. Chelsea B. Seddon
Williams and Connolly, LLP
725 Twelfth Street, NW
Washington, DC 20005

RE: CBP-2022-005907

Dear Ms. Seddon:

This is an amended letter which provides a fee estimate applicable to your Freedom of Information Act (FOIA) request remanded to the U.S. Customs and Border Protection (CBP) FOIA division on appeal on February 23, 2022. You are seeking documents pertaining to 12 enumerated individuals.

The FOIA provides three categories of fees (Search, Duplication, and Review) that may be assessed to process a FOIA request according to categories of FOIA requesters. See 5 U.S.C. § 552(a)(4)(A)(ii) (2012 and Supp. IV 2016); see also, Department of Homeland Security (DHS) implementing regulations, 6 C.F.R. § 5.11(c) (2016) (providing a description of fees and the current rate structure).

CBP has clarified that you are a commercial requester. Pursuant to DHS implementing regulations, 6 C.F.R. § 5.11, commercial requesters are responsible to pay for the direct costs of searching and reviewing responsive records at the per quarter (¼) hour rate. Please be advised that, even if records are determined to be exempt from disclosure, you may still be responsible for the payment of fees determined due in accordance with 6 C.F.R. § 5.11(c).

Provisions of FOIA allow us to recover part of the cost of complying with your request. The billable rate is $28/hour for professional time and $41/hour for managerial time. The search is estimated to take 144 hours of managerial time and two hours of professional time. Pursuant to the DHS FOIA regulations at 6 C.F.R. Part 5 § 5.11, please forward a check or money order for $5,960.00 within 30 days from the date of this letter, payable to U.S. Customs and Border Protection.

A subsequent invoice will follow for the time required to review any responsive records once they have been received from the various components.

You should mail your check to:

U.S. Customs and Border Protection
Attn: Amy Miller
726 Exchange Street, Suite 400
Buffalo, New York 14210

In order to be sure your account is credited, you must reference the CBP FOIA Number **CBP-2022-005907** on your check or money order and attach it to a copy of this letter.  CBP may institute collection action pursuant to Federal debt collection statutes, which provide for recovery of interest, administrative charges, and penalty charges for handling a delinquent debt owed to the government.  Please take note there will be delay in process mailed in payments due to the staffing restrictions in the office.

In accordance with 6 C.F.R. § 5.11(e)(3), since the estimated total fee amount of $5,960.00 exceeds the fee amount that you indicated a willingness to pay in the initial FOIA request, please advise whether you wish to revise the fee amount you are willing to pay and/or wish to modify the request in a manner that will reduce the fee estimate. If desired, you may contact the undersigned at ▮▮▮▮▮▮▮▮▮▮▮▮ or assistance in reformulating your request to meet your needs at a lower cost. As required by regulation, CBP will toll the processing of this request while awaiting a response from you.

Sincerely,

Amy Miller
Government Information Specialist
Privacy and Diversity Office

# EXHIBIT 11

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

CHELSEA B SEDDON
(202) 434-5310
Cseddon@wc com

February 28, 2022

U.S. Customs and Border Protection
FOIA Officer
90 K Street, NW, 9th Floor, Mail Stop 1181
Washington, D.C. 20229-1181

**RE: FOIA Case No. CBP-2022-005907**

To Whom It May Concern:

This letter pertains to FOIA Case No. CBP-2022-005907 and responds to CBP's most recent email dated February 24, 2022.

*First*, your email asked that I provide the dates of birth for several of the individuals mentioned in my original request:

| | |
|---|---|
| Reza Zarrab | ███████ |
| Mohammad Zarrab | ███████ |
| Hossein Zarrab | ███████ |
| Abdullah Happani | ███████ |
| Camelia Jamshidy | ███████ |
| Hossein Najafzadeh | ███████ |
| Huseyin Korkmaz | ███████ |

*Second*, your email indicated that you require "a more specific description of the types of records [I am] seeking." As I outlined in my original letter, please provide "all records, including but not limited to paper or electronic files, databases, spreadsheets, documents, records of meetings (including calendar invitations or placeholders, meeting agendas, meeting minutes, meeting attendee lists) or communications (including emails, text messages, messaging application messages (*e.g.*, Skype, Lync, WhatsApp, Zoom, WebEx), memos, letters, attachments)" that

WILLIAMS & CONNOLLY LLP
RE: FOIA Case No. CBP-2022-005907
February 28, 2022
Page 2

mention the entities listed in my letter. *Shapiro v. Cent. Intel. Agency*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016) (suggesting that the size of a particular request is "irrelevant to the determination of whether [the records have] been 'reasonably described'"). To the extent it aids your search, I note that the entities mentioned in my original letter are headquartered overseas and are each associated with a sanctions evasion case pending in the Southern District of New York. *See* Case No. 1:15-cr-00867-RMB.

     *Finally*, your email asked that I provide you the Customs assigned number for each entity listed in my request. Unfortunately, I am unable to provide a Customs assigned number for these entities. However, in accordance with "the liberal standard for identification that Congress intended" when drafting FOIA, *Inst. for Just. v. Internal Revenue Serv.*, 941 F.3d 567, 572 (D.C. Cir. 2019), I respectfully ask that you search for documents that <u>mention</u> the entities listed in my original request, *see Shapiro*, 170 F. Supp. 3d at 152, 154 (request for "any and all records that were prepared, received, transmitted, collected and/or maintained by the [agencies] mentioning the deceased individual Rolihlahla Mandela (aka Nelson Mandela, aka Madiba, aka Tata)" sufficiently specific). The Agency need not produce publicly available information like press releases.

     Should you have any questions regarding this request or if any issues arise, please feel free to contact me at <u>Cseddon@wc.com</u> or 202-434-5310 to discuss this request.

     Thank you for your time and consideration.

     Sincerely,

     Chelsea B. Seddon
     Research Librarian

# EXHIBIT 12

| | |
|---|---|
| **From:** | Seddon, Chelsea |
| **To:** | Miller, Amy |
| **Subject:** | RE: Required additional information re: FOIA Case No. CBP-2022-005907 |
| **Date:** | Monday, February 28, 2022 1:03:55 PM |

Ms. Miller,

Thank you very much for your response.

I apologize for any confusion—we do not need any records for Rolihlahla Mandela. Thank you very much for clarifying. And I plan on mailing out the payment for the invoice this week, so it should get to you shortly.

Thank you again for your assistance.

Sincerely,
Chelsea

**Chelsea B. Seddon**
**Research Librarian | Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
202-434-5310 | www.wc.com
she/her/hers

---

**From:** Miller, Amy ██████████████████
**Sent:** Monday, February 28, 2022 10:43 AM
**To:** Seddon, Chelsea <cseddon@wc.com>
**Subject:** RE: Required additional information re: FOIA Case No. CBP-2022-005907

Ms. Seddon,

Thank you for the clarification.

