UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

WILLIAMS & CONNOLLY LLP,

Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

Defendants.

Civil Action No. 24-2322 (PLF)

---

**NOTICE OF ERRATA REGARDING DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF (ECF Nos. 30, 31)**

Defendants U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Citizenship and Immigration Services ("USCIS") (collectively "Defendants"), respectfully file this notice of errata to correct the inadvertent clerical errors in Defendants' opposition to Plaintiff's motion for summary judgment and cross-motion for summary judgment ("Defendants' motion"), statement of material facts, and response to Plaintiff's statement of material facts and the declaration of Fernando Pineiro, which were filed on May 22, 2025.

Defendants made the following corrections:

- "Huzeyin Korkmaz" was switched to "Huseyin Korkmaz" on page 8 of Defendants' motion.
- "Huzeyin Korkmaz" was switched to "Huseyin Korkmaz" on page of 4 of Defendants' statement of material facts.
- "Huzeyin Korkmaz" was switched to "Huseyin Korkmaz" on page 46 of Defendants' response to Plaintiff's statement of material facts.

Also, Defendants are filing the supplemental declaration of Fernando Pineiro to correct an error in his May 22, 2025, declaration.  Namely, in the supplemental declaration, Pineiro declares that the correct search term used in the November 5, 2021, search was "Huseyin Korkmaz" *not* "Huseyin Norkmaz".

No other changes have been made.  The corrected brief and supporting documents are attached hereto.

Dated: May 23, 2025
      Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:         */s/ Stephanie R. Johnson*
     STEPHANIE R. JOHNSON,
      D.C. Bar # 1632338
     Assistant United States Attorney
     Civil Division
     601 D Street, NW
     Washington, DC 20530
     (202) 252-7874
     Stephanie.Johnson5@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAMS & CONNOLLY LLP,<br><br>       Plaintiff,<br><br>   v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, et al.,<br><br>       Defendants. | Civil Action No. 24-2322 (PLF) |

**DEFENDANTS' CORRECTED OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT AND
<u>MEMORANDUM IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

introduction .................................................................................................................... 1

Background .................................................................................................................... 2

Legal Standards .............................................................................................................. 3

    I.     Summary Judgment Standard ........................................................................... 3

    II.    Summary Judgment Standard as Applied to FOIA Cases ..................................... 4

Argument ....................................................................................................................... 5

    I.     ICE and CBP Conducted a Reasonable Search. ................................................... 5

          A.     ICE's Searches ............................................................................... 6

          B.     CBP's Searches .............................................................................. 13

    II.    CBP and USCIS Properly Withheld Information Pursuant to the Applicable FOIA
          Exemptions. ...................................................................................... 19

          A.     Only USCIS Issued a *Glomar* Response. .................................................. 19

          B.     CBP and USCIS Meet the Exemption 7 Threshold Requirement. ........... 22

          C.     CBP and USCIS Have Demonstrated That Acknowledgement of The
              Existence or Nonexistence of Responsive Records Would Compromise
              Interests Protected by Exemptions 6 and 7(C) ........................................... 24

          D.     CBP Properly Withheld Information Pursuant to FOIA Exemption 7(E). 42

    III.   CBP and USCIS Have Met Their Segregability Obligations. ............................. 43

Conclusion .................................................................................................................... 45

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*,
    113 F. Supp. 3d 313 (D.D.C. 2015) ................................................................. 11, 12

*Agrama v. IRS*,
    282 F. Supp. 3d 264 (D.D.C. 2019) ................................................................. 43

*Am. Civil Liberties Union v. Dep't of Justice*,
    640 Fed. Appx. 9 (D.C. Cir. 2016) ................................................................. 32

*Amuso v. Dep't of Just.*,
    600 F. Supp. 2d 78 (D.D.C. 2009) ................................................................. 25

*Ancient Coin Collectors Guild v. Dep't of State*,
    641 F.3d 504 (D.C. Cir. 2011) ................................................................. 10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................. 3, 4

*Armstrong v. Exec. Off. of the President*,
    97 F.3d 575 (D.C. Cir. 1996) ................................................................. 44

*Associated Press v. Dep't of Def.*,
    549 F.3d 62 (2d Cir. 2008) ................................................................. 38

*Bagwell v. Dep't of Educ.*,
    183 F. Supp. 3d 109 (D.D.C. 2016) ................................................................. 41

*Baker & Hostetler LLP v. Dep't of Com.*,
    473 F.3d 312 (D.C. Cir. 2006) ................................................................. 5, 6

*Bales v. Dep't of State*,
    Civ. A. No. 18-2779 (RC), 2020 WL 1078854 (D.D.C. Mar. 6, 2020) ........................... 35, 40

*Ball v. Marshals Serv.*,
    Civ. A. No. 19-1230 (JEB), 2021 WL 4860590 (D.D.C. Oct. 19, 2021) ............................. 41

*Beck v. Dep't of Just.*,
    997 F.2d 1489 (D.C. Cir. 1993) ................................................................. 25, 26

*Bigwood v. Dep't of Def.*,
    132 F. Supp. 3d 124 (D.D.C. 2015) ................................................................. 11, 13

*Blackwell v. FBI*,
    646 F.3d 37 (D.C. Cir. 2011) ................................................................. 34-35

*Bonner v. Dep't of State*,

928 F.2d 1148 (D.C. Cir. 1991) ........................................................................ 21


*Brown v. Dep't of Just.*,
742 F. Supp. 2d 126 (D.D.C. 2010) ............................................................... 4

*BuzzFeed, Inc. v. Dep't of Just.*,
Civ. A. No. 18-1556 (TSC), 2024 WL 195751 (D.D.C. Jan. 18) ..................... 14, 22

*Campbell v. Dep't of Just.*,
164 F.3d 20 (D.C. Cir. 1998) ...................................................................... 12

*Canning v. Dep't of Just.*,
567 F. Supp. 2d 104 (D. D.C. 2008) ............................................................ 44

*Canning v. Dep't of Just.*,
Civil A. No. 11-1295 (GK), 2017 U.S. Dist. LEXIS 85348 (D.D.C. Jun. 5, 2017) .............. 13

*Carter v. Dep't of Com.*,
830 F.2d 388 (D.C. Cir. 1987) ................................................................... 38

*Casey v. FBI*,
302 F. Supp. 3d 209 (D.D.C. 2018) ............................................................. 20

*Cause of Action v. IRS*,
253 F. Supp. 3d 149 (D.D.C. 2017) ........................................................ 10, 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................. 3

*Chelmowski v. United States*,
Civ. A. No. 17-1394 (JEB), 2021 WL 3077558 (D.D.C. July 21, 2021) ............... 41

*Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*,
554 F.3d 1046 (D.C. Cir. 2009) ............................................................. 26, 37

*Dale v. IRS*,
238 F. Supp. 2d 99 (D.D.C. 2002) ............................................................. 11

*Davis v. Dep't of Just.*,
968 F.2d 1276 (D.C. Cir. 1992) ................................................................. 26

*Dep't of Def. v. Fed. Lab. Rel. Auth.*,
510 U.S. 487 (1994) ................................................................................ 35

*Dep't of Just. v. Reps. Comm. for Freedom of Press*,
489 U.S. 749 (1989) ........................................................................... 25, 26

*Dep't of State v. Wash. Post Co.*,
456 U.S. 595 (1982) ........................................................................... 24, 25

*Dettmann v. Dep't of Just.*,
  802 F.2d 1472 (D.C. Cir. 1986) ........................................................ 10

*DiBacco v. U.S. Army*,
  795 F.3d 178 (D.C. Cir. 2015) ........................................................... 9

*Dillon v. Dep't of Just.*,
  102 F. Supp. 3d 272 (D.D.C. 2015) .................................................. 10

*Dunkelberger v. Dep't of Just.*,
  906 F.2d 779 (D.C. Cir. 1990) ......................................................... 35

*Ecological Rts. Found. v. EPA*,
  541 F. Supp. 3d 34 (D.D.C. 2021) ................................................... 41

*Emuwa v. Dep't of Homeland Sec.*,
  113 F.4th 1009 (D.C. Cir. 2024) ................................................. 44, 45

*Evans v. CIA*,
  Civ. A. No. 23-1888 (LLA), 2025 U.S. Dist. LEXIS 55273 (D.D.C. Mar. 25, 2025) .......... 10

*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) ....................................................... 36, 37, 38, 40

*Gilliam v. Dep't of Just.*,
  128 F. Supp. 3d 134 (D.D.C. 2015) .................................................. 35

*Gilman v. Dep't of Homeland Sec.*,
  32 F. Supp. 3d 1 (D.D.C. 2014) .................................................. 23, 24

*Gosen v. United States Citizenship & Immigr. Servs.*,
  75 F. Supp. 3d 279 (D.D.C. 2014) .............................................. 24, 36

*Ground Saucer Watch, Inc. v. CIA*,
  692 F.2d 770 (D.C. Cir. 1981) ......................................................... 18

*Harrison v. FBI*,
  611 F. Supp. 2d 54 (D.D.C. 2009) ................................................... 34

*Heffernan v. Azar*,
  317 F. Supp. 3d 94 (D.D.C. 2018) ................................................... 13

*Heritage Found. v. Dep't of Homeland Sec.*,
  754 F. Supp. 3d 73 (D.D.C. 2024) .............................................. 37, 39

*Hidalgo v. FBI*,
  344 F.3d 1256 (D.C. Cir. 2003) ...................................................... 14

*Iturralde v. Comptroller of Currency*,
  315 F.3d 311 (D.C. Cir. 2003) .......................................................... 5

*Johnson v. Exec. Office for U.S. Att'ys*,
    310 F.3d 771 (D.C. Cir. 2002) ................................................................. 11-12

*Jud. Watch, Inc. v. FBI*,
    2001 WL 35612541 (D.D.C. Apr. 20, 2001) ......................................... 42

*Jud. Watch, Inc. v. FDA*,
    449 F.3d 141 (D.C. Cir. 2006) ............................................................. 25

*Jud. Watch, Inc. v. Rossotti*,
    285 F. Supp. 2d 17 (D.D.C. 2003) ....................................................... 5

*Kolbusz v. FBI*,
    Civ. No. A. 17-319 (EGS/GMH), 2021 WL 1845352 (D.D.C. Feb. 17, 2021) .............. 14-15

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ............................................................. 4

*Leopold v. Dep't of Just.*,
    94 F.4th 33 (D.C. Cir. 2024) ............................................................... 44

*Lepelletier v. FDIC*,
    164 F.3d 37 (D.C. Cir. 1999) ............................................................. 25

*Levinthal v. FEC*,
    219 F. Supp. 3d 1 (D.D.C. 2016) ....................................................... 22

*Lewis v. Dep't of Just.*,
    609 F. Supp. 2d 80 (D.D.C. 2009) ..................................................... 40

*Liberation Newspaper v. Dep't of State*,
    80 F. Supp. 3d 137 (D.D.C. 2015) ..................................................... 11

*Lindsey v. FBI*,
    271 F. Supp. 3d 1 (D.D.C. 2017) ....................................................... 45

*Marshall v. FBI*,
    802 F. Supp. 2d 125–35 (D.D.C. 2011) ............................................. 35

*Martin v. Dep't of Justice*,
    488 F.3d 446 (D.C. Cir. 2007) ............................................................. 35

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................ 4

*Mayer Brown LLP v. IRS*,
    562 F.3d 1190 (D.C. Cir. 2009) ......................................................... 42