Please take note the case has been placed on hold pending payment of the invoice that was sent on February 24, 2022.

Additionally, your original request did not ask for records on Rolihlahla Mandela and you cannot add that to the request now.

Thank you,
Amy

*Amy Miller*
*Government Information Specialist/FOIA*
*U.S. Customs and Border Protection*
*Office of the Commissioner*

**From:** Seddon, Chelsea <<u>cseddon@wc.com</u>>
**Sent:** Monday, February 28, 2022 9:57 AM
**To:** Miller, Amy ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Subject:** Required additional information re: FOIA Case No. CBP-2022-005907

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. If you feel this is a suspicious-looking email, please report by using the Report Phish button option.

Good morning,

Please see attached letter pertaining to FOIA Case No. CBP-2022-005907 and responding to CBP's most recent email dated February 24, 2022.

Should you have any questions regarding this request or if any issues arise, please feel free to contact me at <u>Cseddon@wc.com</u> or 202-434-5310 to discuss this request.

Thank you for your time and consideration.

Sincerely,

**Chelsea B. Seddon**
**Research Librarian | Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
202-434-5310 | <u>www.wc.com</u>
she/her/hers

---

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

# EXHIBIT 13

| Williams & Connolly LLP | | | | Check #: | 349251 |
| Vendor ID: | USCUS001 | Payee: | U.S. CUSTOMS AND BORDER PROTECTION | Check Date: | 02/28/2022 |

| Voucher# | Invoice Num | | Invoice Date | Invoice Amount | Payment Amt |
|---|---|---|---|---|---|
| 1979900 | 22422 | | 02/28/2022 | $5,960.00 | $5,960.00 |
| | | | | A/P Total: | 5,960.00 |

CBP FOIA # CBP-2022-005907

Mailed out 3/1/22

THIS CHECK IS VOID WITHOUT A GREEN & BLUE BACKGROUND AND AN ARTIFICIAL WATERMARK ON THE BACK - HOLD AT AN ANGLE TO VIEW

349251

**Williams & Connolly LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
ATTORNEYS AT LAW
(202) 434-5000

**BANK OF AMERICA**
150 WINDSOR STREET
HARTFORD, CT 06120

51-44/119 DC

| DATE | CONTROL NO. | AMOUNT |
|---|---|---|
| 02/28/2022 | 349251 | ***$5,960.00*** |

PAY    Five thousand nine hundred sixty and 00/100**********************************************************

TO
THE
ORDER
OF
U.S. CUSTOMS AND BORDER PROTECTION
90 K STREET NE
MS1181
WASHINGTON, DC 20229

Williams & Connolly LLP

SIGNATURE HAS A COLORED BACKGROUND • BORDER CONTAINS MICROPRINTING

# EXHIBIT 14



| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Correspondence to Requester | Update | no-reply@foiaonline.gov | cseddon@wc.com | <p>Good Morning,</p><p>I hope this email finds you well. </p><p>Please be advised that our OIT department is still several months behind and your case is in the que to be worked. They must be done in the order in which they are received.</p><p>FOIA will notify you as soon as it has been completed.</p><p>Thank you</p> | | No | No | 4/22/2022, 8:27 AM | | Miller, Amy | Seddon, Chelsea |
| Correspondence to Requester | FOIA Update 2022-005907 | no-reply@foiaonline.gov | cseddon@wc.com | <p>Good Morning,</p><p>Please accept this email as another update as to the delay in this FOIA request.  OIT is working diligently on a large backlog of cases and this will be worked in the order it was received.</p> | | No | No | 5/22/2022, 8:40 AM | | Miller, Amy | Seddon, Chelsea |
| Correspondence to Requester | 2022-005907 | no-reply@foiaonline.gov | cseddon@wc.com | <p>Good Afternoon,</p><p>FOIA has not forgotten about your request!  As exlained, the OIT department is working off a large backlog.  This case has reached the docket for processing to search for any responsive records.</p><p>FOIA hopes to have an answer for you on this case in the next two weeks.</p><p>Thank you for your patience.</p><p>FOIA TEAM</p> | | No | No | 7/22/2022, 12:29 PM | | Miller, Amy | Seddon, Chelsea |
| Correspondence to Requester | Final Disposition, Request CBP-2022-005907 | no-reply@foiaonline.gov | cseddon@wc.com | CBP-2022-005907 has been processed. | | Yes | No | | | Miller, Amy | Seddon, Chelsea |

# EXHIBIT 15

1300 Pennsylvania Avenue, NW
Washington, DC 20229

October 4, 2022

Sent via FOIA online email: cseddon@wc.com

Ms. Chelsea B. Seddon
Williams and Connolly, LLP
725 Twelfth Street NW
Washington, D.C. 20005

Re: **FOIA Request Number CBP-2022-005907**

Dear Ms. Seddon:

This is in response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) submitted on October 19, 2021, in which you requested documents pertaining to several individuals and businesses.

A search of CBP databases produced records responsive to your request. CBP has considered the foreseeable harm standard when reviewing the record set and has applied the FOIA exemptions as required by the statute and the Attorney General's guidance

1.

All documents are withheld in full pursuant to Title 5 U.S.C. § 552 (b)(6), (b)(7)(C), and (b)(7)(E).

Based on the information you have provided, there are no records for the businesses listed on your request.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right to privacy. [The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, driver's license, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.] The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in

disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal

1 Department of Justice (DOJ), "Freedom of Information Act Guidelines," March 15, 2022,

https://www.justice.gov/ag/page/file/1483516/download

Ms. Chelsea B. Seddon

October 4, 2022

Page 2

privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate.

**FOIA Exemption (b)(7)(E),** which protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions; or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. CBP has determined that disclosure could reasonably be expected to risk circumvention of the law.

Additional information regarding the applicable exemptions and response can be found at the following link: https://www.cbp.gov/document/guidance/exemption-definitions

.

Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

This completes the CBP response to your request. You may contact CBP's FOIA Public Liaison, Charlyse Hoskins, by sending an email via your FOIAonline account, mailing a letter to 90 K St, NE MS 1181, Washington DC, 20229 or by calling 202-325-0150. The FOIA Public Liaison is able to assist in advising on the requirements for submitting a request, assist with narrowing the scope of a request, assist in reducing delays by advising

the requester on the type of records to request, suggesting agency offices that may have responsive records and receive questions or concerns about the agency's FOIA process. Please notate file number **CBP-2022-005907** on any future correspondence to CBP related to this request.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. 552(c). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you are not satisfied with the response to this request, you have a right to appeal the final disposition. Should you wish to do so, you must file your appeal within 90 days of the date of this letter following the procedures outlined in the DHS regulations at Title 6 C.F.R. §5.8. Please include as much information as possible to help us understand the grounds for your appeal. You should submit your appeal via FOIAonline by clicking on the "Create Appeal" button that appears when you view your initial request. If you do not have computer access, you may send your appeal and a copy of this letter to: FOIA Appeals, Policy and Litigation Branch, U.S. Customs and Border Protection, 90 K Street,

Ms. Chelsea B. Seddon

October 4, 2022

Page 3

NE, 10th Floor, Washington, DC 20229-1177. Your envelope and letter should be marked "FOIA Appeal."

Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov

; telephone at

202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769. Please note that contacting the CBP FOIA Public Liaison or OGIS **does not** stop the 90-day appeal clock and **is not** a substitute for filing an administrative appeal.

Sincerely,


U.S. Customs and Border Protection/FOIA Division
Privacy & Diversity Office

# EXHIBIT 16

LAW OFFICES

## WILLIAMS & CONNOLLY LLP®

CHELSEA B. SEDDON
(202) 434-5310
cseddon@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

December 28, 2022

U.S. Customs and Border Protection
FOIA Appeals, Policy and Litigation Branch
90 K Street NE
Washington, D.C. 20229

**RE: FOIA APPEAL OF REQUEST NO. CBP-2022-005907**

To Whom It May Concern:

This letter pertains to FOIA request CBP-2022-005907; it is intended to formally appeal the response provided by U.S. Customs and Border Protection for this request. *See* 5 U.S.C. § 552(a)(6)(A) (discussing requester's right to appeal). My original request asked for information pertaining to several individuals associated with a criminal case in the Southern District of New York. *See* Case No. 1:15-cr-00867-RMB (S.D.N.Y.). Specifically, I sought information pertaining to Reza Zarrab, Mohammad Zarrab, Hossein Zarrab, Abdullah Happani, Camelia Jamshidy, Hossein Najafzadeh, and Huseyin Korkmaz. *See* Attachment A. CBP's final response indicated that it had found responsive documents but that it was withholding all documents pursuant to FOIA Exemption 6, 7(C), and 7(E). *See* Attachment B. I appeal each determination.

### A.    Documents were improperly withheld pursuant to Exemption 6 & 7(C).

To the extent CBP denied my request after determining that the privacy interests of those mentioned in my request outweigh the public's right to access responsive documents, that was in error. As I explain, the public's interest in disclosure clearly outweighs any privacy interests at stake.

Two of the individuals mentioned in my original request, Reza Zarrab and Huseyin Korkmaz, are government witnesses in a public proceeding. One is testifying pursuant to a cooperation agreement. The public, which has a right to attend these proceedings, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980), should be able to know the extent to which these individuals have an incentive to curry favor with the government, *see Giglio v. United States*, 405 U.S. 150, 153–54 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility" is "incompatible with rudimentary demands of justice." (cleaned up)). The first individual—Reza Zarrab—has pleaded guilty to sanctions evasion and bank fraud charges but has yet to be sentenced. The second— Huseyin Korkmaz—is a fugitive from justice in the Republic of Turkey who has admitted to,

WILLIAMS & CONNOLLY LLP®

December 28, 2022
Page 2

among other offenses, theft of materials belonging to the Turkish government. The release of responsive documents as to these individuals is thus clearly in the public interest.

The same is true for documents pertaining to Mohammad Zarrab and Hossein Zarrab. Mohammad Zarrab, Reza Zarrab's brother, has already been indicted by the government after an investigation that was led by the FBI. Indeed, he is mentioned in numerous Department of Justice press releases. Hossein Zarrab, Reza Zarrab's father, owns a business that was previously fined for violating U.S. sanctions almost 10 years ago. Documents pertaining to both individuals speak to the extent to which Reza Zarrab has an incentive to curry favor with the government.

Lastly, Hossein Najafzadeh, Camelia Jamshidy, and Abdullah Happani have likewise been indicted in the same sanctions evasion case. Each has been mentioned in public proceedings in the Southern District of New York and each has been mentioned in publicly available press releases issued by the Department of Justice. Individuals have a substantially reduced privacy interest in information that is already in the public domain. *See Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 840 F. Supp. 2d 226, 233 (D.D.C. 2012). Thus, as with documents pertaining to the other individuals mentioned in my original request, information pertaining to Hossein Najafzadeh, Camelia Jamshidy, and Abdullah Happani is likewise subject to disclosure.

As CBP knows, in conducting the public interest balancing test, one must consider "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994) (cleaned up). The information sought would shed light not only on the extent to which CBP is performing its statutory duties, but on the extent to which other departments of the government (including the Department of Justice and the FBI) are performing their statutory duties as well. The information sought would also speak to the legitimacy of public proceedings in our nation's courts. In these circumstances, the public's interest in disclosure clearly outweighs any privacy interests at stake in this case.

Finally, even if certain aspects of certain documents are not subject to disclosure because of the privacy interests at stake (a proposition I seriously doubt), I nevertheless ask that you provide all "reasonably segregable portion[s]" of all documents not falling within a FOIA exemption. 5 U.S.C. § 552(b).

**B.      Documents were improperly withheld pursuant to Exemption 7(E).**

CBP likewise erred to the extent it withheld responsive documents pursuant to Exemption 7(E). That is so for three reasons.

*First*, it is hardly plausible that releasing any document that mentions the individuals in my request would reveal techniques and procedures for law enforcement investigations or implicate any of the other concerns outlined in Exemption 7(E). Exemption 7(E) is inapplicable if the techniques and procedures at issue are generally known to the public. *See Elec. Priv. Info. Ctr. v.*

WILLIAMS & CONNOLLY LLP®

December 28, 2022
Page 3

*Customs & Border Prot.*, 160 F. Supp. 3d 354, 359 (D.D.C. 2016). Categorically withholding documents merely because a responsive document may touch on law enforcement techniques or procedures is inappropriate.