*Mead Data Cent., Inc. v. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ........................................................... 44

*Mobley v. CIA,*
   806 F.3d 568 (D.C. Cir. 2015) ................................................................. 5, 11, 20

*Moore v. CIA,*
   666 F.3d 1330 (D.C. Cir. 2011) ........................................................................ 20

*Muchnick v. Dep't of Homeland Sec.,*
   255 F. Supp. 3d 1069 (N.D. Cal. 2016) ............................................................ 36

*Multi AG Media LLC v. Dep't of Agric.,*
   515 F.3d 1224 (D.C. Cir. 2008) ........................................................................ 40

*Nation Magazine v. U.S. Customs Serv.,*
   71 F.3d 885 (D.C. Cir. 1995) ............................................................................ 18

*Nat'l Ass'n of Retired Fed. Emps. v. Horner,*
   879 F.2d 873 (D.C. Cir. 1989) .................................................................... 25, 40

*Nat'l Sec. Couns. v. Cent. Intel. Agency,*
   206 F. Supp. 3d 241 (D.D.C. 2016) .................................................................. 32

*Oglesby v. Dep't of Army,*
   920 F.2d 57 (D.C. Cir. 1990) ...................................................................... 5, 14

*Perioperative Servs. & Logistics, LLC v. Dep't of Veterans Affs.,*
   57 F.4th 1061 (D.C. Cir. 2023) ........................................................................ 44

*Perry v. Block,*
   684 F.2d 121 (D.C. Cir. 1982) ................................................................ 6, 7, 8, 9

*Privacy Info. Ctr. v. Dep't of Com.,*
   928 F.3d 95 (D.C. Cir. 2019) ............................................................................ 41

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.,*
   740 F.3d 195 (D.C. Cir. 2014) .......................................................................... 22

*Roseberry-Andrews v. Dep't of Homeland Sec.,*
   299 F. Supp. 3d 9 (D.D.C. 2018) ................................................................ 42, 43

*Roth v. Dep't of Just.,*
   642 F.3d 1161 (D.C. Cir. 2011) .................................. 20, 26, 27, 28, 29, 30, 34

*Rural Hous. All. v. Dep't of Agric.,*
   498 F.2d 73 (D.C. Cir. 1974) ............................................................................ 25

*SafeCard Servs., Inc. v. SEC,*
   926 F.2d 1197 (D.C. Cir. 1991) ........................................... 5, 6, 9, 35, 37, 39

*SAI v. Transp. Sec. Admin.,*
   315 F. Supp. 3d 218 (D.D.C. 2018) ...................................................... 32, 33, 34

*Salas v. Off. of Inspector Gen.*,
    577 F. Supp. 2d 105 (D.D.C. 2008) ........................................................ 38

*Sea Shepherd Conservation Soc'y v. IRS*,
    208 F. Supp. 3d 58 (D.D.C. 2016) ......................................................... 22

*Sinito v. Dep't of Just.*,
    Civ. A. No. 87-814 (TFH), 2000 WL 36691372 (D.D.C. July 12, 2000) ....... 21-22

*Skinner v. Dep't of Just.*,
    806 F. Supp. 2d 105 (D.D.C.2011) ........................................................ 24

*Smith v. Bureau of Alcohol, Tobacco & Firearms*,
    977 F. Supp. 496 (D.D.C. 1997) ........................................................... 42

*Smith v. CIA*,
    246 F. Supp. 3d 117 (D.D.C. 2017) ....................................................... 26

*Steinberg v. Dep't of Just.*,
    23 F.3d 548 (D.C. Cir. 1994) ............................................................. 4, 5

*Stern v. FBI*,
    737 F.2d 84 (D.C. Cir. 1984) ............................................................... 26

*Tao v. Freeh*,
    27 F.3d 635 (D.C. Cir. 1994) ................................................................. 3

*Techserve Alliance v. Napolitano*,
    803 F. Supp. 2d 16 (D.D.C. 2011) ......................................................... 24

*Twist v. Ashcroft*,
    329 F. Supp. 2d 50 (D.D.C. 2004) ......................................................... 11

*Valencia-Lucena v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) ............................................................... 5

*Watkins L. & Advoc., PLLC v. Dep't of Just.*,
    78 F.4th 436 (D.C. Cir. 2023) ............................................................... 9

*Weisberg v. Dep't of Just.*,
    705 F.2d 1344 (D.C. Cir. 1983) ............................................................. 5

*Weisberg v. Dep't of Just.*,
    745 F.2d 1476 (D.C. Cir. 1984) ............................................................. 5

*Wilbur v. CIA*,
    355 F.3d 675 (D.C. Cir. 2004) ............................................................. 14

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) ........................................................ 19, 21

**<u>Statutes, Rules, Regulations, and Other Authorities</u>**

5 U.S.C. § 552 ................................................................... 1, 12, 22, 24, 26, 42, 43

6 U.S.C. § 211 ................................................................................................ 23

8 U.S.C. § 1101 (U) ........................................................................................ 30

18 U.S.C. § 371 .............................................................................................. 40

Fed. R. Civ. P. 56 ..................................................................................... 1, 2, 3

Defendants U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Citizenship and Immigration Services ("USCIS") (collectively "Defendants"), respectfully cross-move for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 in this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, action and oppose the partial motion for summary judgment (ECF No. 26) filed by Plaintiff Williams and Connolly LLP ("Plaintiff").

## INTRODUCTION

This motion addresses three Freedom of Information Act ("FOIA") requests. Plaintiff submitted three FOIA requests[1] seeking record about third-party individuals and/or companies. Prior to suit being filed, each Defendant responded to the FOIA request directed to it. ICE told Plaintiff that a search was conducted, and no responsive records were located; CBP informed Plaintiff that a search yielded responsive records but all documents were withheld in full pursuant to Exemptions 6, 7(C), and 7(E) and the search yielded no records for the businesses listed in Plaintiff's request; and USCIS informed Plaintiff that its request was denied in its entirety pursuant to Exemption 6. Dissatisfied with Defendants' responses, Plaintiff filed this instant action.

As set forth below, each Defendant has met its FOIA obligations. ICE and CBP searched all areas reasonably calculated to yield responsive records, CBP properly withheld all responsive records under Exemptions 6, 7(C), and 7(E), and USCIS properly denied Plaintiff's FOIA request under Exemption 6 and now, Exemption 7(C). Accordingly, pursuant to Rule 56, the Court should grant summary judgment in favor of Defendants without a hearing.

---

[1]    In fact, Plaintiff submitted two FOIA requests to Defendant USCIS; however, the parties agree that FOIA Request No. NRC2022014143 is not at issue in this litigation. *See* Dec. 19, 2024, Joint Status Report (ECF No. 19) at 3 n. 2.

**BACKGROUND**

The parties' briefs address three FOIA requests: one request that was forwarded to ICE from the Department of Homeland Security (the "Department"); one request submitted to CBP; and one request submitted to USCIS.

First, in terms of ICE, Plaintiff submitted a FOIA request dated October 19, 2021, to the Department, which was forwarded to ICE on November 3, 2021. Pineiro Decl. ¶ 5. Plaintiff did not challenge the forwarding of the FOIA request. *Id.* After reviewing Plaintiff's FOIA request, the ICE FOIA Office determined that Homeland Security Investigations was the appropriate ICE component to conduct a search for any potentially responsive records. *Id.* ¶ 25. Homeland Security Investigations conducted two different searches, one on November 4, 2021, and the other on November 5, 2021. *Id.* ¶¶ 30, 31. Both searches yielded no records. *Id.* Plaintiff administratively appealed, and, on January 4, 2022, ICE upheld the determination and found that the search was adequate in all respects and was reasonably calculated to uncover all relevant documents. *Id.* ¶¶ 11, 13.

Second, in terms of CBP, Plaintiff submitted a FOIA request dated August 23, 2021, to CBP. Howard Decl. ¶ 6. Initially CBP closed Plaintiff's FOIA request as a third-party request that failed to provide authorization for the release of documents related to third parties listed in Plaintiff's August 23, 2021, FOIA request. *Id.* ¶ 8. Plaintiff appealed administratively, and the FOIA request was remanded back to CBP FOIA for processing. *Id.* ¶¶ 11, 13. CBP then conducted a search for potentially responsive records and on October 4, 2022, issued a final determination letter to Plaintiff, stating that the responsive records were withheld in full under Exemptions 6, 7(C), and 7(E) and noting that "[b]ased on the information [Plaintiff] provided, there [were] no records for the businesses listed in [Plaintiff's] request." *Id.* ¶¶ 22, 26–37. Also, CBP advised Plaintiff of its appeal rights. *Id.* ¶ 22, Ex. 15. Plaintiff appealed CBP's final determination. *Id.* ¶

23.   Plaintiff challenged the withholdings under Exemptions 6, 7(C), and 7(E), but did not challenge CBP's searches or dispute that CBP met the threshold requirement to withhold information under Exemption 7.   *Id.*, Ex. 16.   On September 26, 2023, CBP FOIA Appeals affirmed the October 4, 2022, decision.   *Id.* ¶ 24.

Third, in terms of USCIS, Plaintiff submitted a FOIA request dated February 2, 2022, to USCIS.   Panter Decl. ¶ 6.   On February 15, 2022, USCIS denied Plaintiff's request in its entirety pursuant to Exemption 6.   *Id.* ¶ 9.   In denying Plaintiff's request, USCIS's FOIA Office did not conduct a search for responsive records, as it determined that information regarding whether or not USCIS maintained documents pertaining to Zarrab or Korkmaz was privacy protected information exempt from disclosure pursuant to Exemption 6.   *Id.*  Also, in the denial letter, USCIS notified Plaintiff of its appeal rights.   *Id.* ¶ 11.   Plaintiff appealed the decision.   *Id.* ¶ 12.   On June 10, 2022, the USCIS FOIA Appeals affirmed the February 15, 2022, decision.   *Id.* ¶ 15.

Plaintiff initially filed this action on August 9, 2024 (*see* ECF No. 1) and subsequently filed an amended complaint on August 19, 2024 (ECF No. 8).   Plaintiff moved for partial summary judgment arguing that CBP and USCIS improperly issued a *Glomar* response, improperly withheld records under FOIA, and failed to perform an adequate segregability analysis, and ICE failed to conduct an adequate search, *see generally* ECF No. 26.   Defendants now submit this combined brief.

## LEGAL STANDARDS

### I.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Id.* Once the moving party has met its burden, the nonmoving part may not rest upon the mere allegations or denials of his pleading but must instead establish more than "the mere existence of a scintilla of evidence" in support of his position. *Id.* Thus, summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]." *Id.* When determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

## II.    <u>Summary Judgment Standard as Applied to FOIA Cases</u>

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in a light most favorable to the requester, that there is no genuine issue of material fact as to the agency's compliance with FOIA. *Steinberg v. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994). The court may award summary judgment based solely upon the information provided in affidavits or declarations when those affidavits or declarations "describe the justifications for nondisclosure with reasonably specific detail… and are not controverted by either contrary evidence in the record, nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Just.*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010).

## ARGUMENT

### I.     ICE and CBP Conducted a Reasonable Search.

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). A FOIA search is sufficient "if the agency makes 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006) (citation omitted)). This standard of reasonableness "depends, not surprisingly, on the facts of each case." *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) ("This court applies a reasonableness standard to determine whether an agency performed an adequate search."). A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 68 n.13 (D.C. Cir. 1990) (rejecting argument that a search was inadequate because it did not uncover "documents that [plaintiff] claims must exist"); *Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured"). Indeed, "[t]he question is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Steinberg*, 23 F.3d at 551 (emphasis in original) (citation omitted); *see also Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (explaining that the adequacy of a search "is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search").