*Second*, even if releasing responsive documents would implicate the concerns covered by Exemption 7(E) (a point I do not concede), CBP's response fails to provide an adequate justification for its invocation of Exemption 7. The response here is entirely conclusory. It simply tracks Exemption 7(E)'s language and provides no insight into "what procedures are at stake," "how disclosure [of responsive documents] could reveal such procedures," or how a "reader [could] extrapolate what the procedures are from the information contained therein." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1102 (D.C. Cir. 2014). CBP "must at least provide *some* explanation of what procedures are involved and how they would be disclosed" in order to properly invoke Exemption 7(E). *Id.* In order to evaluate the adequacy of the CBP's justification, I respectfully ask that the CBP provide its updated response in the form of a *Vaughn* index. *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

*Finally*, CBP's response is inadequate insofar as it failed to produce all "reasonably segregable portion[s]" of the exempted documents, which portions do not fall within the scope of Exemption 7(E). 5 U.S.C. § 552(b). It is not credible that *all documents and all portions of those documents* in the possession of CBP that mention the individuals in my letter fall within the scope of the exemption. *See Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 779 (9th Cir. 2015) ("The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed."). I therefore again respectfully ask that CBP produce all "reasonably segregable portion[s]" of all responsive documents that do not fall within the scope of Exemption 7(E), or adequately explain why the documents in total cannot be disclosed.

*         *         *

For these reasons, CBP's handling of my request was inadequate. Should you have any questions regarding this appeal or if any issues arise, please feel free to contact me at Cseddon@wc.com or 202-434-5310.

Thank you for your time and consideration.

Sincerely,

Chelsea B. Seddon
Research Librarian


Attachments:  [A]     Initial FOIA Request
              [B]     CBP Final Response

# EXHIBIT 17



1300 Pennsylvania Avenue, NW
Washington, DC 20229

RR:RDL:DLJA
CBP-AP-2023-001515 WAS

September 26, 2023

Chelsea Seddon
Williams and Connolly, LLP
680 Maine Ave., S.W.
Washington, D.C. 20024

RE:    Freedom of Information Act Appeal; Appeal of CBP-2022-005907

Dear Ms. Seddon:

This letter is in response to your submission of December 28, 2022, which was received by my office on July 19, 2023, that appeals the response of the U.S. Customs and Border Protection ("CBP") Freedom of Information Act ("FOIA") Division to the FOIA request that you made for records related to several individuals and companies associated with a criminal case in the Southern District of New York, Case No. 1:15-cr-00867-RMB (S.D.N.Y.). By this letter, we affirm the decision of the FOIA Division, withholding all responsive third party records in full.

## I.    Procedural Posture

Your initial FOIA request to CBP was submitted on October 19, 2021. In your initial FOIA request, you requested the following:

> All records, including but not limited to paper or electronic files, databases, spreadsheets, documents, records of meetings (including calendar invitations or placeholders, meeting agendas, meeting minutes, meeting attendee lists) or communications (including emails, text messages, messaging application messages (*e.g.*, Skype, Lync, WhatsApp, Zoom, WebEx), memos, letters, attachments), referring or relating to any of the following:
>
> 1. Reza Zarrab (date of birth ▮▮▮▮▮▮), a/k/a Riza Zarrab, a/k/a Reza Sarraf, a/k/a Riza Sarraf, an individual that has pleaded guilty to sanctions evasion in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB;
>
> 2. Royal Holding, A.S., a company affiliated with Reza Zarrab;
>
> 3. Royal Group, a company affiliated with Reza Zarrab;
>
> 4. Atlantis Capital, a company affiliated with Reza Zarrab;

5. Bella Investments, a company affiliated with Reza Zarrab;

6. Mohammad Zarrab, a/k/a Mohammad Sarraf, the brother of Reza Zarrab who has been indicted for sanctions evasion in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB;

7. Hossein Zarrab, a/k/a Hossein Sarraf, father of Reza Zarrab;

8. Al Nafees Exchange LLC, a company affiliated with Reza Zarrab and Hossein Zarrab;

9. Abdullah Happani, an individual that has been indicted for sanctions evasion in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB;

10. Camelia Jamshidy, an individual that has been indicted for sanctions evasion in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB;

11. Hossein Najafzadeh, an individual that has been indicted for sanctions evasion in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB; and

12. Huseyin Korkmaz, an individual that is mentioned in government pleadings in a sanctions evasion case in the Southern District of New York, *see* Case No. 1:15-cr-00867-RMB.

This request extends to documents created from January 1, 2007, through the date of this search.

In its response dated October 4, 2022, the FOIA Division stated that "[a] search of CBP databases produced records responsive to your request. CBP has considered the foreseeable harm standard when reviewing the record set and has applied the FOIA exemptions as required by the statute and the Attorney General's guidance. All documents are withheld in full pursuant to Title 5 U.S.C. § 552 (b)(6), (b)(7)(C), and (b)(7)(E). Based on the information you have provided, there are no records for the businesses listed on your request."

In your recent submission dated December 28, 2022, which was received by my office on July 19, 2023, you appeal the response of the CBP FOIA Division that was issued on October 4, 2022. Specifically, you stated as follows:

This letter pertains to FOIA request CBP-2022-005907; it is intended to formally appeal the response provided by U.S. Customs and Border Protection for this request. *See* 5 U.S.C. § 552(a)(6)(A) (discussing requester's right to appeal). My original request asked for information pertaining to several individuals associated with a criminal case in the Southern District of New York. *See* Case No. 1:15-cr-00867-RMB (S.D.N.Y.). Specifically, I sought information pertaining to Reza Zarrab, Mohammad Zarrab, Hossein Zarrab, Abdullah Happani, Camelia Jamshidy, Hossein Najafzadeh, and Huseyin Korkmaz. *See* Attachment A. CBP's final response indicated that it had found responsive

documents but that it was withholding all documents pursuant to FOIA Exemption 6, 7(C), and 7(E). *See* Attachment B. I appeal each determination.

You further state that documents were improperly withheld pursuant to Exemptions (b)(6) and (b)(7)(C). You state that to the extent CBP denied your request after determining that the privacy interests of those mentioned in your request outweighed the public's right to access responsive documents, you submit that was in error. You maintain that the public's interest in disclosure clearly outweighs any privacy interests at stake.

You further stated as follows:

Two of the individuals mentioned in my original request, Reza Zarrab and Huseyin Korkmaz, are government witnesses in a public proceeding. One is testifying pursuant to a cooperation agreement. The public, which has a right to attend these proceedings, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980), should be able to know the extent to which these individuals have an incentive to curry favor with the government, *see Giglio v. United States*, 405 U.S. 150, 153–54 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility" is "incompatible with rudimentary demands of justice." (cleaned up)). The first individual—Reza Zarrab—has pleaded guilty to sanctions evasion and bank fraud charges but has yet to be sentenced. The second— Huseyin Korkmaz—is a fugitive from justice in the Republic of Turkey who has admitted to, among other offenses, theft of materials belonging to the Turkish government. The release of responsive documents as to these individuals is thus clearly in the public interest.