The agency bears the burden of showing that its search was calculated to uncover relevant records. An agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts. *Baker & Hostetler*, 473 F.3d at 318. It is not obligated to "set forth with meticulous documentation the details of an epic search for the requested records." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents. *SafeCard Servs., Inc.*, 926 F.2d at 1200, 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."). Absent contrary evidence, agency affidavits are sufficient to demonstrate the agency's compliance with FOIA. *See Perry*, 684 F.2d at 127.

ICE and CBP fulfilled their obligations to search for records responsive to Plaintiff's FOIA requests.

### A.    ICE's Searches

ICE conducted reasonable searches for responsive records. The FOIA request transferred from the Department to ICE sought records involving third-party individuals and entities. *See* Pineiro Decl. ¶ 6. After reviewing Plaintiff's FOIA request, the ICE FOIA Office determined that, because the request involved individuals or entities allegedly linked to a sanctions evasion case, Homeland Security Investigations was the appropriate ICE component to conduct a search for any potentially responsive records. *Id.* ¶ 25. Homeland Security Investigations is responsible for investigating transnational crimes and threats, including financial crimes, money laundering and sanctions violations. *See id.* ¶¶ 25, 26. ICE determined that Homeland Security Investigations' specific mandate aligned directly with the nature of the FOIA request, making it the suitable entity within ICE to handle the search for responsive records. *Id.* ¶ 25.

Upon receiving the FOIA request, personnel in the Homeland Security Investigations FOIA Unit used their expertise and identified the appropriate component within the division to conduct a thorough search and the appropriate database. Pineiro Decl. ¶ 27. Namely, ICE determined that the New York Field Office was the appropriate component of Homeland Security Investigations to conduct the search because that was the location of the lawsuit at issue in Plaintiff's FOIA request. *Id.* ¶ 30. Also, in terms of the database, ICE determined that a search in the Investigative Case Management system ("Investigative Case system") was warranted because it is ICE's primary tool for managing both criminal and civil enforcement matters. *Id.* ¶ 28. The Investigative Case system enables personnel to create electronic case files that organize and link records and documents associated with specific investigations, facilitating efficient access from a single location. *Id.* Also, if a case is identified within the Investigative Case system, Homeland Security Investigations' personnel can conduct a thorough search of the entire case file, including any related emails of the Special Agent in charge of the investigation, to ensure that all responsive records are retrieved. *Id.* ¶ 29. Conversely, if no case file exists within Investigative Case system, it is unlikely that emails or other records pertaining to the specified individuals or entities are present, as the absence of a case file indicates that no investigation has been conducted involving those subjects. *Id.*

To ensure a comprehensive search, ICE conducted two searches: one on November 4, 2021, and the second one November 5, 2021. Pineiro Decl. ¶¶ 30, 31. In term of the first search, on November 4, 2021, a Homeland Security Investigations Special Agent in the New York Field Office conducted a search in the Investigative Case system using the terms provided by Plaintiff in its FOIA request, which included: "Reza Zarrab"; "Reza Sarraf"; "Riza Zarrab"; "Riza Sarraf", "Royal Holding, A.S."; "Royal Group"; "Atlantis Capital"; "Bella Investments"; "Mohammad

Zarrab"; "Mohammad Sarraf";"Hossein Zarrab"; "Hossein Sarraf"; "Al Nafees Exchange LLC", "Abdullah Happani"; "Camelia Jamshidy"; "Hossein Najafzadeh"; and "Huseyin Korkmaz." *Id.* ¶ 30. The search was not restricted by any date range, ensuring a comprehensive review. *Id.* The search yielded no positive matches, indicating that no Homeland Security Investigations' investigations or case files existed concerning the specified individuals or entities. *Id.*

Subsequently, as an additional measure, on November 5, 2021, a FOIA Unit Analyst independently conducted a separate search of the Investigative Case system using the terms provided by Plaintiff in its FOIA request, which included: "Reza Zarrab"; "Riza Zarrab"; "Reza Sarraf"; "Riza Sarraf"; "Mohammad Zarrab"; "Mohammad Sarraf"; "Hossein Zarrab"; "Hossein Sarraf"; "Royal Holding, A.S."; "Royal Group"; "Atlantis Capital"; "Bella Investments"; "Al Nafees Exchange LLC"; "Abdullah Happani"; "Camelia Jamshidy"; "Hossein Najafzadeh"; and "Huseyin Korkmaz." Pineiro Decl. ¶ 31. This search also was conducted without imposing any date restrictions. *Id.* This independent search further ensured the thoroughness of the process. The FOIA Unit analyst's search yielded no positive matches, which reinforced the conclusion that no investigations or case files existed concerning the specified individuals or entities. *Id.*

Plaintiff argues that ICE's searches were inadequate because: (1) ICE should have expanded the searches to other databases and repositories and emails; and (2) ICE did not use reasonable search terms. *See* Pl.'s Mot. (ECF No. 26-1) at 29–34. As much as Plaintiff might like to define all the parameters by which ICE conducts its searches, it is well-settled that agencies have the discretion to construct reasonable searches, including deciding which locations are likely to have responsive records and which search terms to use. Plaintiff fails to show that any additional locations or search terms were necessary for a reasonable search here. ICE's final interpretation of Plaintiff's request and construction of searches were eminently reasonable. As discussed further

below, Plaintiff's arguments are both speculative and conclusory, and thus Plaintiff fails persuasively to contest the reasonableness of ICE's searches.

*First*, Plaintiff identifies several different databases and repositories and argues that ICE should have expanded its searches to the identified databases and repositories because they "*may* contain information on noncitizens who enter, reside, or are granted deferred action." Pl.'s Mot. (ECF No. 26-1) at 30. Also, Plaintiff argues that ICE should have searched email correspondence, including custodians likely to correspond with the U.S. Attorney's Office, because "Zarrab's plea agreement indicated that the U.S. Attorney's Office *would* reach out to ICE regarding Zarrab." *Id.* at 31–32. Plaintiff is wrong.

"When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc.*, 926 F.2d at 1201. "An agency need not 'search every record system' or 'demonstrate that all responsive documents were found and that no other relevant documents could possibly exist.'" *Watkins L. & Advoc., PLLC v. Dep't of Just.*, 78 F.4th 436, 442 (D.C. Cir. 2023) (quoting *Valencia-Lucena*, 180 F.3d at 325). An agency may limit its search to places "likely" to contain responsive documents, *see DiBacco v. U.S. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015), and ICE did precisely that by tasking the Homeland Security Investigation New York Field Office to conduct searches in the Investigative Case system. Based on the results of the Investigative Case system searches, which yielded no records related to the specified individuals or entities, and considering the scope of the FOIA request ICE determined that extending the search to additional offices or databases was unnecessary or that responsive records would likely not reside in any other location beyond where ICE searched, *see* Pineiro Decl. ¶ 33; thus, ICE satisfied its obligation

under FOIA. *See Dillon v. Dep't of Just.*, 102 F. Supp. 3d 272, 284 (D.D.C. 2015) ("[T]here is no requirement that an agency search every record system in response to a FOIA request, ... only those [systems of] records that are likely to have responsive documents" (citation omitted)).

Also, as an initial matter, Plaintiff's argument that ICE should have tasked other sub-components within ICE and searched emails and other databases and repositories identified in Plaintiff's motion was not raised in their appeal. *See generally* Pineiro Decl. ¶ 11, Ex. D. Accordingly, the Court should not consider those arguments. *See Dettmann v. Dep't of Just.*, 802 F.2d 1472, 1476–77 (D.C. Cir. 1986) ("[A] plaintiff may have exhausted administrative remedies with respect to one aspect of a FOIA request—and thus properly seek judicial review regarding that request—and yet not have exhausted h[is] remedies with respect to another aspect of a FOIA request."); *Evans v. CIA*, Civ. A. No. 23-1888 (LLA), 2025 U.S. Dist. LEXIS 55273, at *13 (D.D.C. Mar. 25, 2025) (declining to consider withholding challenge not raised in administrative appeal, even though other withholdings were challenged).

Putting that aside, Plaintiff has not provided evidence that searching any other subcomponents of ICE, emails, or other databases and repositories would likely yield the requested records. *See generally* Pl.'s Mot. (ECF No. 26-1) at 29–34. Plaintiff offers assumptions and guesses—i.e., the identified databases and repositories because they "*may* contain information" or "U.S. Attorney's Office *would* reach out to ICE"— which is insufficient. "[M]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search." *Cause of Action v. IRS*, 253 F. Supp. 3d 149, 160 (D.D.C. 2017); *see also Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (a search yielding "only a few emails…is not enough to render [the] search inadequate, even supposing that any reasonable observer would find this result unexpected"). The law is clear that "a request for

an agency to search a particular record system—without more—does not invariably constitute a 'lead' that an agency must pursue," *Mobley*, 806 F.3d at 582, and FOIA does not provide requesters with a right to demand "an all-encompassing fishing expedition" of files in every office within an agency, *Dale v. IRS*, 238 F. Supp. 2d 99, 105 (D.D.C. 2002).  ICE and the Court need not "embark on a time-consuming and costly goose chase in pursuit of phantom [records from the agency]." *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 52 (D.D.C. 2004), *aff'd*, 171 F. App'x 855 (D.C. Cir. 2005).

*Second*, Plaintiff argues that ICE did not use reasonable search terms because it did not account for multiple permutations of a name and search variations of the name, misspelled "Huseyin Korkmaz" using a "z" instead of an "s" in its first search, and did not use "Aaron Goldsmith" (a term ICE did not search despite Plaintiff's request).  *See* Pl.'s Mot. (ECF No. 26-1) at 32–34.  Plaintiff's arguments fail because ICE reasonably and broadly interpreted Plaintiff's request in a manner that would enable ICE to conduct a search for responsive records and utilized search terms that were reasonably tailored to locate responsive records and were identified by Plaintiff in its FOIA request.

"In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request." *Bigwood v. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015).  The agency retains "discretion in crafting a list of search terms that they believe[ ] to be reasonably tailored to uncover documents responsive to the FOIA request." *Agility Pub. Warehousing Co. K.S.C. ("Agility") v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015) (internal quotation marks omitted). "Where the agency's search terms are reasonable, the Court will not [micromanage or] second guess the agency regarding whether other search terms might have been superior." *Liberation Newspaper v. Dep't of State*, 80 F. Supp. 3d 137, 146–47 (D.D.C. 2015); *see Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case-

specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the court should attempt to micromanage the executive branch."). The role of the requester is to "describe [the] records" sought. 5 U.S.C. § 552(a)(3). The role of the agency is to determine the best method to search for the records that the requester has described, *see Agility*, 113 F. Supp. 3d at 339, which is what ICE did here, and the agency is in the best position to identify search terms given the particulars of its record keeping policies and systems, *see id*. Specifically, as described, based on Plaintiff's FOIA request, ICE personnel used their expertise, experience, and knowledge to determine the methodology, including search terms, to locate responsive records. *See* Pineiro Decl. ¶¶ 25–34. As ICE explained, to ensure a comprehensive search, Homeland Security Investigations employed the exact terms provided by Plaintiff, including "Huseyin Korkmaz" (which was used in the second search), and tested various permutations to account for potential variations in how information may be recorded within Investigative Case system. *Id.* ¶¶ 31, 34. Given that no responsive records were found using all the terms supplied by Plaintiff and considering the specific terms given in the FOIA request, it is unlikely that alternative phrasing would yield different results. *Id.* at 34.