The same is true for documents pertaining to Mohammad Zarrab and Hossein Zarrab. Mohammad Zarrab, Reza Zarrab's brother, has already been indicted by the government after an investigation that was led by the FBI. Indeed, he is mentioned in numerous Department of Justice press releases. Hossein Zarrab, Reza Zarrab's father, owns a business that was previously fined for violating U.S. sanctions almost 10 years ago. Documents pertaining to both individuals speak to the extent to which Reza Zarrab has an incentive to curry favor with the government.

Lastly, Hossein Najafzadeh, Camelia Jamshidy, and Abdullah Happani have likewise been indicted in the same sanctions evasion case. Each has been mentioned in public proceedings in the Southern District of New York and each has been mentioned in publicly available press releases issued by the Department of Justice. Individuals have a substantially reduced privacy interest in information that is already in the public domain. *See Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 840 F. Supp. 2d 226, 233 (D.D.C. 2012). Thus, as with documents pertaining to the other individuals mentioned in my original request, information pertaining to Hossein Najafzadeh, Camelia Jamshidy, and Abdullah Happani is likewise subject to disclosure.

As CBP knows, in conducting the public interest balancing test, one must consider "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994) (cleaned up).The information sought would shed light not only on the extent to which CBP is performing its statutory duties, but on the extent to which other departments of the government (including the Department of Justice and the FBI) are performing their statutory duties as well. The information sought would also speak to the legitimacy of public proceedings in our nation's courts. In these circumstances, the public's interest in disclosure clearly outweighs any privacy interests at stake in this case.

Furthermore, you argued that documents were improperly withheld pursuant to Exemption (b)(7)(E). You stated as follows:

CBP likewise erred to the extent it withheld responsive documents pursuant to Exemption 7(E). That is so for three reasons. *First*, it is hardly plausible that releasing any document that mentions the individuals in my request would reveal techniques and procedures for law enforcement investigations or implicate any of the other concerns outlined in Exemption 7(E). Exemption 7(E) is inapplicable if the techniques and procedures at issue are generally known to the public. *See Elec. Priv. Info. Ctr. v. Customs & Border Prot.*, 160 F. Supp. 3d 354, 359 (D.D.C. 2016). Categorically withholding documents merely because a responsive document may touch on law enforcement techniques or procedures is inappropriate.

*Second*, even if releasing responsive documents would implicate the concerns covered by Exemption 7(E) (a point I do not concede), CBP's response fails to provide an adequate justification for its invocation of Exemption 7. The response here is entirely conclusory. It simply tracks Exemption 7(E)'s language and provides no insight into "what procedures are at stake," "how disclosure [of responsive documents] could reveal such procedures," or how a "reader [could] extrapolate what the procedures are from the information contained therein." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1102 (D.C. Cir. 2014). CBP "must at least provide *some* explanation of what procedures are involved and how they would be disclosed" in order to properly invoke Exemption 7(E). *Id.* In order to evaluate the adequacy of the CBP's justification, I respectfully ask that the CBP provide its updated response in the form of a *Vaughn* index. *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

*Finally*, CBP's response is inadequate insofar as it failed to produce all "reasonably segregable portion[s]" of the exempted documents, which portions do not fall within the scope of Exemption 7(E). 5 U.S.C. § 552(b). It is not credible that *all documents and all portions of those documents* in the possession of CBP that mention the individuals in my letter fall within the scope of the exemption. *See Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 779 (9th Cir. 2015) ("The burden is on the agency to

establish that all reasonably segregable portions of a document have been segregated and disclosed."). I therefore again respectfully ask that CBP produce all "reasonably segregable portion[s]" of all responsive documents that do not fall within the scope of Exemption 7(E), or adequately explain why the documents in total cannot be disclosed.

You did not submit any additional information with your appeal. As such, we interpret your appeal to mean that you are challenging the withholding in full of the third party records of any individual subjects you identified that are responsive to your initial request by FOIA Division.

## II.    **Appeals Determination**

In response to your appeal, an attorney on my staff and I reviewed the FOIA Division case file. As a result of this review, we affirm the FOIA Division's decision to withhold in full responsive third party records of any individuals you identified pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E). We note that FOIA Division did not find any responsive records related to the companies listed on your request.

The FOIA "was enacted to facilitate public access to Government documents." *U.S. Dep't of State v. Ray,* 502 U.S. 164, 173 (1991). While the FOIA espouses "a general philosophy of full agency disclosure." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976), some governmental information is exempted from release under the FOIA under clearly delineated statutory language. 5 U.S.C. § 552(b) et seq. Thus, while "disclosure, not secrecy, is the dominant objective of [FOIA]," there are some records that exist outside the statute's broad reach. *Rose*, 425 U.S. at 361.The predominant objective of the FOIA is the disclosure of executive branch information that is maintained by the Federal Government to the public unless the requested records contain certain categories of information that are exempt or excluded from compelled disclosure. FOIA provides nine exemptions and three exclusions pursuant to which an agency may withhold requested information. Thus, the public's right to government information is not without limits. However, FOIA exemptions are to be narrowly construed, and the burden is on the government to demonstrate that the materials sought may be withheld due to one or more of the exemptions. Further, FOIA exemptions have been applied to withhold responsive information or records when the agency reasonably foresees that disclosure would harm an interest protected by one of the nine FOIA exemptions. This is to inform you that we have considered the foreseeable harm standard when reviewing records and applying FOIA exemptions.

In any event, the FOIA provides that any non-exempt information that is reasonably segregable from the requested records must be disclosed. The segregability requirement limits claims of exemption to discrete units of information; to withhold an entire document, all units of information in that document must fall within a statutory exemption. See *Trans-Pac. Policing Agreement v. U.S. Customs Serv.,* 177 F. 3d 1022, 1027 (D.C. Cir. 1999). Further, the FOIA does not obligate agencies to create or retain documents nor require an agency to produce information that does not exist in record form or create a document that answers a requester's questions. See *Frank v. U.S. Dep't of Justice,* 941 F. Supp. 4, 5 (D.D.C. 1996); *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136,

152 (1980).

We are unable to provide you with any segregable portion of the records due to the applicability of Exemptions (b)(6) and (b)(7)(C) and the nature of reasonably foreseeable harm from any disclosure or records. The direct language of the Freedom of Information Act instructs federal agencies to provide any "reasonably segregable portion of a record" to "any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. §552(b). We do not take this charge lightly. To comport with this requirement, this office undertook a review of the records and "differentiate[d] among the contents of a document rather than to treat it as an indivisible 'record' for FOIA purposes." *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 626 (1982). We limited our withholdings to that information in which "the agency reasonably foresees that disclosure would harm an interest protected by an exemption," 5 U.S.C. §552(a)(8)(A)(i), as described in further detail below. FOIA exemptions have been applied to withhold responsive information or records when the agency reasonably foresees that disclosure would harm an interest protected by one of the nine FOIA exemptions. This is to inform you that we have considered the foreseeable harm standard when reviewing records and applying FOIA exemptions. Even if information technically fell within the bounds of an exemption, we did not withhold it unless we could identify any foreseeable harm that would flow from its release.