Further, "the court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion." *Campbell v. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999). ICE completed its search in November 2021, and Plaintiff cannot now for the first time in litigation, more than four years later, complain of other search terms that it thinks ICE should have used. *Compare* Pl.'s Mot. (ECF No. 26-1) at 33, 34 (arguing that ICE should have used search terms such as "RezaZarrab," "Reesa," "Zarab," "HuseyinKorkmaz," or "Hossein" and "Aaron Goldsmith") *with* Pineiro Decl. ¶¶ 6, 11, Exs. A (FOIA Request) and D (Pl.'s Appeal) (Plaintiff did not suggest "RezaZarrab," "Reesa," "Zarab," "HuseyinKorkmaz,"

"Hossein," or "Aaron Goldsmith"). "The plaintiff's insistence on its own preferred search terms does not undermine the *reasonableness* of the [ICE's] search terms." *Heffernan v. Azar*, 317 F. Supp. 3d 94, 108 (D.D.C. 2018) (citing *Agility*, 113 F. Supp. 3d at 339 (emphasis in original)).

Plaintiff fails to demonstrate any bad faith or abuse in discretion in ICE's decision to use the search terms identified by Plaintiff, and instead only offers assumptions and guesses, which is insufficient. *See Cause of Action*, 253 F. Supp. 3d at 160; *see also Canning v. Dep't of Just.*, Civil A. No. 11-1295 (GK), 2017 U.S. Dist. LEXIS 85348, at *11 (D.D.C. Jun. 5, 2017) (where search methods were reasonable, court would not "second guess Defendant's search process" "absent a showing of bad faith"); *Bigwood*, 132 F. Supp. 3d at 140 (rejecting challenges to agency's search terms where court could not "say that the terms selected by [the agency] were unreasonable or an abuse of discretion"). ICE's actions and search terms were reasonable, and Plaintiff cannot show any bad faith or abuse by failing to use the search terms Plaintiff now identifies.

Thus, ICE conducted searches reasonably calculated to locate all records responsive to Plaintiff's FOIA request, ICE looked for but did not locate records responsive to the specific parameters established in Plaintiff's request, and ICE found no information indicating responsive records likely would reside in any other location beyond where ICE searched. Pineiro Decl. ¶ 36.

## B.    CBP's Searches

Plaintiff's opening brief does not raise any challenges to CBP's searches. Even if Plaintiff did raise any challenges to CBP's searches, such challenges would fail because Plaintiff did not exhaust its administrative remedies as it relates to CBP's searches and alternatively, CBP conducted a reasonable search for potentially responsive records.

### 1.    Plaintiff Waived Any Challenges to CBP's Searches.

As a threshold matter, Plaintiff identified the issues it challenges in its opening brief, and Plaintiff did not claim to challenge CBP's searches. *See generally* Pl.'s Mot. (ECF No. 26-1). "A

party waives an issue if, after expressing a clear and accurate understanding of the issue, the party refrains from imposing any challenge to it." *BuzzFeed, Inc. v. Dep't of Just.*, Civ. A. No. 18-1556 (TSC), 2024 WL 195751, at *2 (D.D.C. Jan. 18, 2024) (quoting *Keepseagle v. Perdue*, 856 F.3d 1039, 1053 (D.C. Cir. 2017) (internal quotation marks omitted). Thus, Plaintiff moved first and demonstrated an understanding of the issues, and Plaintiff chose not to challenge CBP's searches and therefore Plaintiff waives this issue. *See BuzzFeed, Inc.* 2024 WL 195751, at *2.

> 2.    Plaintiff Failed to Exhaust Administrative Remedies as it Pertains to CBP's Searches.

Even if Plaintiff did not waive this issue, prior to filing its Complaint with the Court, Plaintiff failed to appeal CBP's searches, and therefore Plaintiff failed to exhaust administrative remedies as required under the FOIA.

It is settled law that prior to seeking relief in federal court, a plaintiff must exhaust the administrative remedies available under the FOIA. *Oglesby v. Dep't of Army*, 920 F.2d 57, 61–62 (D.C. Cir. 1990); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) ("exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA"). A FOIA requester fails to exhaust administrative remedies whenever the requester does not comply with the administrative process set forth under FOIA and agency regulations, including failing to administratively appeal an adverse determination on a FOIA request. *Hidalgo v. FBI*, 344 F.3d 1256, 1258–60 (D.C. Cir. 2003). As the D.C. Circuit explained, exhaustion is necessary "so that [an] agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Oglesby*, 920 F.2d at 61. "If the requester fails to exhaust administrative remedies before filing suit, a court can dismiss the complaint or grant summary judgment for the agency." *Kolbusz v. FBI*, Civ. No. A. 17-319 (EGS/GMH), 2021 WL 1845352, at *7 (D.D.C. Feb.

17, 2021), *R. & R. adopted*, 2023 WL 2072481 (D.D.C. Feb. 17, 2023) (citations omitted). "Failure to exhaust administrative remedies is not a mere technicality, and a court must decline to decide the merits of an unexhausted FOIA claim[.]" *Id.* (citations omitted).

Here, on October 4, 2022, CBP issued a final determination as it related to Plaintiff's October 19, 2021, FOIA request and notified Plaintiff that "[a] search of CBP databases produced records responsive to your request" and "[b]ased on the information [Plaintiff has] provided, there are no records for the businesses listed on your request." Howard Decl. ¶ 22, Ex. 15. CBP also notified Plaintiff of its appeal rights. *See id.* Plaintiff appealed CBP's decision but did not challenge the search. *See id.* ¶ 23, Ex. 16. To date, Plaintiff has not appealed or challenged CBP's searches.

Therefore, Plaintiff failed to exhaust its administrative remedies as to CBP's searches, as required under FOIA, and the Could should decline to consider any challenges to CBP's searches.

### 3.    Alternatively, CBP's Searches were Adequate

If the Court determines that Plaintiff has not waived the issue of CBP's searches' adequacy and has properly exhausted its administrative remedies, judgment should still be entered in favor of CBP on this issue because CBP conducted a reasonable search for responsive records.

CBP conducted searches for responsive records in several systems, including the TECS system and the Analytical Framework for Intelligence system, and determined that it was unable to conduct a search of the Automated Commercial Environment system given the limited information provided by Plaintiff. CBP also conducted a search for communication records.

In terms of the TECS system, this system is an overarching law enforcement information collection, risk assessment, and information sharing system and is a repository for law enforcement and investigative information, including inspection records. Howard Decl. ¶ 26. The TECS

system includes, for example, border crossing information for all individuals who enter, are admitted or paroled into, and (when available) exit from the United States, regardless of method or conveyance.  *Id.*.  In the TECS system, on or about March 13-14, 2022, CBP conducted a search for encounter records regarding Reza Zarrab (also known as Riza Zarrab, Reza Sarraf, or Riza Sarraf), Mohammad Zarrab (also known as Mohammad Sarraf), Hossein Zarrab (also known as Hossein Sarraf), Abdullah Happani, Camelia Jamshidy, Hossein Najafzadeh, and Huseyin Korkmaz, using as search terms the names (including the name variations) and corresponding dates of birth for each individual provided by Plaintiff.  *Id.* ¶¶ 26, 27.  CBP also searched TECS for records regarding Royal Holding, A.S., Royal Group, Atlantis Capital, Bella Investments, and Al Nafees Exchange LLC, using the company names provided by Plaintiff as search terms.  *Id.* ¶ 27.  The searches of the TECS system were not limited to a specific time period.  *Id.*

In terms of the Analytical Framework for Intelligence system, this system "enhances [the Department's] ability to identify, apprehend, and prosecute individuals who pose a potential law enforcement or security risk, and aids in the enforcement of customs and immigration laws, and other laws enforced by DHS at the border."  Howard Decl. ¶ 28.  In the Analytical Framework for Intelligence, CBP searched for encounter records regarding Reza Zarrab (also known as Riza Zarrab, Reza Sarraf, or Riza Sarraf), Mohammad Zarrab (also known as Mohammad Sarraf), Hossein Zarrab (also known as Hossein Sarraf), Abdullah Happani, Camelia Jamshidy, Hossein Najafzadeh, and Huseyin Korkmaz using the names (including variations) and corresponding dates of birth for each individual provided by Plaintiff as search terms.  *Id.* ¶ 29.  The searches of the Analytical Framework for Intelligence were not limited to a specific time period.  *Id.*

Also, CBP identified that the Automated Commercial Environment system may contain potentially responsive records as to the five businesses identified in Plaintiff's FOIA request.

Howard Decl. ¶ 30.  This system is a commercial trade processing system designed to improve communication, collaboration, and compliance efforts between CBP and the trade community.  *Id.*  CBP, however, was unable to conduct a search of the Automated Commercial Environment for business information as to Royal Holding, A.S.; Royal Group; Atlantis Capital; Bella Investments; and Al Nafees Exchange, LLC, because Plaintiff did not provide the Importer of Record number for these business entities.  *Id.* at ¶ 31.  The Importer of Record number is a necessary search term for CBP FOIA to adequately conduct a search of that system in response to a FOIA request.  *Id.*

Further, CBP conducted a search for communication records across all CBP electronic mailboxes, to include calendar invitations and placeholders, for the time period of January 1, 2007, to March 8, 2022.  Howard Decl. ¶ 32.  The search terms used were Reza Zarrab; Riza Zarrab; Reza Sarraf; Riza Sarraf; Royal Holding, A.S.; Royal Group; Atlantis Capital; Bella Investments; Mohammad Zarrab; Mohammad Sarraf; Hossein Zarrab; Hossein Sarraf; Al Nafees Exchange, LLC; Abdullah Happani; Camelia Jamshidy; Hossein Najafzadeh; and Huseyin Korkmaz.  *Id.*  CBP also reviewed a sample of the communication records that were located by searching CBP electronic mailboxes using the business name search terms provided by Plaintiff and determined that the provided business names, without additional identifying details, such as an Importer of Record number for each business, were inadequate as search terms for CBP to determine responsiveness of each record or to review the records for FOIA exempt information given the number of businesses that use the same names.  *Id.* ¶ 33.  Also, as CBP had determined that all records regarding the individuals listed in Plaintiff's request would be withheld in full and that CBP will not confirm or deny whether it has any records specifically regarding each of the individuals listed in the request, CBP did not conduct a complete review of the communication records that were compiled from CBP electronic mailboxes for disclosure to Plaintiff.  *Id.* ¶ 34.

In terms of the ultimate search results, based on the information provided in Plaintiff's request and further information Plaintiff provided, CBP found no responsive CBP records as to the five businesses: Royal Holding, A.S.; Royal Group; Atlantis Capital; Bella Investments; and Al Nafees Exchange, LLC; any other records that were found and deemed responsive to Plaintiff's request were withheld in full pursuant to Exemptions 6, 7(C), and 7(E).  Howard Decl. ¶¶ 35, 36.

Thus, based on Plaintiff's request, including the limited identifying information provided on the businesses listed in Plaintiff's request which limited CBP's ability to conduct searches for responsive information, CBP searched all locations reasonably likely to contain responsive records that CBP was able to search given the information provided by Plaintiff, and there is no basis for CBP to conclude that a search elsewhere would reasonably be expected to locate responsive records subject to the FOIA and Plaintiff has failed to suggest otherwise.  Howard Decl. ¶ 37.