After a thorough review, we affirm FOIA Division's determinations and continue to protect the responsive records initially withheld by FOIA Division pursuant to Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).

### A.  Protection of the Personal Privacy Interests of CBP Employees and Third Parties Pursuant to Exemptions (b)(6) and (b)(7)(C)

Exemptions (b)(6) and (b)(7)(C) both relate to protecting personal privacy and have been applied here to protect personally identifiable information (PII) of CBP and other law enforcement employees and third parties identified and mentioned in the records, specifically the names and identities of the individuals, telephone numbers and contact information, identification numbers, and other identifying information of the individuals, as well as other information in addition to PII where identities of individuals would be made apparent by certain detailed information in the record and its context. We note that disclosure of the responsive records would betray the privacy interests protected by Exemptions (b)(6) and (b)(7)(C) and have been invoked here to protect PII and the privacy interest of any third parties named as the subjects of your request that are identified and mentioned in the records.

Under the FOIA, privacy encompasses the "individual's control of information concerning his or her person." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989). Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption (b)(7)(C) excludes records or information compiled for law enforcement purposes, but only to the extent that the production of such materials "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

As a threshold requirement, Exemption (b)(6) can only be applied to "personnel and medical and similar files." 5 U.S.C. § 552(b)(6). However, the range of documents falling within these categories is interpreted broadly so as to include all government records "which can be identified as applying to that individual." *Dep't of State v. Washington Post*, 456 U.S. 595, 602 (1982) (quoting H. R. Rep. No. 1497, 89th Cong., 2nd Sess., 11 (1966)). In other words, all information that "applies to a particular individual," *i.e.*, PII such as a person's name, address, phone number, date of birth, criminal history, medical history, and social security number, meets the threshold requirement for Exemption (b)(6) protection as privacy interests cognizable under the FOIA are found to exist in such PII. In addition, PII, such as a person's name, address, email address, image, computer user ID, phone number, date of birth, criminal history, medical history, and social security number, are generally found to have substantial privacy interests cognizable under the FOIA. See *Washington Post*, 456 U.S. at 600. The privacy interest inherent in the exemption "belongs to the individual, not the agency holding the information." *Reporters Comm. for Freedom of the Press*, 489 U.S. at 763-65.

In this case, CBP withheld all PII of CBP and other law enforcement employees and third parties mentioned and identified in the records, to include names and identity of the individuals, telephone numbers and contact information,  identification numbers, and other identifying information of those mentioned and identified in the records, as well as other information in addition to PII where identities of individuals would be made apparent by certain detailed information in the record and its context. The PII and other identifying information could offer enough detail to reveal the identity of the individuals mentioned and identified in the records. Such information applies to the individuals mentioned in the records. See *Washington Post*, 456 U.S. at 602.

Once the threshold is met, Exemption (b)(6) requires a balancing of the public's right to know against an individual's right to privacy to determine whether disclosure of the records at issue would constitute a clearly unwarranted invasion of a person's privacy. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 762; *Dep't of the Air Force v. Rose,* 425 U.S. 352, 372-73 (1976).  That balance can be properly struck where "personal references or other identifying information [are] deleted." *Rose*, 425 U.S. at 380.  In order to compel release of materials, there must be a public interest because "something, even a modest privacy interest outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 879 (D.C. Cir. 1989).

The privacy interests to be protected in this case concern the PII of CBP employees, other law enforcement employees, and third parties identified and mentioned in the records, to include names and identity of the individuals, telephone numbers and contact information, identification numbers, and other identifying information of those mentioned and identified in the records, as well as other information in addition to PII where identities of individuals would be made apparent by certain detailed information in the record and its context. Such individuals have a clear expectation of privacy. See *Pons v.U.S. Customs Serv.,* 1998 U.S. Dist. LEXIS 6084 (D.D.C. 1998).

The privacy consideration in this case is to protect CBP and other law enforcement employees from unnecessary "harassment and annoyance in the conduct of their official duties and in their private lives," which could conceivably result from the public disclosure of their identities. *Nix v. U.S.*, 572 F.2d 998, 1006 (4th Cir. 1978). In addition, as personnel of a "security agency," the CBP employees mentioned in the records have a substantial privacy interest in their information not being released to the public. See 5 CFR 293.311; Memorandum from CBP Acting Commissioner Mark Morgan, *All CBP Designated as a Security Agency under Office of Personnel Management* (January 31, 2020). The privacy consideration is also to protect private persons or third-party individuals from "unnecessary, unofficial questioning, harassment and stigmatization," which could conceivably result from the public disclosure of their identities, and to protect their privacy interests in the avoidance of reprisals and embarrassment caused by being mentioned in law enforcement and investigative records and systems, as well as in keeping personal information private. See *Nix,* 572 F.2d at 1006; *Barnard v. Dep't of Homeland Security,* 598 F.Supp. 2d 1, 12 (D.D.C. 2009) (individuals have a privacy interest in avoiding "unnecessary, unofficial questioning, harassment and stigmatization").

The key calculus in identifying a public interest is whether the requested information would reveal "the citizens' right to be informed about what their government is up to." *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773 (Information that informs the public about "an agency's performance of its statutory duties falls squarely within that statutory purpose.") When disclosure could result in an invasion of personal privacy, the requester bears the burden of establishing that disclosure would serve a FOIA public interest, i.e., a showing of how the requested information would shed light on the agency's performance of its statutory duties. See *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) ("Where the privacy concerns . . . are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure."); *Associated Press v. Dep't of Defense,* 549 F.3d 62, 66 (2d Cir. 2008) ("The requesting party bears the burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA.")

While the FOIA's purpose "is furthered by disclosure of official information that 'sheds light on an agency's performance of its statutory duties,'" "[i]nformation that "reveals little or nothing about an agency's own conduct" does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." *Beck v. Dep't of Justice,* 997 F.2d 1489, 1493 (D.C.Cir.1993) (quoting *Reporters Comm. For Freedom of the Press,* 489 U.S. at 773). In order to compel release of this information, there must be a public interest because "something, even a modest privacy interest outweighs nothing every time." See *Horner,* 879 F.2d at 879; *Cappabianca v. Commissioner, United States Customs Service,* 847 F. Supp. 1558, 1564 (M.D. Fla. 1994).