*        *        *

Accordingly, ICE and CBP conducted reasonable searches for all responsive records and the declarations were "relatively detailed and non-conclusory, and . . . submitted in good faith," *see Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981), and the declaration "set [ ] forth the search terms and the type of search performed, and aver [ ] that all files likely to contain responsive materials (if such records exist) were searched," *see Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995); thus, ICE and CBP should be granted judgment in their favor on the search issue.  And, as explained below, USCIS did not conduct a search because it could neither confirm nor deny that any records existed, and therefore a search would have been futile.

II.    **CBP and USCIS Properly Withheld Information Pursuant to the Applicable FOIA Exemptions.**

CBP properly determined it cannot confirm or deny for which individual(s) listed in Plaintiff's request it located responsive records or how many responsive records were located, as doing so would itself betray the privacy interests protected by Exemptions 6 and 7(C) and also reveal information properly withheld under Exemption 7(E).  For its part, USCIS properly issued a *Glomar* response in conjunction with Exemption 6 and is now also asserting Exemption 7(C).

A.    **Only USCIS Issued a *Glomar* Response.**

As an initial matter, Plaintiff argues that CBP waived its right to assert a *Glomar* response and improperly issued a *Glomar* response because it has admitted that responsive records existed and failed to carry the "burden of explaining why disclosure of any records would categorically be reasonably expected to constitute an unwarranted invasion of . . . personal privacy, when balanced against the public interest in disclosure."  Pl.'s Mot. (ECF No. 26-1) at 16–18.  Also, although Plaintiff's FOIA request sought records relating to several companies and third-party individuals, Plaintiff's opening briefs only focus on two third-party individuals, i.e., Reza Zarrab and Hüseyin Korkmaz.  *Compare* Howard Decl. ¶ 6, Ex. 1 *with* Pl.'s Mot. (ECF No. 26-1) at 2–10, 20–28.  Contrary to these assertions, although CBP could have issued a *Glomar* response, CBP acknowledges that it admitted that a search was conducted, and that responsive records were located.  *See* Howard Decl. ¶¶ 25, 36, 37, 38.  To be clear, however, CBP has not officially acknowledged the existence or nonexistence of responsive records as to any of the particular persons identified in the FOIA request, and Plaintiff has failed to point to any evidence to suggest otherwise.  *See Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (disclosure of information requested under FOIA may be compelled "even over [an] agency's otherwise valid exemption claim" if "[the] information has been officially acknowledged").

- 19 -

USCIS properly asserted a *Glomar* response. "A *Glomar* response permits an agency to 'refuse to confirm the existence of records where to answer the FOIA inquiry would cause harm cognizable under a[ ] FOIA exemption.'" *Casey v. FBI*, 302 F. Supp. 3d 209, 212 (D.D.C. 2018) (alteration in original) (quoting *Wolf*, 473 F.3d at 374). And Exemptions 6 and 7(C) can provide the basis for a *Glomar* response. *Roth v. Dep't of Just.*, 642 F.3d 1161, 1173–77 (D.C. Cir. 2011) (analyzing a *Glomar* response under Exemptions 6 and 7(C)). A *Glomar* response can be "waive[d] . . . through official acknowledgment" of the information to which the response pertains. *Mobley*, 806 F.3d at 584. "'[A] strict test applies,'" however, "'to claims of official disclosure.'" *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011) (quoting *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009)). The plaintiff is required by that test to show that "'the information requested [is] as specific as the information previously released'; . . . 'the information requested . . . match[es] the information previously disclosed'; and . . . 'the information requested . . . [has] already been made public though an official and documented disclosure.'" *Mobley*, 806 F.3d at 583 (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)). Plaintiff does not argue that USCIS waived its right to assert a *Glomar* response. *See* Pl.'s Mot. (ECF No. 26-1) at 17.

Rather, Plaintiff argues that USCIS improperly asserted a *Glomar* response because it appears that USCIS has issued employment cards to both Zarrab (presumably under another name) and Korkmaz, both Zarrab and Korkmaz have acknowledged in public proceedings that they are not citizens, and USCIS also failed to carry its burden of explaining why disclosure of any records would categorically be reasonably expected to constitute an unwarranted invasion of personal privacy when balanced against the public interest in disclosure. *See* Pl.'s Mot. (ECF No. 26-1) at 16–18. Plaintiff's assertions fail for numerous reasons.

The D.C. Circuit has held that "the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption." *Wolf*, 473 F.3d at 378. Consequently, "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Id.* (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)). Prior disclosure of similar information does not suffice; instead, the specific information sought by the plaintiff must already be in the public domain by official disclosure. *Wolf*, 473 F.3d at 378. Here, Plaintiff does not even come close to meeting the "strict test" let alone provide any evidence that USCIS has made any official disclosure of the information Plaintiff requests, and thus Plaintiff's claims lack any merit and fail.

Additionally, Plaintiff also never pointed to the specific information sought by Plaintiff in the public domain either in its FOIA request upon which USCIS based its determination or in its administrative appeal.[2] Accordingly, Plaintiff's after-the-fact assertions raised now in this litigation not only fail to establish an official disclosure by USCIS, but they also do not undermine USCIS's determination on the FOIA request, which "ordinarily must be evaluated as of the time it was made." *Bonner v. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991); *see also, e.g., Sinito v. Dep't of Just.*, Civ. A. No. 87-814 (TFH), 2000 WL 36691372, at *5 (D.D.C. July 12, 2000) (explaining that "*Davis* was not meant to require a court on judicial review to examine an agency's

---

[2]    While Plaintiff asserted generally in its appeal that "it bears mentioning that an individual has a significantly reduced privacy interest in information that is already in the public domain" and that the individuals as to whom information was sought in the request have testified for days in open in open court and have been mentioned in "countless news articles," Plaintiff still failed to point to any particular official disclosures duplicating the information sought—to include whether USCIS maintains records for either Zarrab or Korkmaz.

FOIA determination based on claims of prior disclosure that were not identified to the agency when it made its response") (internal citations omitted).

     **B.**     **CBP and USCIS Meet the Exemption 7 Threshold Requirement.**

     As an initial matter, Plaintiff also waives any challenges to the threshold issue under Exemption 7 as it relates to CBP because Plaintiff failed to identify this issue in their opening brief and did not raise a challenge this issue in its appeal at the administrative level. *See BuzzFeed, Inc.* 2024 WL 195751, at *2; *see also generally* Pl.'s Mot. (ECF No 26-1); Howard Decl. ¶ 23, Ex. 16. Nevertheless, both CBP and USCIS meet the threshold requirement.

     To establish the applicability of any subparts of Exemption 7, the government must first show that the records at issue were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The D.C. Circuit "has long emphasized that the focus is on how and under what circumstances the requested files were compiled, . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 79 (D.D.C. 2016) (quoting *Jefferson v. Dep't of Just.*, 284 F.3d 172, 177 (D.C. Cir. 2002)). A record is "compiled for law enforcement purposes" within the meaning of Exemption 7 "so long as there is (1) a rational 'nexus' between the record and the agency's law enforcement duties, and (2) a connection between the subject of the record and a possible security risk or violation of federal law." *Levinthal v. FEC*, 219 F. Supp. 3d 1, 6 (D.D.C. 2016) (citing *Campbell v. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998)). Further, where "the agency's principal function is law enforcement, courts are more deferential to the agency's claimed purpose for the particular records." *Pub. Emps. for Env't Resp. v. U.S. Section*, *Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014) (cleaned up).

     In terms of CBP, CBP satisfies the threshold for invoking Exemption 7 of the FOIA because of its law enforcement mission. CBP is a federal law enforcement agency and is charged

with protecting the borders of the United States against terrorists and terrorist weapons, and with enforcing the customs, immigration, and agricultural protection laws of the United States, among other law enforcement tasks. Howard Decl. ¶ 40 (citing 6 U.S.C. § 211). CBP compiles and maintains records as part of these law enforcement activities, a significant number of which contain personal or otherwise sensitive information. *Id.* ¶ 41. Given the breadth of CBP's law enforcement mission and the types of records for which CBP searched in response to Plaintiff's request, any responsive records necessarily would have been collected and maintained by CBP as part of its law enforcement mission and would readily meet the threshold requirement of Exemption 7. *Id.* ¶ 42. "CBP is indisputably a law enforcement agency and is entitled to deference in its determination that the records were compiled for a law enforcement purpose." *Gilman v. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 19 (D.D.C. 2014).

As for USCIS, it demonstrated that the records at issue, should they exist, would have been compiled for law enforcement purposes. Panter Decl. ¶¶ 25–28. USCIS is responsible for enforcing federal immigration law pursuant to the Immigration and Nationality Act through its adjudication of applications and petitions submitted to USCIS seeking immigration benefits from the United States government. *Id.* ¶ 26. As USCIS is neither admitting nor denying that it maintains records for Zarrab or Korkmaz, there is no specific statutory investigative authority for compiling the records to cite here; however, Plaintiff asserts that each has a criminal background and is involved with a sanctions evasion case and that the public has a right to know about their attempts to stay in the United States given their backgrounds. *Id.* ¶ 28 (citing Pl.'s Feb. 2, 2022, FOIA Request (Ex. 1)). Plaintiff is seeking these records to determine "whether these individuals have applied for permanent resident status," "whether they have been granted work visas," and whether the U.S. Attorney assisted with their respective applications." *See id.* USCIS can aver

that the types of records requested regarding either Zarrab or Korkmaz, should any exist, necessarily would have been collected and maintained by USCIS as part of its function of enforcing the INA, and would readily meet the threshold requirement of Exemption 7. *Id.* And courts regularly find Exemption 7 applicable to USCIS documents. *See, e.g., Gosen v. United States Citizenship & Immigr. Servs.*, 75 F. Supp. 3d 279, 289–91 (D.D.C. 2014) (finding Exemptions 7(C) and 7(E) applicable to USCIS documents); *Techserve Alliance v. Napolitano,* 803 F. Supp. 2d 16, 29 (D.D.C. 2011) (finding Exemption 7(E) applicable to USCIS documents); *Skinner v. Dep't of Just.*, 806 F. Supp. 2d 105, 113–16 (D.D.C.2011) (finding Exemptions 7(C) and 7(E) applicable to USCIS documents).

Accordingly, CBP and USCIS readily meet the threshold requirement of Exemption 7.

**C.    CBP and USCIS Have Demonstrated That Acknowledgement of The Existence or Nonexistence of Responsive Records Would Compromise Interests Protected by Exemptions 6 and 7(C).**

In response to Plaintiff's FOIA request, CBP properly determined that it cannot confirm or deny as to which individual(s) listed in Plaintiff's request CBP located responsive records or how many responsive records were located, as doing so would itself betray the privacy interests protected by Exemptions 6 and 7(C), and USCIS properly issued a *Glomar* response in conjunction with Exemptions 6 and 7(C). For the same reason, USCIS properly determined that it cannot confirm or deny whether it maintains records for either Zarrab or Korkmaz.

1.    Legal Standard for Exemptions 6 and 7(C).

Exemption 6 protects information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has ruled that the phrase "personnel and medical files" must be interpreted broadly, and all information that "applies to a particular individual" qualifies for consideration under Exemption 6. *Dep't of State v. Wash. Post Co.*,

456 U.S. 595, 602 (1982). "The exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Id.*; *see also Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 198 (D.C. Cir. 2006) ("We have also read the statute to exempt not just files, but also bits of personal information, such as names and addresses, the release of which would 'create[] a palpable threat to privacy.'"). In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Id.* at 47 (citation omitted). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose[.]" *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).