In this case, you do not indicate how the CBP and other law enforcement employee or third-party PII contained in the records would shed light on how the agency performs its statutory duties. You claim that "[t]he information sought would also speak to the legitimacy of public proceedings in our nation's courts." However, this stated interest is not a public interest contemplated by FOIA as it does not shed light on any agency action. Thus, no identifiable public interest in this information has been asserted by you. Further,

this stated interest is insufficient to outweigh any privacy interests. Without any genuine public interest, there is little reason to disclose the withheld PII that could identify the CBP and other law enforcement employees and third parties mentioned in the records, to include names and identity of the individuals, telephone numbers and contact information, identification numbers, and other identifying information of those mentioned and identified in the records, as well as other information in addition to PII where identities of individuals would be made apparent by certain detailed information in the record and its context. See *id.*

We further find that the individuals' right to privacy outweighs whatever public interest, if any, might exist in knowing the information such as the individuals' identities. See *Reporters Comm. for Freedom of the Press*, 489 U.S. at 762; *Rose*, 425 U.S. at 380. Moreover, disclosing the information withheld from the documents in this case, *i.e.,* the PII that would identify CBP and other law enforcement employees and third parties, as well as other information in addition to PII where identities of individuals would be made apparent by certain detailed information in the record and its context, is unlikely to further the goals of the FOIA, namely "to open agency action to the light of public scrutiny." *Rose*, 425 U.S. at 372.

Further, the identities of CBP and other law enforcement employees and third parties, which would be revealed when releasing the names and other identifying PII of those individuals, and the activities of private persons, which would be revealed when releasing the PII and requested records of any named individuals, shed no light on agency action. Releasing the name and other identifying information would fail to protect CBP and other law enforcement employees from unnecessary "harassment and annoyance in the conduct of their official duties and in their private lives," and third parties from "unnecessary, unofficial questioning, harassment and stigmatization," which could undoubtedly result from the public disclosure of their identities. *Nix*, 572 F.2d at 1006; *Barnard,* 598 F.Supp. at 12. There is a substantial privacy interest in keeping the CBP and other law enforcement employees' and third parties' identities protected.

In your appeal correspondence, you seem to argue that because individuals named in your request are either "government witnesses in a public proceeding," "have been indicted by the government after an investigation," or "mentioned in publicly available press releases" that these individuals have a diminished privacy interest. However, your argument is without substance. In this regard, we note that although courts have found that an individual's status as a public figure might in some circumstances factor into the privacy balance, a public figure does not, by virtue of their status, forfeit all rights of privacy. See *Jud. Watch, Inc. v. Dep't of Justice,* 394 F. Supp. 3d 111, 118 (D.D.C. 2019) (finding that subject's FBI related notoriety certainly weakens their privacy interest but that their status as a "public figure with a well-known association with the FBI does not, to be sure, destroy his privacy interest in other communications he may have had with the FBI"); *Canaday v. ICE,* 545 F. Supp. 2d 113, 118 (D.D.C. 2008) (stating that public figures "do not forfeit all vestiges of privacy").

We moreover cannot identify a public interest sufficient to violate those interests. As with any agency records, the only public interest we consider is that of the FOIA itself: "the

preservation of 'the citizens' right to be informed about what their government is up to." *Beck*, 997 F.2d at 1492. Information that "reveals little or nothing about an agency's own conduct" does not further that public interest. *Reporters Committee*, 489 U.S. at 773. The public interest therefore cannot outweigh any privacy interest held by the subjects of the request. We therefore "need not linger over the balance" as "something, even a modest privacy interest, outweighs nothing every time." *Horner,* 879 F.2d at 879; *Cappabianca,* 847 F. Supp. at 1564. Accordingly, the withheld PII (the names and identities, identification number, dates of birth, passport and travel document numbers, addresses and contact information, and other identifying information of those mentioned and identified in the records, as well as other information in addition to PII where identities of individuals would be made apparent by certain detailed information in the record and its context) is properly withheld under the provisions of Exemption (b)(6).

In addition to the application of Exemption (b)(6), Exemption (b)(7)(C) is also utilized in withholding this information in the records from disclosure. Exemption (b)(7)(C) exempts from disclosure "records and information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). This exemption applies to civil, criminal, and administrative law enforcement proceedings, and protects, among other information, the identity of law enforcement personnel referenced in files compiled for law enforcement purposes. The primary consideration is to protect CBP and other law enforcement agency employees as individuals from unnecessary, unofficial questioning and harassment as to the conduct of their duties. *Nix v. United States,* 572 F.2d 998, 1006 (4th Cir. 1978*)*. In addition, as noted, as personnel of a "security agency," the CBP employees mentioned in the records have a substantial privacy interest in their information not being released to the public. See 5 CFR 293.311; Memorandum from CBP Acting Commissioner Mark Morgan, *All CBP Designated as a Security Agency under Office of Personnel Management* (January 31, 2020). Exemption (b)(7)(C) is also intended to protect third parties whose identities are revealed in law enforcement files from comment, speculation and stigmatizing connotation associated with being identified in a law enforcement record.

Although the protections available under Exemption (b)(7)(C) are not the same as Exemption (b)(6), the analysis is the same, requiring the balancing of the privacy interests involved against the public interest in disclosure. *Lewis v. Dep't of Justice*, 609 F.Supp.2d 80, 84 (D.D.C. 2009). However, because Exemption (b)(7)(C) contains broader protections than Exemption (b)(6)[1], the two Exemptions differ in the "magnitude of the public interest that is required" to overcome the privacy interests involved, with an extra thumb on scale in favor of redaction once Exemption (b)(7)(C) privacy issues are implicated. *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994).

Like Exemption (b)(6), Exemption (b)(7)(C) has also been found to protect the privacy interests of all persons mentioned in law enforcement records, including

---

[1] Exemption (b)(7)(C)'s privacy language is broader than the comparable language in Exemption (b)(6) in two respects. First, whereas Exemption (b)(6) requires that the invasion of privacy be "clearly unwarranted," the adverb "clearly" is omitted from Exemption (b)(7)(C). Second, whereas Exemption (b)(6) refers to disclosures that "would constitute" an invasion of privacy, Exemption (b)(7)(C) encompasses any disclosure that "could reasonably be expected to constitute" such an invasion. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 762.

investigators, suspects, witnesses, and informants. *Lewis*, 609 F. Supp. 2d at 84. Courts also place a strong emphasis on the propriety of broadly protecting the interests of private citizens whose names or identities are in a record that the government "happens to be storing." *Reporters Comm. for Freedom of the Press*, 489 U.S. at 780; see also *id.* at 774-75 (declaring that "it should come as no surprise that in none of our cases construing the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen"). The privacy interest at play under Exemption (b)(7)(C) in protecting the CBP employee, other law enforcement employee, and third-party information located in law enforcement documents is so strong, though, that courts have found that such information is "categorically exempt" from production "unless access to the names and addresses of private individuals… is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *SafeCard Services, Inc. v. U.S. Sec. & Exchange Comm'n.*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

Once the threshold requirement that the information be found in "law enforcement" records is met[2] and the privacy interests described in Exemption (b)(7)(C) are triggered, the onus shifts to the requester to show government misconduct. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). That showing must be "more than a bare suspicion" of official misconduct – it must "warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 174. Otherwise, the balancing requirement does not come into play. *Boyd v. Dep't of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007).