Importantly, "[t]he privacy interest at stake belongs to the individual, not the agency." *Amuso v. Dep't of Just.*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009); *accord Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 763–65 (1989). This exemption is meant "to protect individuals from a wide range of embarrassing disclosures." *Rural Hous. All. v. Dep't of Agric.*, 498 F.2d 73, 77 (D.C. Cir. 1974). Moreover, "[w]here there is a substantial probability that disclosure will cause an interference with personal privacy, it matters not that there may be two or three links in the causal chain." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989). Under the FOIA, any personal privacy interest greater than de minimis is

"substantial." *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009).

Similarly, Exemption 7(C) protects from disclosure records compiled for law enforcement purposes where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The "standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files" under Exemption 6. *Reps. Comm.*, 489 U.S. at 756. To determine whether disclosure of a record could reasonably be expected to constitute an unwarranted invasion of personal privacy, courts must balance the privacy interest of the individual referenced in the record against the public interest in disclosure. *See Beck*, 997 F.2d at 1491; *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Davis v. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (internal quotations omitted). Thus, not only targets of law enforcement investigations, but also witnesses, informants, and investigating agents have a substantial interest in ensuring that their relationship to the investigations remains secret. *Roth.*, 642 F.3d at 1174. Once the court finds that "the privacy concerns addressed by exemption 7(C) are present," the requester must "establish a sufficient reason for the disclosure" to obtain the records. *Smith v. CIA*, 246 F. Supp. 3d 117, 128 (D.D.C. 2017) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004)).

The analysis and balancing required by Exemptions 6 and 7(C) require that privacy interests be balanced against the public's interest in disclosure, which sufficiently warrants a

consolidated discussion. *See Roth*, 642 F.3d at 1173 (focusing analysis on Exemption 7(C) rather than Exemption 6 "since it is the broader of the two" exemptions).

As discussed further below, CBP and USCIS applied Exemption 6 in conjunction with Exemption 7(C) and both balanced the privacy interests against the public's interest in disclosure.

2.    The Privacy Interests of the Third Parties Outweigh Any Public Interest.

Based on the information submitted to CBP and USCIS at the administrative level, CBP and USCIS properly determined that Plaintiff did not demonstrate that the public interest in such records, to the extent they exist, outweighed the privacy interests of the third parties, and therefore CBP and USCIS correctly determined that the acknowledgement of the existence or nonexistence of responsive records for the individuals identified in Plaintiff's FOIA request would compromise interests protected by Exemptions 6 and 7(C).

CBP properly applied Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the existence or nonexistence of responsive records to "protect personally identifiable information (PII) of CBP and other law enforcement employees and third parties identified and mentioned in the records, specifically the names and identities of the individuals, telephone numbers and contact information, identification numbers, and other identifying information of the individuals, as well as other information in addition to PII where identities of individuals would be made apparent by certain detailed information in the record and its context."  Howard Decl. ¶ 47.  As CBP described, both Government employees and third parties have a protectable privacy interest in their identities that would be threatened by disclosure.  *Id.* ¶ 48.  The release of this information would subject government employees to unwarranted harassment and publicity, which would limit their effectiveness in handling their respective law enforcement functions and duties, and would also subject third parties to unwanted contact, annoyance, or harassment.  *Id.*  In addition, the identification of an individual in association with the performance of their duties at a

law enforcement agency creates a safety threat. *Id.* ¶ 49. For this reason, the Office of Personnel Management designated CBP as a "Security Agency," exempting all its employees, not just front-line law enforcement, from OPM's salary information disclosure policy and recognized that disclosing a non-public facing employee's name (and related information), absent a compelling public interest to do so, risks unnecessarily exposing that individual employee to potential safety threats. *Id.* Also, CBP determined that the release of this information would also not shed light on the actions of CBP and there is no public interest in the disclosure of this information. *Id.* ¶ 50.

Finally, CBP determined it could neither confirm nor deny the nature or number of any responsive records regarding the individuals listed in Plaintiff's request, as doing so would betray the privacy interests protected by Exemptions 6 and 7(C) and would itself cause harm. Howard Decl. ¶ 51. Specifically, CBP stated that this type of response is warranted pursuant to Exemptions 6 and 7(C) when members of the public are likely to draw adverse inferences from the mere fact that an individual is mentioned in the files of a law enforcement agency such as CBP, as this may cast the individual in an unfavorable or negative light. *Id.* Moreover, release of information about third parties could cause unsolicited and unnecessary attention or harassment to be focused on them. *Id.* As the law enforcement agency charged with protecting the U.S. border, CBP maintains sensitive personal information regarding individuals CBP encounters, and even acknowledging the existence of records related to third parties, such as the type or number of records that CBP maintains, could lead to adverse inferences regarding, and harassment of, the subject third party. *Id.* The individuals addressed in records maintained by CBP have strong privacy interests in not having their personal information disclosed without their authorization in response to FOIA requests. *Id.* CBP has balanced the substantial privacy interests of the third-party individuals listed in Plaintiff's FOIA request against the public interest in disclosure and determined that any

further acknowledgement of the existence or non-existence of responsive records regarding the third-party individuals would constitute a clearly unwarranted invasion of personal privacy and could reasonably be expected to constitute an unwarranted invasion of personal privacy, as required pursuant to Exemptions 6 and 7(C).  *Id.*

In terms of USCIS, USCIS denied Plaintiff's request in its entirety pursuant to Exemption 6, and is now also asserting Exemption 7(C), to withhold, consistent with a *Glomar* response, information regarding whether or not USCIS maintains records for either Zarrab or Korkmaz because even acknowledging the existence of records for these individuals by USCIS would result in harm to an interest protected under Exemptions 6 and 7(C).  Panter Decl. ¶ 35.  Specifically, disclosing that USCIS maintains records for Zarrab or Korkmaz (if that were the case) would reveal their association with USCIS, thereby signifying that the individuals are not U.S. Citizens and/or that they are seeking immigration benefits on behalf of themselves or others.  *Id.* ¶ 36. USCIS determined that the privacy interest in this personal immigration information belongs to the individual, not the government, and disclosure would result in foreseeable harm to the privacy interest in nondisclosure protected by Exemptions 6 and 7(C).  *Id.* ¶ 37.  The disclosure would also undermine the confidence of individuals who submit private, personal information to USCIS that their information will not be disclosed to the public.  *Id.*  This lack of confidence would result in individuals being less forthcoming with such information, which would, in turn, impede their access to immigration benefits as well as the government's ability to rely upon the completeness of the information it maintains when making determinations.  *Id.*

In addition to undermining the confidence of those who are seeking immigration benefits, bad actors would also be able to use such information to target, embarrass, blackmail or bribe those individuals.  Panter Decl. ¶ 38.  This is especially true when bad actors have power over or

specialized knowledge regarding those individuals and want to gain control over them by ascertaining their immigration status and/or whether immigration benefits have been sought by or for them. *Id.* For example, bad actors who know an individual's citizenship status would use the information to determine whether the individual is undocumented or, perhaps, assisting the government in the prosecution or investigation of certain crimes for which certain immigration benefits may be available due to that assistance. *Id.*; *see, e.g.*, 8 U.S.C. § 1101(a)(15)(S), (T) & (U) (defining the criteria to obtain an S, T or U nonimmigrant visa).

In addition, individuals who provide law enforcement agencies with reports of illegal conduct or assist law enforcement agencies with their investigations also have a substantial privacy interest in the nondisclosure of information that may be used by bad actors to identify and locate them—particularly when such persons reasonably fear reprisals for their assistance. Panter Decl. ¶ 39. For example, disclosing whether USCIS maintains records pertaining to an individual testifying on behalf of the government may reveal whether the individual is seeking immigration benefits and, therefore, intends to remain in the United States or, if there are no records, perhaps return to his or her country of citizenship. *Id.* This would provide bad actors with information to narrow their search for individuals in order to retaliate against them or those associated with them for cooperating with the government, including providing testimony or assisting in a law enforcement investigation. *Id.* Also, disclosing whether USCIS maintains records pertaining to an individual testifying on behalf of the government or assisting in a law enforcement investigation may obstruct the investigation or result in individuals being unwilling to cooperate with the government out of fear of reprisal. *Id.*

Because Plaintiff made it clear that both Zarrab and Korkmaz served as government witnesses in a sanctions evasion case and that one was doing so as part of a cooperation agreement

and another was a fugitive from Türkiye, USCIS determined both individuals have a substantial privacy interest in the non-disclosure of whether USCIS maintains records pertaining to them for the above-noted reasons.  Panter Decl. ¶ 40.  Specifically, disclosure would undermine their confidence that their personal information would be protected—which is critical when individuals serve as government witnesses—as well as undermine the confidence of those who are similarly situated.  Further, bad actors would be able to use the information to determine their immigration status and/or whether they sought immigration benefits.  *Id.*  This information may be used to subject them to intimidation, harassment, unwarranted contact, reprisal for their testimony or involvement as a government witness, or even physical harm.  *Id.*  Also, disclosure allows bad actors to locate them by ascertaining (depending on the response or records) whether they intend to stay in the United States or reside elsewhere.  *Id.*  Accordingly, based on the assertions in the FOIA request USCIS properly determined pursuant to Exemption 6 and 7(C) that Zarrab and Korkmaz had a substantial privacy interest that outweighed the asserted public interest, and the nondisclosure of their immigration information—specifically, whether USCIS maintains records for either individual—accordingly was proper.  *Id.* ¶ 41.  Since the same balancing analysis is applied, USCIS is now also asserting Exemption 7(C) to support this determination.  *Id.*

In this case, Plaintiff has not demonstrated that there is a countervailing public interest that outweighs the privacy interests protected by FOIA Exemptions 6 and 7(C).  Plaintiff argues, however, that Zarrab's and Korkmaz's privacy interest are minimal or non-existent and there is substantial public interest in disclosure.  *See* Pl.'s Mot. (ECF No. 26-1) at 20–28.  Specifically, Plaintiff argues that "Zarrab's privacy interests with respect to his immigration records are effectively non-existent" and "Zarrab is a public figure who has already voluntarily thrust his private life—and immigration status—into the public sphere through conduct, including agreeing

to testify at Mr. Atilla's high-profile trial" and "he "was a public figure long before his arrest in the United States." *Id.* at 20. And in terms of Korkmaz, Plaintiff argues that now Korkmaz is deceased and he "had already publicly disclosed a great deal of information about his journey to the United States prior to his death," and he thus "no longer retains a meaningful privacy interest in this information." *Id.* at 26, 27. As previously explained, these arguments should not be considered by the Court because Plaintiff introduces new arguments and evidence for the first time in this litigation that was not before either agency approximately two years ago when they issued their final determinations. Namely, Plaintiff did not assert within the FOIA request or the administrative appeal that any of the third-party individuals were deceased, that Zarrab's or Korkmaz's immigration status or requested information was in the public domain, or that Zarrab or Korkmaz was considered a "public figure." *See generally* Panter Decl. ¶¶ 6, 14, Ex. 1 and Ex. 3; *see also* Howard Decl. ¶¶ 1, 23, Ex. 1 and Ex. 16.