In this case, having determined the information found in question to be located in a law enforcement record and without any evidence indicating misconduct, all PII of third parties mentioned and identified in the records, to include names of the individuals, telephone numbers and contact information, and identifying user identification numbers, as well as other information in addition to PII where identities of individuals would be made apparent by certain detailed information in the record and its context, have been withheld. Moreover, there is no public interest to be served in this case by placing the identity of the CBP employees, other law enforcement employees, and third parties before the public. Thus, we conclude that Exemption (b)(7)(C) is applicable to withhold the information from disclosure.

## B.    Protection of Law Enforcement Techniques, Procedures, and Guidelines Pursuant to Exemptions (b)(7)(E)

We have withheld in full information in the responsive records pursuant to Exemption (b)(7)(E) which exempts material that was compiled for law enforcement purposes and that would disclose previously unknown "techniques and procedures" or "guidelines" for "law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). As discussed above, there is no question that the responsive records were compiled for law enforcement purposes.

---

[2] It is well established that CBP has a law enforcement mandate. *Coastal Delivery Corp. v. U.S. Customs Serv.*, 272 F. Supp. 2d 958, 963 (C.D. Cal. 2003). The records in this case were compiled in CBP's ongoing efforts to enforce the border security and immigration laws of this country and to protect this country from outside threats. The records are therefore in clear furtherance of that law enforcement mandate.

Application of this exemption is limited, however, to cases in which disclosure "could reasonably be expected to risk circumvention of the law." *Id.* Exemption (b)(7)(E) "sets a relatively low bar for the agency to justify withholding." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 42 (D.C. Cir. 2011). "To clear that relatively low bar, an agency must demonstrate only that release of a document might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'" *James Madison Project v. Dep't of Justice*, 2016 U.S. Dist. LEXIS 129453 (D.D.C. Sept. 22, 2016). Once determined that information falls within Exemption (b)(7)(E)'s purview, it does not suffer a balancing test similar to other exemptions. Rather, information that falls within Exemption (b)(7)(E)'s purview is "categorically exempt" from disclosure. *Fisher v. Dep't of Justice*, 772 F.Supp. 7, 12 at n. 9 (D.D.C. 1991). The threshold requirement is that the information be found in "law enforcement" records.

In your appeal, you challenged the exemption by stating that it is not plausible that releasing any document that mentions the individuals in your request would reveal techniques and procedures for law enforcement investigations or implicate any of the other concerns outlined in Exemption 7(E). Second, you argue that CBP's response fails to provide an adequate justification for its invocation of Exemption 7. The response here is entirely conclusory. It simply tracks Exemption 7(E)'s language and provides no insight into "what procedures are at stake," "how disclosure [of responsive documents] could reveal such procedures," or how a "reader [could] extrapolate what the procedures are from the information contained therein." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1102 (D.C. Cir. 2014).

The information withheld pursuant to Exemption (b)(7)(E), is case file numbers, file locations, and other unique identifiers that could provide enterprising computer hackers with information necessary to access and navigate the agency's law enforcement databases and alter, add, or delete information contained therein. This information could enable electronic trespassers to manipulate the database information and increase the risk of circumvention of laws and regulations, compromise the electronic records system, facilitate improper access to sensitive investigatory and other law enforcement records, impede effectiveness of law enforcement activities, and endanger agency investigatory practices and techniques. The records are therefore in clear furtherance of that law enforcement mandate.

Applying Exemption (b)(7)(E) to case file numbers and codes is not a novel application. *McRae v. Dep't of Justice*, 869 F. Supp. 2d 151 (D.D.C. June 27, 2012) (redacting "codes, case numbers, and other computer information pertaining to" law enforcement databases); and *Bloomer v. Dep't of Homeland Sec.*, 870 F. Supp. 2d 358 (D. Vt. 2012) (redacting "various codes and case numbers," because disclosure of "internal instructions, codes, and guidance would reveal both a law enforcement technique and an internal investigative practice," which, in turn, "could endanger future investigations"). Therefore, this information is properly withheld pursuant to Exemption (b)(7)(E).

The information in the withheld in full records also protects otherwise unknown, specific law enforcement techniques, procedures, and guidelines followed by agency when performing its law enforcement mandate of securing this nation's borders. Disclosure of this information

"would illustrate the agency's strategy in implementing these specific techniques," and, in turn, "could lead to decreased effectiveness in future investigations by allowing potential subjects to anticipate… and identify such techniques as they are being employed." *Lewis-Bey v. Dep't of Justice*, 595 F. Supp. 2d 120, 138 (D.D.C. 2009), *Buffalo Evening News, Inc. v. U.S. Border Patrol*, 791 F. Supp. 386, 393 (W.D.N.Y. 1992) (protecting records that "would clearly disclose the USBP's techniques for apprehending excludable aliens").

Although you may not seek this information for nefarious purposes, "it would appear obvious that those immediately and practically concerned with such matters would be individuals embarked upon clandestine and illicit operations, the detection of which would be frustrated if they were privy to the methods employed… to ferret them out." *Caplan v. Bureau of Alcohol, Tobacco & Firearms*, 587 F.2d 544, 547 (2d Cir. 1978). See also *Buffalo Evening News, Inc. v. U.S. Border Patrol*, 791 F. Supp. 386, 393 (W.D.N.Y. 1992) (protecting records that "would clearly disclose the USBP's techniques for apprehending excludable aliens"). Disclosure of this information could impede effectiveness of law enforcement activities and endanger agency investigatory practices and techniques. Therefore, this information is properly withheld pursuant to Exemption (b)(7)(E).

## II.    Judicial and Other Administrative Remedies

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. 552(c). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

The Freedom of Information Act, particularly Title 5 U.S.C. § 552 (a)(4)(B), provides you with the opportunity to seek judicial review of this administrative appeal. You may institute judicial review in the United States District Court in the district in which you reside, have a principal place of business, where the agency records are located, or in the United States District Court for the District of Columbia.

Further, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests

made under the Privacy Act of 1974. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 202-741-5770 or toll-free 1-877-684-6448.

Sincerely,

Melissa Pansiri, Chief
Disclosure Law and Judicial Actions Branch
Regulations & Rulings Directorate
Office of Trade