As the "D.C. Circuit has emphasized, given the premium Congress places on rapid processing of FOIA requests, judicial review of agency responses to FOIA requests properly focuses on the time the determination to withhold is made." *Nat'l Sec. Couns. v. Cent. Intel. Agency*, 206 F. Supp. 3d 241, 256 (D.D.C. 2016), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020) (quoting *Bonner v. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991)). "To require an agency to adjust or modify its FOIA responses based on post-response occurrences could create an endless cycle of judicially mandated reprocessing." *Nat'l Sec. Couns.*, 206 F. Supp. 3d at 256 (citation omitted); *see also Am. Civil Liberties Union v. Dep't of Justice*, 640 Fed. Appx. 9, 12–13 (D.C. Cir. 2016) (per curiam); *SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 254 (D.D.C. 2018) ("the cardinal rule of administrative law [is] that courts evaluate agency action based on the record as it existed at the time the agency acted."). Thus, these new arguments and evidence should not be considered;

rather, the Court should only consider the information that was before the agencies at the time the withholding determination was made.

In its appeal to CBP, although CBP advised Plaintiff to include as much information as possible to help it understand the grounds for Plaintiff's appeal (Howard Decl. ¶ 22, Ex. 15), Plaintiff merely stated,

> [The] two of the individuals mentioned in [the] original request, Reza Zarrab and Huseyin Korkmaz, are government witnesses in a public proceeding. One is testifying pursuant to a cooperation agreement…The first individual—Reza Zarrab—has pleaded guilty to sanctions evasion and bank fraud charges but has yet to be sentenced. The second—Huseyin Korkmaz—is a fugitive from justice in the Republic of Turkey who has admitted to, among other offenses, theft of materials belonging to the Turkish government. The release of responsive documents as to these individuals is thus clearly in the public interest.

*Id.* ¶ 23, Ex. 16.  Given this information that Plaintiff provided, CBP determined that Plaintiff failed to indicate how "CBP and other law enforcement employee or third-party PII contained in the records would shed light on how the agency performs its statutory duties."  *Id.* ¶ 50 (citing Ex. 17 (CBP Appeal Response)).   In addition, CBP determined that Plaintiff's claim that the individuals listed in Plaintiff's request had a diminished privacy interest due to court proceedings did not mean that the individuals forfeited all rights to privacy.  *Id.*  Accordingly, CBP properly concluded that the employees' and third parties' right to privacy outweighs whatever public interest, if any, might exist in knowing the information.

Similarly, in its appeal to USCIS, although USCIS identified what Plaintiff needed to demonstrate in order to obtain the requested documents (Panter Decl. ¶ 11, Ex. 2), Plaintiff argues that the individuals (i.e., Zarrab and Korkmaz) have  significantly reduced privacy interest when the information is in the public domain and the two individuals testified for days in court, "covered a host of matters, including the personal background of each individual," and that the "individuals are also both mentioned in countless news articles."  *See id.* ¶ 14, Ex. 3.  Similar to CBP, USCIS

recognized the statements Plaintiff made were unsupported by evidence and Plaintiff did not point to any specific information within the public domain evidencing that USCIS maintained records for either Zarrab or Korkmaz. *Id.* at 12 n. 6. Given the significant number of FOIA requests USCIS receives annually (577,843 in FY 2024 alone), searching to determine if information is within the public domain when a requester does not so assert or the information and its location is not specifically identified by the requester would practically paralyze the FOIA program, as staff would be required to undertake an exhaustive, potentially limitless search to prove a negative— that information has not been revealed—for every request. *Id.* Also, to the extent that it was possible for Plaintiff to waive any third party's privacy interest at the time the FOIA request and appeal were processed, Plaintiff's request did not include written authorization permitting release of requested information from either third-party individual; proof of parentage, guardianship proof, or proof the individuals were deceased; or demonstrate the existence of a significant public interest in disclosure of the material sought that would outweigh the privacy interests of the third parties, should such records exist. *Id.* ¶¶ 18, 33; *see also Harrison v. FBI*, 611 F. Supp. 2d 54, 66 (D.D.C. 2009) (the 6 and 7(C) "personal privacy exemptions may be overcome by a waiver signed by the third person whose privacy interest would be affected by the disclosure").

The D.C. Circuit has held that "not only the targets of law-enforcement investigations, but also 'witnesses, informants, and . . . investigating agents' have a 'substantial interest' in ensuring that their relationship to the investigations 'remains secret.'" *Roth*, 642 F.3d at 1174 (quoting *Schrecker v. Dep't of Just.*, 349 F.3d 657, 666 (D.C. Cir. 2003)). Also, courts in this district have previously deemed proper the withholding of identifying information of third-parties, federal employees, and federal and local law enforcement personnel. *See, e.g.*, *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) ("As a result of Exemption 7(C), FOIA ordinarily does not require

disclosure of law enforcement documents (or portions thereof) that contain private information.");

*Marshall v. FBI*, 802 F. Supp. 2d 125, 134–35 (D.D.C. 2011) (finding that the FBI properly

withheld the names and identifying information of its personnel in protection of their substantial

privacy interest); *Gilliam v. Dep't of Just.*, 128 F. Supp. 3d 134, 139 (D.D.C. 2015) ("[T]here can

be little doubt that persons named in the documents [such as]…law enforcement agents…have a

substantial privacy interest.").  Further, "Exemption 7(C) takes particular note of the strong interest

of individuals" such as "witnesses . . . in not being associated unwarrantedly with alleged criminal

activity." *Dunkelberger v. Dep't of Just.*, 906 F.2d 779, 781 (D.C. Cir. 1990) (internal quotation

marks omitted); *see also SafeCard*, 926 F.2d at 1205 ("Exemption 7(C) affords broad privacy

rights to . . . witnesses").  In fact, "the FOIA-based public interest in disclosure is at its nadir when

third parties seek law enforcement records concerning private citizens." *Dep't of Def. v. Fed. Lab.*

*Rel. Auth.*, 510 U.S. 487, 496 n.8 (1994).  Thus, "privacy interests are particularly difficult to

overcome when law enforcement information regarding third parties is implicated."  *Martin v.*

*Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007); *see also Bales v. Dep't of State*, Civ. A. No.

18-2779 (RC), 2020 WL 1078854, at *5 (D.D.C. Mar. 6, 2020).

Plaintiff did not demonstrate that there is a countervailing public interest that outweighs

the privacy interests protected by Exemption 7(C).  As an initial matter, and as discussed above,

the Court should not consider the new arguments and evidence Plaintiff introduces for the first

time for the public interest analysis and, rather, the Court should only focus on the information

that was before the agencies at the time a determination to withhold was made.  *Supra* at 32–33.

For example, for the first time in litigation, Plaintiff argues that "the public has an interest in

understanding whether CBP and USCIS acted inappropriately in admitting Korkmaz into the

United States given that he used a passport to enter the country that was not in his true name."

Pl.'s Mot. (ECF No. 26-1) at 27.  Plaintiff insists that this case is "on all fours with [*Muchnick v. Dep't of Homeland Sec.*, 255 F. Supp. 3d 1069 (N.D. Cal. 2016)]" because [j]ust as in Zarrab's case, Gibney's alleged crimes were widely reported in the media, but . . . a request was made for Gibney's immigration records on the basis that DHS engaged in misconduct in admitting Gibney and allowing him to reside in the United States."  *Id.* at 24.  Unlike *Muchnick*, Plaintiff did not suggest government misconduct in either their FOIA request or appeal at the administrative level. *See generally* Panter Decl. ¶¶ 6, 14, Ex. 1and Ex. 3; *see also* Howard Decl. ¶¶ 1, 23, Ex. 1and Ex. 16.  Plaintiff should not be allowed to do so now for the first time in litigation, especially because Plaintiff has failed to provide any evidence to support such an assertion (i.e., government misconduct).

"[T]he justification most likely to satisfy Exemption 7(C)'s public interest requirement is that the information is necessary to show the investigative agency or other responsible officials acted negligently or otherwise improperly in the performance of their duties."  *Gosen*, 75 F. Supp. 3d at 289 (citing *Favish*, 541 U.S. at 174).

> [W]here there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure.  Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

*Favish*, 541 U.S. at 174.  Thus, a plaintiff challenging an Exemption 7 withholding or *Glomar* response based on "[a]llegations of government misconduct" or negligence must offer more than mere speculation and instead offer a "meaningful evidentiary showing" because such allegations "are easy to allege and hard to disprove."  *Id.* at 175 (internal quotation marks and citation omitted). Also, although *Favish* arose in the context of Exemption 7(C), "the rationale . . . for requiring more than unsupported allegations that an agency is not doing its job applies under FOIA Exemption 6

as well." *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1055 n.5 (D.C. Cir. 2009).

Here, Plaintiff must offer "compelling evidence that the agency denying the FOIA request is engaged in illegal activity" and that "access to the names of private individuals appearing in the agency's law enforcement files is necessary to confirm or refute that evidence." *SafeCard Servs., Inc.*, 926 F.2d at 1205–06. "Only when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Favish,* 541 U.S. at 174–75. Without any such evidence, "there is no reason to believe that the incremental public interest in such information would ever be significant," and the information is exempt from disclosure. *SafeCard Servs.*, 926 F.2d at 1206. That is the case here. Plaintiff offers no basis to think, and certainly no evidence to support a reasonable belief, that the information would shed light on government misconduct. Such allegations would be pure speculation. Just as another Judge of this Court recently rejected a requester's attempt to rely on *Muchnick* in insisting that the public has an interest in knowing whether immigration determinations were made improperly as to a certain third party, so too should this Court. *See Heritage Found. v. Dep't of Homeland Sec.*, 754 F. Supp. 3d 73, 80 (D.D.C. 2024) ("Public disclosure of records about a single admission of a foreign national in the circumstances described above would provide the public, at best, limited information about the Department's general policy in admitting aliens. And the marginal public benefit of knowing that limited information is outweighed by the privacy interest the [third party] retains in his immigration status and records.").

Plaintiff argues, however, that Zarrab's and Korkmaz's privacy interests in the requested records are effectively non-existent when balanced against the public's substantial interest in

disclosure, given "citizens' right to be informed about what their government is up to." *See* Pl.'s Mot. (ECF No. 26-1) at 22–25, 27–28. The burden is on Plaintiff to establish that disclosure would sufficiently serve the public interest so as to overcome the individuals' privacy interests. *See, e.g.*, *Carter v. Dep't of Com.*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987); *accord Associated Press v. Dep't of Def.*, 549 F.3d 62, 66 (2d Cir. 2008); *Salas v. Off. of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant") (citing *Favish*, 541 U.S. at 172).

In its CBP appeal, to support a public interest, Plaintiff argued that "[t]he public, which has a right to attend [court] proceedings [] should be able to know the extent to which these individuals have an incentive to curry favor with the government." Howard Decl. ¶ 23, Ex. 16. Plaintiff also argued that Zarrab pleaded guilty to sanctions evasion and bank fraud charges but has yet to be sentenced, and Korkmaz is a fugitive from justice in the Republic of Turkey who has admitted to, among other offenses, theft of materials belonging to the Turkish government and "[t]he information sought would shed light not only on the extent to which CBP is performing its statutory duties, but on the extent to which other departments of the government (including the Department of Justice and the FBI) are performing their statutory duties as well." *Id.*

Plaintiff made similar arguments in its FOIA request and appeal to USCIS, including that "[t]he public, which has a right to attend those proceedings…has the right to know the extent to which these individuals have an incentive to curry favor with the government"; that "the public has a right to know about these individuals' attempts to stay in the United States given their backgrounds"; that "[t]he American public has a right to know, among other things, whether these individuals have applied for permanent resident status[,] whether they have been granted work

visas[,] and whether the U.S. Attorney assisted with their respective applications"; the public has the right to know what their government is up to; and the information sought would shed light on whether USCIS is complying with its statutory duties and whether individuals receive favorable treatment from the Department of Justice in exchange for their testimony.  Panter Decl. ¶¶ 6, 14, Ex. 1 and Ex. 3.

Plaintiff's assertions do not outweigh the substantial privacy interest described above for at least two reasons.  *First*, Plaintiff claims that the "Reza Zarrab and Huseyin Korkmaz are government witnesses in a public proceeding," *see e.g.*, Howard Decl. ¶ 23, Ex. 16, and obtaining their immigration files would allow the public to know whether they received favorable treatment from the Department of Justice in exchange for their testimony or shed light on whether CBP and USCIS are performing their duties.  *See* Pl.'s Mot. (ECF No. 26-1) at 24; *see also* Panter Decl. ¶ 14, Ex. 3.  Similar arguments have been rejected.  Indeed, the D.C. Circuit recognizes that disclosure of information regarding "potential witnesses . . . is simply not very probative of an agency's behavior or performance."  *SafeCard*, 926 F.2d at 1205; *accord Heritage Found.*, 754 F. Supp. 3d at 80.  As USCIS noted, "in most third-party FOIA requests, including this matter, there is no discernable public interest in disclosure of a particular individual's immigration information," and that is "because there is minimal, if any, amount of information of interest to the public revealed by disclosing immigration information for particular individuals as disclosure would not shed enough light on an agency's conduct to overcome the individual's privacy interest in the nondisclosure of their information."  Panter Decl. ¶ 48.

*Second*, it is clear that Plaintiff wants the information for its own sake to satisfy a private interest, rather than a public interest.  "Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient

reason for the disclosure." *Favish*, 541 U.S. at 172. "First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake." *Id.* "Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted." *Id.* Here, Plaintiff admits that it represents Türkiye Halk Bankası A.Ş. ("Halkbank") in ongoing proceedings in the Southern District of New York, and in those proceedings Halkbank is alleged, among other things, to have conspired with Reza Zarrab to violate the International Emergency Economic Powers Act and defraud the United States in violation of 18 U.S.C. § 371. Am. Compl. (ECF No. 8) ¶ 3. The private interest in the information is further supported by the fact that the FOIA requests stated "[t]his request is being made for commercial purposes" and the law firm was "willing to pay fees for this request up to $3000." Howard Decl. ¶ 6, Ex. 1; Panter Decl. ¶ 6, Ex. 1. "It is established, however, that the public interest in disclosure does not include helping an individual obtain information for his personal use to overturn a conviction." *Lewis v. Dep't of Just.*, 609 F. Supp. 2d 80, 85 (D.D.C. 2009), nor is FOIA "a substitute for discovery in criminal cases," *Bales*, 2020 WL 1078854, at *5. That rule is particularly apt here. Plaintiff fails to establish that "the public interest sought to be advanced" in the release of the information "is a significant one, an interest more specific than having the information for its own sake." *Favish*, 541 U.S. at 172. This is because the release of the information would not shed light on CBP's or USCIS's operations or activities. *See Multi AG Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1231 (D.C. Cir. 2008).

When the requesting party cannot demonstrate a public interest in disclosure, then the court will not order disclosure, because "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner,* 879 F.2d 873, 879 (D.C. Cir.1989). Thus, based on the evidence before CBP and USCIS at the time of their final determinations, both

CBP and USCIS properly determined that Plaintiff's assertions did not demonstrate a public interest in the release of the information that outweighed the substantial privacy interests of the third-party individuals, as required under FOIA.   *See* Panter Decl. ¶¶ 42–51; *see also* Howard Decl. ¶ 50.  In sum, having failed to provide evidence of a public interest sufficient to outweigh the substantial privacy interests, Plaintiff has failed to demonstrate that the public interest prevails in the balancing tests called for by Exemptions 6 and 7(C).

Last, it goes without saying that disclosing the victim and witness information foreseeably would harm interests that Exemptions 6 and 7(C) protect—namely, their privacy interests. *See Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 65 (D.D.C. 2021) ("The purpose of Exemption 7(C) is to protect the privacy of individuals identified in certain agency records, . . . such that disclosure of identifying information is a harm in and of itself.  Thus, when invoking Exemption 7(C), an agency need not establish much more than the fact of disclosure to establish foreseeable harm"); *Ball v. Marshals Serv.*, Civ. A. No. 19-1230 (JEB), 2021 WL 4860590, at *9 (D.D.C. Oct. 19, 2021) ("When Exemption 7(C) is invoked . . . the justifications for non-disclosure generally are also sufficient evidence of foreseeable harm"); *Chelmowski v. United States*, Civ. A. No. 17-1394 (JEB), 2021 WL 3077558, at *5 (D.D.C. July 21, 2021), *aff'd*, No. 21-5208, 2022 WL 11337053 (D.C. Cir. Oct. 17, 2022) ("protecting personal information . . . is directly related to Exemption 6's goal"); *cf. Elec. Privacy Info. Ctr. v. Dep't of Com.*, 928 F.3d 95, 102 (D.C. Cir. 2019) ("In the privacy context, such harm would ordinarily stem from the disclosure of private information"). The harm of disclosure is especially foreseeable, as victim and witness "information is often underreported, and it is plausible that further disclosure of such private information would only exacerbate the challenges of such underreporting." *Bagwell v. Dep't of Educ.*, 183 F. Supp. 3d 109, 129 (D.D.C. 2016).

**D.      CBP Properly Withheld Information Pursuant to FOIA Exemption 7(E).**

As a threshold matter, Plaintiff does not challenge CBP's withholdings pursuant to Exemption 7(E).  *See* Pl.'s Mot. (ECF No. 26-1) at 28.  In any event, CBP properly withheld information pursuant to Exemption 7(E).

Exemption 7(E) addresses withholding of law enforcement records where the release of this information "would disclose techniques and procedures for law enforcement investigations or prosecutions[] or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  It affords "categorical protection," *Jud. Watch, Inc. v. FBI*, 2001 WL 35612541, at *8 (D.D.C. Apr. 20, 2001) (internal quotation marks omitted), to material that "would compromise law enforcement by revealing information about investigatory techniques that are not widely known to the general public," *Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997). Also, this exemption is "written in broad and general terms." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) ("[T]he importance of deterrence explains why the exemption is written in broad and general terms" and further explains why the exemption looks "not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk").  Thus, the "requirement that disclosure risk circumvention of the law 'sets a relatively low bar for the agency to justify withholding."  *Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 31 (D.D.C. 2018) (citations and internal quotations omitted).

Here, CBP applied Exemption 7(E) to protect from disclosure case file numbers, file locations, other unique identifiers, and otherwise unknown, specific law enforcement techniques, procedures, and guidelines followed by CBP when performing its border security mission.  *See* Howard Decl. ¶ 54.  The effectiveness of CBP's mission is dependent to a large extent on the use of sensitive investigative techniques and methods that are not known to the general public.  *Id.*

¶ 53.   These law enforcement techniques and procedures are critical tools used by CBP officers to efficiently and effectively carry out CBP's mission to secure the border and to prevent threats, including terrorists, their weapons, and other dangerous items, from entering the United States, and to enforce customs, immigration, agriculture, and other federal laws at the border.  *Id.*  The disclosure of these techniques and methods would seriously compromise CBP's ability to perform its law enforcement mission at the border.  *Id.*  Also, disclosure of this information would risk circumvention of the law and permit illicit actors to impede CBP's effectiveness as a law enforcement agency and frustrate CBP's ability to detect illicit activity and enforce the law.  *Id.*

¶ 54.   Additionally, disclosure of CBP**'s** law enforcement procedures not known to the public would be detrimental to CBP's ability to carry out its mission, enabling individuals to alter their patterns of conduct, adopt new methods of operations, and effectuate other countermeasures to circumvent CBP's law enforcement techniques.  *Id.*  As CBP's declaration shows, these harms are reasonably foreseeable.  *See id.*

For these reasons, and without any challenges from Plaintiff, CBP properly invoked Exemption 7(E) to withhold law enforcement information where the public disclosure could reasonably be expected to risk circumvention of the law and therefore, the withholdings should be upheld.

## III.    CBP and USCIS Have Met Their Segregability Obligations.

While an agency may properly withhold records or parts of records under one or more FOIA exemptions, it "must release 'any reasonable segregable portions' of responsive records that do not contain exempt information.'"  *Agrama v. IRS*, 282 F. Supp. 3d 264, 275 (D.D.C. 2019); *see* 5 U.S.C. § 552(b) (requiring "any reasonably segregable portion of a record shall be provided to [the requester] after deletion of the portions which are exempt").  Non-exempt portions of a document "must be disclosed unless they are inextricably intertwined with exempt portions."

*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D. D.C. 2008). An agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," *Perioperative Servs. & Logistics, LLC v. Dep't of Veterans Affs.*, 57 F.4th 1061, 1068–69 (D.C. Cir. 2023), and the burden is on Plaintiff to proffer contrary evidence to rebut the applicable presumption, which is usually unlikely, *see id.* An agency, however, also "must specifically and thoughtfully" consider whether otherwise exempt information can be released without foreseeable harm to the interests protected by the particular exemption. *Leopold v. Dep't of Just.*, 94 F.4th 33, 37-38 (D.C. Cir. 2024). Nonetheless, an attestation "that 'no further segregation' [i]s possible without disclosing such [exempt] information" suffices to establish an agency's fulfillment of its duty to segregate non-exempt material and to establish foreseeable harm. *Emuwa v. Dep't of Homeland Sec.*, 113 F.4th 1009, 1017 (D.C. Cir. 2024) (citing 5 U.S.C. § 552(a)(8)(A)(ii)).

Here, CBP asserts that all responsive records have been appropriately withheld in full, as the information contained therein is not reasonably segregable because it is so intertwined with protected material that segregation is not possible, or its release would have revealed the underlying protected material. Howard Decl. ¶ 55. Except as otherwise explained in CBP's declaration, CBP personnel have reviewed the documents determined to be responsive, line-by-line, to identify information exempt from disclosure or for which a discretionary waiver of exemption could apply, and no reasonably segregable portions of the relevant records have been located. *Id.* Similarly, CBP personnel have considered the foreseeable harm standard and

determine that any release of the exempted materials could reasonably lead to the identification of the individuals or other items that are properly protected by the exemptions asserted. *Id.*

As for USCIS, "[t]o the extent the circumstances justify a *Glomar* response, the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents," *Lindsey v. FBI*, 271 F. Supp. 3d 1, 4 (D.D.C. 2017) (alteration, internal quotation marks, and citation omitted), and thus, because USCIS issued a *Glomar* response, it did not need to perform a segregability analysis.

## CONCLUSION

For these reasons, the Court should grant Defendants' cross-motion for summary judgment, deny plaintiff's motion for summary judgment, and enter judgment for Defendants ICE, CBP, and USCIS.

Dated: May 22, 2025                    Respectfully submitted,

                                       JEANINE FERRIS PIRRO
                                       United States Attorney

                                       By:        /s/ Stephanie R. Johnson
                                           STEPHANIE R. JOHNSON,
                                             D.C. Bar # 1632338
                                           Assistant United States Attorney
                                           Civil Division
                                           601 D Street, NW
                                           Washington, DC 20530
                                           (202) 252-7874
                                           Stephanie.Johnson5@usdoj.gov

                                       *Attorneys for the United States of America*