UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————————
)
WILLIAMS & CONNOLLY, LLP,                )
)
      Plaintiff,                        )
)
      v.                                )
)    Civil Action No. 24-2322 (PLF)
DEPARTMENT OF HOMELAND               )
SECURITY, et al.,                        )
)
      Defendants.                       )
)
———————————————————————————

<u>AMENDED OPINION AND ORDER</u>

      Williams and Connolly, LLP ("plaintiff") brought this suit under the Freedom of Information Act ("FOIA") against various government agencies, including the United States Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), United States Customs and Border Protection ("CBP"), and United States Citizenship and Immigration Services ("USCIS") (collectively, "defendants").[1]  Plaintiff alleges that Mr. Reza Zarrab—a citizen of Iran, Turkey, and North Macedonia—testified in a highly publicized trial in the United States District Court for the Southern District of New York in exchange for immigration benefits from the federal government.  <u>See</u> Pl. Mot. at 1, 7-8.

---

[1]      The Court has reviewed the following papers in connection with this matter: Complaint ("Compl.") [Dkt. No. 1]; Amended Complaint ("Am. Compl.") [Dkt. No. 8]; Plaintiff's Motion for Partial Summary Judgment ("Pl. Mot.") [Dkt. No. 26]; Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment [Dkt. Nos. 30, 31]; ERRATA Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment ("Defs. Opp. & Mot.") [Dkt. Nos. 32, 33]; Plaintiff's Reply in Support of Its Motion for Summary Judgment and Opposition to Defendants' Cross-Motion for Summary Judgment ("Pl. Reply & Opp.") [Dkt. Nos. 37, 38]; and Defendants' Reply in Further Support of Their Motion for Summary Judgment ("Defs. Reply") [Dkt. No. 44].

Between 2021 and 2022, plaintiff submitted three FOIA requests seeking all records that mention Zarrab:  one request that was forwarded to ICE from DHS; one request to CBP; and one request to USCIS.  See Pl. Mot. at 10-13.[2]  Defendants responded to plaintiff's requests, but plaintiff—unsatisfied with defendants' responses—initiated this action.  See Compl.; see also Am. Compl.  Plaintiff now moves for partial summary judgment against defendants DHS, ICE, CBP, and USCIS, see Pl. Mot., and defendants have cross-moved for summary judgment.  See Defs. Opp. & Mot.  After careful consideration of the parties' papers, the attached declarations and exhibits, the relevant legal authorities, and the oral arguments presented by counsel on September 12, 2025, the Court will grant defendants' cross-motion for summary judgment and will deny plaintiff's motion for partial summary judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The DHS/ICE FOIA Request

On October 19, 2021, plaintiff submitted a FOIA request to DHS seeking all records that mention Reza Zarrab, whom plaintiff described as "an individual that has pleaded guilty to sanctions evasion in the Southern District of New York."  Pl. Mot. at Ex. 57 [Dkt. No. 26-59] at 1.  Plaintiff's FOIA request also sought all records that mention:  (i) Zarrab's brother, Mr. Mohammad Zarrab; (ii) Zarrab's father, Mr. Hossein Zarrab; (iii) four individuals that were either indicted for or otherwise involved in the same sanctions evasion case as Zarrab;

---

[2]     Plaintiff's FOIA requests also sought all records that mention Mr. Hüseyin Korkmaz, an individual who testified in the same case as Mr. Zarrab.  See Pl. Mot. at 2, 9. Mr. Korkmaz unfortunately passed away in January 2025.  See id. at 10; see also Pl. Reply & Opp. at 1 n.1.  "In an effort to streamline this case," plaintiff has "withdraw[n] all claims" against defendants DHS, ICE, CBP, and USCIS with respect to Mr. Korkmaz in this litigation.  See Pl. Reply & Opp. at 1 n.1.  The Court therefore will only consider defendants' conduct with respect to records that mention Mr. Zarrab.

and (iv) five companies "affiliated" with Zarrab.  See Pl. Mot. at Ex. 57 at 1-2; see also Defs.

Opp. & Mot. at 6 (citing Declaration of Fernando Pineiro ("Pineiro Decl.") [Dkt. No. 33-3] ¶ 6).

On November 3, 2021, DHS forwarded plaintiff's request to ICE.  See Defs.

Opp. & Mot. at 2 (citing Pineiro Decl. ¶ 5); see also Pl. Mot. at Ex. 58 [Dkt. No. 26-60].  ICE's

FOIA office determined that Homeland Security Investigations ("HSI"), the ICE component

responsible for "investigating transnational crimes and threats, including financial crimes, money

laundering and sanctions violations," was the appropriate component to conduct a search for

responsive records.  See Defs. Opp. & Mot. at 6 (citing Pineiro Decl. ¶¶ 25, 26).  ICE's FOIA

office further determined that the HSI field office in New York—the same place where the

sanctions evasion case involving Zarrab was filed—"was the appropriate component of [HSI] to

conduct the search" for responsive records.  Defs. Opp. & Mot. at 7 (citing Pineiro Decl. ¶ 30).

As for which database to search, ICE's FOIA office determined that a search in

the Investigative Case Management system ("Investigative Case system") "was warranted

because it is ICE's primary tool for managing both criminal and civil enforcement matters."

Defs. Opp. & Mot. at 7 (citing Pineiro Decl. ¶ 28).  HSI personnel conducted two different

searches for responsive records within the Investigative Case system:  one search on

November 4, 2021, and another search on November 5, 2021.  See id. (citing Pineiro Decl.

¶¶ 30, 31).  "Both searches yielded no records."  Id. at 2; see also Pineiro Decl. ¶¶ 30, 31.

On December 1, 2021, ICE issued a final determination letter to plaintiff stating

that no responsive records were found.  See Pl. Mot. at Ex. 59 [Dkt. No. 25-61]; see also Defs.

Opp. & Mot. at 2 (citing Pineiro Decl. ¶¶ 30, 31).  Plaintiff administratively appealed ICE's

determination on January 4, 2022, see Pl. Mot. at 12; see also id. at Ex. 60 [Dkt. No. 26-62], but

ICE denied the appeal on February 1, 2022, finding that its search was "adequate" and "was reasonably calculated to uncover all relevant documents."  Pl. Mot. at Ex. 61 [Dkt. No. 26-63].

### B.   The CBP FOIA Request

On August 23, 2021, plaintiff submitted a FOIA request to CBP that was materially identical to the FOIA request plaintiff submitted to DHS.  See Pl. Mot. at Ex. 39 [Dkt. No. 26-41]; see also Defs. Opp. & Mot. at 2 (citing Declaration of Patrick Howard ("Howard Decl.") [Dkt. No. 33-6] ¶ 6).  CBP's FOIA office initially closed plaintiff's request because it was "a third-party request that failed to provide authorization for the release of documents related to [the] third parties listed" in the request.  Defs. Opp. & Mot. at 2 (citing Howard Decl. ¶ 8); see also Pl. Mot. at Ex. 40 [Dkt. No. 26-42].  Plaintiff administratively appealed, see Pl. Mot. at Ex. 41 [Dkt. No. 26-43], and CBP remanded the request back to its FOIA office for further processing.  See Defs. Opp. & Mot. at 2 (citing Howard Decl. ¶¶ 11,13).

On remand, CBP's FOIA office conducted a search for responsive records.  See Defs. Opp. & Mot. at 2 (citing Howard Decl. ¶ 22).  On October 4, 2022, CBP issued a determination letter to plaintiff, stating that a search of CBP databases had "produced records responsive to [plaintiff's] request," but that all documents would be "withheld in full" pursuant to Exemptions 6, (7)(C), and (7)(E) of FOIA.  Pl. Mot. at Ex. 47 [Dkt. No. 26-49]; see also Defs. Opp. & Mot. at 2.  The determination letter further noted that, "[b]ased on the information [plaintiff] provided, there [were] no records for the businesses listed in [plaintiff's] request."  Pl. Mot. at Ex. 47; see also Defs. Opp. & Mot. at 2 (citing Howard Decl. ¶ 35).  Plaintiff administratively appealed on December 28, 2022, see Pl. Mot. at Ex. 48 [Dkt. No. 26-50] at 2-4, but on September 26, 2023, CBP denied plaintiff's appeal and upheld its determination.  See id. at Ex. 48 at 5-18; see also Defs. Opp. & Mot. at 3 (citing Howard Decl. ¶ 24).

### C.  The USCIS FOIA Request

On January 12, 2022, plaintiff submitted a FOIA request to USCIS seeking all records that mention Zarrab.  See Pl. Mot. at Ex. 51 [Dkt. No. 26-53].  USCIS's FOIA office initially closed plaintiff's request for failure to provide authorization by the third parties named in plaintiff's request.  See Pl. Mot. at 11.  On February 2, 2022, plaintiff re-submitted the same FOIA request to USCIS.  See id. at Ex. 52 [Dkt. No. 26-54]; see also Defs. Opp. & Mot. at 3 (citing Declaration of Jarrod Panter ("Panter Decl.") [Dkt. No. 33-5] ¶ 6).

On February 15, 2022, USCIS denied plaintiff's request in its entirety pursuant to Exemption 6 of FOIA.  See Defs. Opp. & Mot. at 3 (citing Panter Decl. ¶ 9).  In the final determination letter issued to plaintiff, USCIS stated that plaintiff's request did not "clear[ly] demonstrat[e] that the public interest in disclosure outweighs the personal privacy interest(s) of the individual(s) and that significant public benefit would result from the disclosure of the requested records."  Pl. Mot. at Ex. 53 [Dkt. No. 26-55].  "In denying [p]laintiff's request, USCIS's FOIA office did not conduct a search for responsive records, as it determined that information regarding whether or not USCIS maintained documents pertaining to Zarrab . . . was privacy protected information exempt from disclosure pursuant to Exemption 6."  Defs. Opp. & Mot. at 3; see also Panter Decl. ¶ 9.  Plaintiff administratively appealed, see Pl. Mot. at Ex. 55 [Dkt. No. 26-57], but USCIS upheld its determination.  See id. at Ex. 56 [Dkt. No. 26-58].

### D.  Procedural History

On August 9, 2024, plaintiff filed suit against DHS, ICE, CBP, and USCIS. See Compl. ¶ 1.  On August 19, 2024, plaintiff amended its complaint to, among other things, name the United States Department of the Treasury and the United States Department of State as additional defendants.  See Am. Compl. ¶ 1.  On February 14, 2025, plaintiff moved for partial

5

summary judgment against DHS, ICE, CBP, and USCIS.  See Pl. Mot.  On May 22, 2025,

defendants filed their opposition to plaintiff's motion for summary judgment, see Dkt. No. 31,

and cross-moved for summary judgment.  See Dkt. No. 30.  Defendants corrected both filings on

May 23, 2025.  See Defs. Opp. & Mot.  On July 8, 2025, plaintiff replied in further support of its

motion and filed its opposition to defendants' motion.  See Pl. Reply & Opp.  On

September 3, 2025, defendants replied in further support of their motion.  See Defs. Reply.

On September 12, 2025, the Court heard oral argument on plaintiff's motion for

partial summary judgment and defendants' cross-motion for summary judgment.  See Minute

Entry of September 12, 2025.  Both motions for summary judgment are now ripe for decision.

## II.  LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary

judgment."  Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Veterans Affs., 69 F.

Supp. 3d 115, 121 (D.D.C. 2014) (quoting Defenders of Wildlife v. U.S. Border Patrol, 623 F.

Supp. 2d 83, 87 (D.D.C. 2009)).  The Court grants summary judgment if the movant shows that

there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of

law.  See FED. R. CIV. P. 56(a).  In a FOIA action to compel production of agency records, the

agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates

'that each document that falls within the class requested either has been produced . . . or is

wholly exempt from the [FOIA's] inspection requirements.'"  Citizens for Resp. & Ethics in

Washington v. U.S. Dep't of Veterans Affs., 69 F. Supp. 3d at 121 (quoting Students Against

Genocide v. U.S. Dep't of State, 257 F. 3d 828, 833 (D.C. Cir. 2001)).

When considering a motion for summary judgment in a FOIA case, courts may

rely upon agency affidavits "to determine whether the statutory obligations of the FOIA have

6

been met." Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam); see also

Kowalczyk v. DOJ, 73 F.3d 386, 388 (D.C. Cir. 1996) ("In considering an agency's motion for

summary judgment in a FOIA case, the court may rely upon affidavits of agency officials

'describing [the agency's] search procedures.'") (quoting McGehee v. CIA, 697 F.2d 1095, 1102

(D.C. Cir. 1983). Such affidavits are accorded a presumption of good faith. See SafeCard

Servs. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Summary judgment may be based solely

on an agency's supporting affidavits or declarations "if they contain reasonable specificity of

detail rather than merely conclusory statements, and if they are not called into question by

contradictory evidence in the record or by evidence of agency bad faith." Jud. Watch, Inc. v.

U.S. Secret Serv., 726 F.3d 208, 215 (D.C. Cir. 2013); see also Shapiro v. DOJ, 34 F.

Supp. 3d 89, 94 (D.D.C. 2014), aff'd sub nom. Shapiro v. DOJ, 893 F.3d 796 (D.C. Cir. 2018).


### III.  ANALYSIS

Plaintiff maintains that it is entitled to summary judgment because defendants

have failed to comply with their obligations under FOIA. See Pl. Mot. First, plaintiff argues that

defendant ICE failed to conduct an adequate search for responsive records. See id. at 29-34.[3]

Second, plaintiff argues that defendants CBP and USCIS improperly withheld documents

pursuant to FOIA Exemptions 6 and 7(C). See id. at 18-28.[4] Third, plaintiff argues that "even if

---

[3]     Plaintiff does not challenge the adequacy of CBP's search for potentially responsive records. See Pl. Reply & Opp. at 22.

[4]     Defendant CBP also withheld portions of some documents pursuant to FOIA Exemption 7(E), noting that production of "case file numbers, file locations, and other unique identifiers . . . could provide enterprising computer hackers with information necessary to access and navigate the agency's law enforcement databases and alter, add, or delete information contained therein." See Pl. Mot. at 28 (quoting id. at Ex. 48). Plaintiff does not challenge CBP's withholdings under Exemption 7(E) and "consents to this information being redacted." Id.

some portions of some documents" withheld by defendants CBP and USCIS were "exempt from disclosure" under FOIA, CBP and USCIS still "failed to produce those portions of the documents that [were] not exempt from disclosure." Id. at 28-29.  Plaintiff argues that CBP and USCIS therefore violated FOIA's requirement that agencies produce all "reasonably segregable portion[s]" of exempted documents.  Pl. Mot. at 28 (quoting 5 U.S.C. § 552(b)).

Defendants oppose plaintiff's motion for summary judgment, and argue that they are entitled to summary judgment because they have complied with their obligations under FOIA.  See Defs. Opp. & Mot.  First, defendants argue that ICE conducted an adequate search for responsive records.  See id. at 6-13.  Second, defendants argue that CBP and USCIS properly withheld information pursuant to FOIA Exemptions 6 and 7(C).  See id. at 19-43.  Lastly, defendants argue that CBP and USCIS have met their segregability obligations.  See id. at 43-45.

The Court agrees with defendants that:  (i) ICE conducted an adequate search for responsive records;  (ii) CBP and USCIS properly withheld information pursuant to FOIA Exemptions 6 and 7(C); and (iii) CBP and USCIS have met their segregability obligations.  The Court finds that defendants therefore are entitled to summary judgment, while plaintiff is not.

### A.  ICE Conducted an Adequate Search

To establish that its search for responsive records was adequate, an "agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Mobley v. CIA, 806 F.3d 568, 580 (D.C. Cir. 2015); see also Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Veterans Affs., 69 F. Supp. 3d at 121.  "An agency need not 'search every record system' or 'demonstrate that all responsive documents were found and that no other relevant documents could possibly exist.'"  Watkins L. & Advoc., PLLC v. DOJ, 78 F.4th 436, 442 (D.C. Cir. 2023)

(quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  The search need not be exhaustive, see Saldana v. FBI, 715 F. Supp. 2d 24, 26 (D.D.C. 2010), and an agency's failure to find a particular document does not undermine the adequacy of its search.  See Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir. 2004); see also Nation Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  The adequacy of an agency's search therefore "is 'determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.'"  Kowal v. DOJ, 107 F.4th 1018, 1027 (D.C. Cir. 2024) (quoting Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011)).  Principles of "reasonableness" drive the Court's inquiry, and the inquiry is "heavily fact-dependent."  Mobley v. CIA, 806 F.3d at 580.  Courts may rely on an agency's "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched."  Id. at 580-81.

        "[O]nce the agency has provided a 'reasonably detailed' affidavit describing its search, the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to the adequacy of the search."  Pinson v. DOJ, 189 F. Supp. 3d 137, 149 (D.D.C. 2016) (quoting Morley v. CIA, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).  Such evidence may include "problems with . . . the specific search terms used or the inadequacy of the particular locations searched."  Heartland All. for Hum. Needs & Hum. Rts. v. ICE, 406 F. Supp. 3d 90, 117 (D.D.C. 2019).  "[P]urely speculative claims about the existence and discoverability of other documents," however, are insufficient to rebut an agency's affidavits.  Mobley v. CIA, 806 F.3d at 581; see also SafeCard Servs. v. SEC, 926 F.2d at 1200. If the FOIA requester demonstrates that "a review of the record raises substantial doubt" as to the

adequacy of an agency's search for responsive records, then "summary judgment is inappropriate." Lamb v. Millennium Challenge Corp., 334 F. Supp. 3d 204, 211 (D.D.C. 2018).

ICE asserts that it conducted two adequate, reasonable searches for records responsive to plaintiff's FOIA request, but found no responsive documents. See Defs. Opp. & Mot. at 6-13. ICE offers a declaration from Mr. Fernando Pineiro, the Director of ICE's FOIA office. See Pineiro ¶ 1. Pineiro explains that on October 19, 2021, plaintiff submitted a FOIA request to DHS seeking all records that mention Zarrab, "an individual that has pleaded guilty to sanctions evasion in the Southern District of New York." Id. ¶¶ 5, 6; see also Pl. Mot. at Ex. 57 at 1. Plaintiff's request also sought all records that mention two of Zarrab's family members, four individuals that were either indicted for or otherwise involved in the same sanctions evasion case as Zarrab, and five companies "affiliated" with Zarrab. See Pineiro ¶ 6. Pineiro notes that DHS forwarded plaintiff's request to ICE on November 3, 2021. See id. ¶ 5.

Pineiro asserts that on November 4, 2021, ICE's FOIA office "tasked [HSI] to conduct a comprehensive search" for responsive records. Pineiro Decl. ¶ 8. ICE identified HSI as the appropriate component to conduct the search "because [plaintiff's] request involved individuals or entities allegedly linked to a sanctions evasion case." Id. ¶ 25. HSI is the ICE component that is responsible for investigating financial crimes and sanctions violations, while "[o]ther ICE components focus on different aspects of ICE's mission." Id. HSI is also "responsible for investigating a wide range of domestic and international activities arising from the illegal movement of people and goods into, within and out of the United States," and the component "uses its legal authority to investigate criminal activities such as immigration crime." Id. ¶ 26. As for the specific HSI component that was tasked with conducting the search, Pineiro

says that ICE's FOIA office forwarded plaintiff's request to the HSI field office located in the state where the lawsuit against Zarrab was filed:  HSI's New York Field Office.  See id. ¶ 30.

Pineiro states that HSI personnel—specifically, an HSI Special Agent and an HSI Management and Program Analyst—conducted two searches for responsive records within the Investigative Case Management system.  See Pineiro Decl. ¶ 9.  The Investigative Case system is ICE's "primary tool for managing both criminal and civil enforcement matters," and it "enables personnel to create electronic case files that organize and link records and documents associated with specific investigations, facilitating efficient access from a single location."  Id. ¶ 28.  The centralized system also allows personnel to "link[ ] records to multiple investigations."  Id.

According to Pineiro, on November 4, 2021, an HSI Special Agent in the New York Field Office conducted a search in the Investigative Case system using the following exact terms:  "Reza Zarrab", "Reza Sarraf", "Riza Zarrab", "Riza Sarraf", "Royal Holding, A.S.", "Royal Group", "Atlantis Capital", "Bella Investments", "Mohammad Zarrab", "Mohammad Sarraf", "Hossein Zarrab", "Hossein Sarraf", "Al Nafees Exchange LLC", "Abdullah Happani", "Camelia Jamshidy", "Hossein Najafzadeh", and "Huseyin Korkmaz."  Pineiro Decl. ¶ 30.  These were the exact terms that plaintiff provided in its FOIA request.  See id.; see also Pl. Mot. at Ex. 57.  HSI did not restrict the search by any date range, "ensuring a comprehensive review." Pineiro Decl. ¶ 30.  Pineiro reports that the search yielded no positive matches, "indicating that no [HSI] investigations or case files existed concerning the specified individuals or entities."  Id.

The next day, on November 5, 2021, a different HSI employee—this time, an HSI FOIA Unit Analyst—conducted another search in the Investigative Case system using the following exact terms:  "Reza Zarrab", "Reza Sarraf", "Riza Zarrab", "Riza Sarraf", "Royal Holding, A.S.", "Royal Group", "Atlantis Capital", "Bella Investments", "Mohammad Zarrab",

"Mohammad Sarraf", "Hossein Zarrab", "Hossein Sarraf", "Al Nafees Exchange LLC",

"Abdullah Happani", "Camelia Jamshidy", "Hossein Najafzadeh", and "Huseyin Norkmaz."

Pineiro Decl. ¶ 31.  These were the exact terms that plaintiff provided in its request, see id., with

the exception of "Huseyin Norkmaz," which is a misspelling of "Huseyin Korkmaz."  HSI again

did not restrict its search by any date range.  See Pineiro Decl. ¶ 31.  Pineiro reports that this

second search also yielded no positive matches, "reinforcing the conclusion that no

investigations or case files existed concerning the specified individuals or entities."  Id.

       Plaintiff raises two objections to the adequacy of ICE's search for potentially

responsive records.  Neither objection has merit, and the Court addresses each in turn.

    1.  Whether ICE Reasonably Identified the Appropriate Offices/Databases to Search

       First, plaintiff argues that ICE "did not reasonably identify and search the offices

or databases likely to contain responsive documents."  Pl. Mot. at 29.  Plaintiff notes that "ICE

tasked just one office, HSI, with conducting searches for responsive records," and "that office

searched just one database, the Investigative Case Management (ICM) System."  Id. at 30.

Plaintiff asserts that "[e]ven if it were reasonable" for ICE "to begin the search at that one office

and with that one database, when that office and that database failed to locate records, ICE was

obligated to do more."  Id. (citing Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326

(D.C. Cir. 1999) (explaining that an agency "cannot limit its search to only one or more places if

there are additional sources that are likely to turn up the information requested.").

       Plaintiff identifies other databases and repositories that ICE could have searched

for "information on noncitizens who enter, reside, or are granted deferred action," such as:

> "ICE ENFORCE," . . .; "IDENT," which stores biometric
> information, including photographs and fingerprints; "Enforcement
> Integrated Database," which is known to house "information related

> to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and criminal law enforcement investigations and operations"; the Data Analysis System (containing, among other things, immigration and criminal histories); IDOCX (assisting in the collection, analysis, and translation of collected documents); the Electronic Surveillance System (ESLUR) (storing court orders allowing ICE to intercept communications); FALCON-SA (storing and facilitating the analysis of existing information to help ICE fulfill its enforcement functions); the Visa Security Program Tracking System (recording, tracking, and managing all visa security reviews performed by ICE); and the Automated Threat Prioritization Web Service (receiving, processing, and transmitting criminal history information).

Pl. Mot. at 30-31. Narrowing in on the Enforcement Integrated Database ("EID"), plaintiff notes that "'ICE has produced data from EID in recent cases,' and there is no reason [ICE] should not search that database in this case as well." Id. at 31 (quoting Am. Immigr. Council v. ICE, 464 F. Supp. 3d 228, 242 (D.D.C. 2020)). Lastly, plaintiff asserts that "because Zarrab's plea agreement specifically indicated that the U.S. Attorney's Office would reach out to ICE regarding Zarrab . . . ICE should have also searched email correspondence, including custodians likely to correspond with the U.S. Attorney's Office." Id. at 31-32 (citing id. at Ex. 66 ("Zarrab Plea Agreement") [Dkt. No. 26-68], and Organized Cmtys. Against Deportations, Immigr. Def. Project v. ICE, Civil Action No. 21-2519, 2024 WL 2053123 (JRB), at *6 (N.D. Ill. May 8, 2024) (denying ICE's motion for summary judgment where the agency "did not act upon reasonable and obvious leads provided by [p]laintiffs to discover relevant documents.")).

Defendants counter that because HSI is the ICE component responsible for investigating financial crimes and sanctions violations, ICE determined that HSI was "the suitable entity within ICE to handle the search for responsive records." Defs. Opp. & Mot. at 6 (citing Pineiro Decl. ¶¶ 25, 26). As for HSI's decision to only search within the Investigative Case Management system, defendants note that the system is "ICE's primary tool for managing

both criminal and civil enforcement matters." Id. at 7 (citing Pineiro Decl. ¶ 28). Defendants

explain that "if no case file exists within Investigative Case system, it is unlikely that emails or

other records pertaining to the specified individuals or entities are present, as the absence of a

case file indicates that no investigation has been conducted involving those subjects." Defs.

Opp. & Mot. at 7 (citing Pineiro Decl. ¶ 29). Defendants assert that "[b]ased on the results of the

Investigative Case system searches, which yielded no records related to the specified individuals

or entities, and considering the scope of [plaintiff's] FOIA request[,] ICE determined that

extending the search to additional offices or databases was unnecessary or that responsive

records would likely not reside in any other location beyond where ICE searched." Id. at 9.[5]

The Court finds that ICE reasonably identified and searched the office and

database likely to contain all documents responsive to plaintiff's request. Pineiro's declaration

explains at length ICE's reasoning for: (i) selecting HSI as the appropriate component to search

for responsive records; and (ii) identifying the Investigative Case Management system as the

database likely to contain responsive records. And Pineiro's declaration must be accorded "a

presumption of good faith, which cannot be rebutted by 'purely speculative claims about the

existence and discoverability of other documents.'" Lasko v. DOJ, 684 F. Supp. 2d 120, 127

(D.D.C. 2010) (quoting SafeCard Servs. v. SEC, 926 F.2d at 1200). ICE "has provided a

'reasonably detailed' affidavit describing its search," so now "the burden shifts to [plaintiff] to

produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to

the adequacy of the search." Pinson v. DOJ, 189 F. Supp. 3d at 149 (quoting Morley v. CIA, 508

---

[5]    Defendants further argue that "[p]laintiff's argument that ICE should have tasked
other sub-components within ICE and searched emails and other databases and repositories
identified in [p]laintiff's motion was not raised in [plaintiff's] appeal." Defs. Opp. & Mot. at 10.
Because the Court agrees that ICE conducted searches reasonably calculated to locate all records
responsive to plaintiff's request, the Court need not consider defendants' alternative argument.

F.3d at 1116).  Such evidence may include details proving "the inadequacy of the particular

locations" searched.  Heartland All. for Hum. Needs & Hum. Rts. v. ICE, 406 F. Supp. 3d at 117.

      Unfortunately for plaintiff, the countervailing evidence it has proffered does little

to discredit ICE's searches.  Plaintiff first expresses incredulity that ICE "failed to locate a single

document regarding a notorious, lawbreaking foreign national who entered into an agreement

with the U.S. Attorney's Office for the Southern District of New York."  Pl. Reply & Opp. at 21

(emphasis in original).  But "[t]he adequacy of a search is 'determined not by the fruits of the

search, but by the appropriateness of the methods used to carry out the search.'"  Kowal v.

DOJ, 107 F.4th at 1027 (quoting Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d

at 514).  Plaintiff's "purely speculative claims about the existence" of responsive documents

therefore are insufficient to rebut Pineiro's "relatively detailed and non-conclusory" declaration.

Mobley v. CIA, 806 F.3d at 581 (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d at 1200).

      Plaintiff also identifies several databases and repositories that may contain data on

noncitizens—like Zarrab—who enter or reside in the United States.  See Pl. Mot. at 30-31.  But

defendants explain that "[g]iven that the Investigative Case Management system serves as the

repository for Homeland Security Investigations' case records, and no relevant records were

identified" regarding the subjects of plaintiff's request, ICE determined that "expanding the

search would not have been reasonably calculated to uncover additional responsive records."

Pineiro Decl. ¶ 33.  Under FOIA, ICE need only have made a "good faith effort to conduct a

search for the requested records, using methods which can be reasonably expected to produce the

information requested."  Mobley v. CIA, 806 F.3d at 580; see also Watkins L. & Advoc.,

PLLC v. DOJ, 78 F.4th at 442 ("An agency need not 'search every record system' or

'demonstrate that all responsive documents were found and that no other relevant documents

could possibly exist.'") (quoting <u>Oglesby v. U.S. Dep't of Army</u>, 920 F.2d at 68).  In the Court's view, Pineiro's declaration shows that ICE's method for uncovering responsive documents was reasonably calculated to produce plaintiff's requested information.

 Lastly, plaintiff argues that ICE should have searched emails, including the emails of custodians likely to interact with the U.S. Attorney's Office, because "Zarrab's plea agreement indicated that the U.S. Attorney's Office would reach out to ICE regarding Zarrab." Pl. Mot. at 31-32.  Zarrab's plea agreement states that it does not "bind the Bureau of Immigration and Customs Enforcement ("ICE"), although [the U.S. Attorney's Office] will bring the cooperation of [Zarrab], as well as any safety concerns with respect to [Zarrab] and his family, to the attention of ICE, if requested by [him]."  Zarrab Plea Agreement at 5.  The agreement further states that the U.S. Attorney's Office "will take steps to bring any known safety concerns to the attention of the appropriate authorities, including ICE."  <u>Id</u>. at 6.

 Though plaintiff characterizes Zarrab's plea agreement as an "obvious lead[]" that ICE was required to pursue, <u>see</u> Pl. Mot. at 30, "[a] 'lead' must be 'both clear and certain' and 'so apparent that the [agency] cannot in good faith fail to pursue it.'"  <u>Mobley v. CIA</u>, 806 F.3d at 582 (quoting <u>Kowalczyk v. DOJ</u>, 73 F.3d at 389).  Zarrab's plea agreement indicates, at most, that the U.S. Attorney's Office intended to bring Zarrab's cooperation to ICE's attention <u>if</u> Zarrab requested that the Office do so.  <u>See</u> Zarrab Plea Agreement at 5.  The agreement also indicates that the Office intended to contact ICE <u>if</u> the Office identified any "safety concerns." <u>See id</u>. at 6.  But evidence that the Office at one point intended to contact ICE about Zarrab if

16

certain conditions were met is not a "clear and certain" lead obligating ICE to conduct additional searches. Mobley v. CIA, 806 F.3d at 582 (quoting Kowalczyk v. DOJ, 73 F.3d at 389).[6]

Having considered all of plaintiff's arguments to the contrary, the Court finds that ICE reasonably identified and searched the locations likely to contain all responsive documents.

2. Whether ICE Used Reasonable Search Terms Aimed at Identifying Responsive Documents

Plaintiff further argues that ICE failed to use reasonable search terms aimed at identifying responsive documents. See Pl. Mot. at 32-33. In its FOIA request, plaintiff "specifically requested that common derivates" of Zarrab's name "be searched to account for any possible typographical errors in records." Id. at 33 (citing id. at Ex. 60). Plaintiff argues that "[a]lthough ICE searched for the names [p]laintiff provided (at least with respect to Zarrab), ICE failed to search obvious permutations or phonetic spellings of the requested terms, such as 'RezaZarrab,' 'Reesa,' [or] 'Zarab.'" Id. Plaintiff claims that these "inadequacies" in ICE's chosen search terms "were not rectified" in the agency's second search because "ICE merely searched 'Reza Zarrab, Riza Zarrab, Reza Sarraf, [and] Riza Sarraf . . . without more." Id.[7]

---

[6]    Plaintiff further asserts that ICE's search was inadequate because there is "public reporting" that shows "that Zarrab received an employment authorization card, which . . . was issued under code 'C14' for 'deferred action'—an immigration category typically authorized by ICE." Pl. Mot. at 34; see also id. at 8. But plaintiff did not mention this "public reporting" in its FOIA request, see Pl. Mot. at Ex. 57 [Dkt. No. 26-59], and did not mention the reporting on appeal. See Pl. Mot. at Ex. 60 [Dkt. No. 26-62]. Plaintiff therefore fails to demonstrate that ICE was aware of this "public reporting" at the time that it conducted its search for records. See Kowalczyk v. DOJ, 73 F.3d at 389 (explaining that an agency "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents."); see also Mobley v. CIA, 806 F.3d at 582 (concluding that the FBI's search was adequate in part because plaintiff "provide[d] no evidence that the FBI was aware" of leads plaintiff identified in another agency's documents "before [the FBI] complet[ed] its search.").

[7]    Plaintiff also notes that ICE failed to search using Zarrab's date of birth as a search term, and also did not "attempt to discern any helpful information" from the sanctions evasion case cited numerous times in plaintiff's request. Pl. Mot. at 33. But plaintiff offers no

17

Defendants counter that HSI "employed the exact search terms provided by [p]laintiff," and "tested various permutations to account for potential variations in how information may be recorded within Investigative Case system." Defs. Opp. & Mot. at 12 (citing Pineiro Decl. ¶¶ 31, 34). Because "no responsive records were found using all the terms supplied by [p]laintiff," defendants argue that "it is unlikely that alternative phrasing would yield different results." Defs. Opp. & Mot. at 12 (citing Pineiro Decl. ¶ 34).

The Court finds that plaintiff cannot undermine the adequacy of ICE's search by pointing to search terms that it wishes ICE would have used because, "[i]n general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request." Bigwood v. DOD, 132 F. Supp. 3d 124, 140 (D.D.C. 2015). First, plaintiff's FOIA request provided four different permutations of Zarrab's name: "Reza Zarrab"; "Reza Sarraf"; "Riza Zarrab"; and "Riza Sarraf." See Pl. Mot. at Ex. 57. ICE searched for responsive records using all four of the permutations in plaintiff's request. See Pineiro Decl. ¶¶ 31, 34. Though plaintiff now faults ICE for failing to search using "obvious permutations or phonetic spellings" of Zarrab's name, such as "RezaZarrab," "Reesa," or "Zarab," see Pl. Mot. at 33, these search terms are not so obvious that ICE could reasonably have been expected to anticipate them.[8] ICE's search terms therefore

_____

explanation for why a search using Zarrab's date of birth—which is likely shared by numerous individuals—would have yielded responsive records that ICE's name-based searches did not. And as for plaintiff's second argument, plaintiff fails to clarify precisely what "helpful information" it expected ICE to "discern" from Zarrab's sanctions evasion case. Under FOIA, ICE was not required to review the cited case's voluminous docket for potential leads. See Kowalczyk v. DOJ, 73 F.3d at 389 (explaining that an agency "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents.").

[8]      Moreover, plaintiff did not suggest that ICE use these alternative search terms when it appealed ICE's determination. See Defs. Opp. & Mot. at 12; see also Pl. Mot. at Ex. 60 [Dkt. No. 26-62]. In considering the reasonableness of ICE's November 2021 search, the Court cannot consider plaintiff's argument—raised for the first time more than four years after ICE completed its search—that there were other search terms that ICE should have used.

were reasonably calculated to uncover responsive documents.  See Bigwood v. DOD, 132 F.

Supp. 3d at 140 ("Where [an agency's] search terms are reasonably calculated to lead to

responsive documents, a court should neither 'micromanage' nor second guess the agency's

search.") (quoting Agility Pub. Warehousing Co. K.S.C. v. NSA, 113 F. Supp. 3d 313, 339

(D.D.C. 2015); see also Liberation Newspaper v. U.S. Dep't of State, 80 F. Supp. 3d 137, 146

(D.D.C. 2015) ("Where the agency's search terms are reasonable, the Court will not second

guess the agency regarding whether other search terms might have been superior.").

        In the Court's view, ICE has "show[n] that it made a good faith effort to conduct

a search for the requested records, using methods which can be reasonably expected to produce

the information requested."  Mobley v. CIA, 806 F.3d at 580.  And because plaintiff has failed to

"raise[ ] substantial doubt" as to the adequacy of ICE's search, Lamb v. Millennium Challenge

Corp., 334 F. Supp. 3d at 211, the Court finds that ICE's search was adequate.

B.  *CBP's and USCIS's Withholdings Were Proper Under FOIA Exemptions 6 and 7(C)*

        The Court next considers whether CBP and USCIS properly invoked FOIA

Exemptions 6 and 7(C).  Under FOIA, agencies must make "promptly available" records that are

"reasonably describe[d]" in a written request unless the records are exempt from disclosure.

See 5 U.S.C. §§ 552(a)(3)(A), 552(b).  To obtain summary judgment after invoking a FOIA

exemption, agencies must show that the records fall under the claimed exemption.  See Larson v.

U.S. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009).  Agencies must also make a "focused

and concrete" showing that disclosing the withheld records would cause foreseeable harm.

Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 370 (D.C. Cir. 2021) (citing 5 U.S.C.

§ 552(a)(8)(A)(i)(I)).  Agencies can make these showings by providing sufficiently detailed

declarations.  See Larson v. U.S. Dep't of State, 565 F.3d at 862.  "Ultimately, an agency's

justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Jud. Watch, Inc. v. DOD, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting ACLU v. DOD, 628 F.3d 612, 619 (D.C. Cir. 2011)).  Plaintiffs may rebut an agency's invocation of a FOIA exemption by providing "specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records" under the claimed exemption.  Span v. DOJ, 696 F. Supp. 2d 113, 119 (D.D.C. 2010).

　　　　　Under Exemption 6, an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Under Exemption 7, an agency may withhold "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  5 U.S.C. § 552(b)(7); see also Shapiro v. DOJ, 34 F. Supp. 3d at 95.  Both Exemption 6 and Exemption 7 "are aimed at safeguarding privacy interests, particularly in situations where disclosure could result in harm, harassment, or unwarranted stigma."  Am. First Legal Found. v. DOJ, Civil Action No. 22-1427 (RC), 2025 WL 2758222, at *9 (D.D.C. Sept. 26, 2025).  Where "law enforcement information regarding third parties is implicated," the third parties' "privacy interests are particularly difficult to overcome."  Blackwell v. FBI, 646 F.3d 37, 41 (D.C. Cir. 2011) (quoting Martin v. DOJ, 488 F.3d 446, 457 (D.C. Cir. 2007)).  And "the Supreme Court has made clear that requests for such third party information are strongly disfavored."  Martin v. DOJ, 488 F.3d at 457.

　　　　　To withhold materials properly under Exemption 7, an agency must show that the records at issue satisfy the requirements of one of the subparts of Exemption 7.  See Shapiro v.

DOJ, 34 F. Supp. 3d at 95 (citing Pratt v. Webster, 673 F.2d 408, 413 (D.C. Cir. 1982)).[9]

Exemption 7(C) protects from disclosure information in law enforcement records that "could

reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C.

§ 552(b)(7)(C). "Exemption 7(C) is more protective of privacy than Exemption 6" and sets a

lower bar for withholding information, ACLU v. DOJ, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting

DOD v. Fed. Lab. Rels. Auth., 510 U.S. 487, 496 n.6 (1994)), so courts generally limit FOIA

analyses to Exemption 7(C) when both exemptions are invoked. See Roth v. DOJ, 642

F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider Exemption 6 separately [where]

all information that would fall within the scope of Exemption 6 would also be immune from

disclosure under Exemption 7(C)); see also Jud. Watch, Inc. v. DOJ, 365 F.3d 1108, 1125

(D.C. Cir. 2004) ("the privacy inquiry of Exemptions 6 and 7(C) [is] essentially the same.").

Exemption 7(C) recognizes that the stigma of being associated with any law

enforcement investigation affords broad privacy rights to those who are connected in any way

with such an investigation unless a significant public interest exists for disclosure. See

Shapiro v. DOJ, 34 F. Supp. 3d at 95. In determining whether this exemption applies to

particular material, the Court must balance the interest in privacy of individuals mentioned in the

records against the public interest in disclosure. See id.; see also ACLU v. DOJ, 655 F.3d at 6

(quoting DOJ v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 776 (1989)). The privacy

---

[9]    To invoke Exemption 7, agencies must also make a threshold showing that the
records at issue were compiled for law enforcement purposes. See 5 U.S.C. § 552(b)(7); see also
Shapiro v. DOJ, 34 F. Supp. 3d at 95. Here, plaintiff "does not challenge that CBP satisfied
[this] threshold requirement for Exemption 7." Plaintiff's Response to Defendants' Statement of
Material Facts as to Which There Is No Genuine Dispute [Dkt. Nos. 37-1, 38-1] ¶ 56, Pl.'s
Response. Plaintiff also does not argue that USCIS failed to satisfy this threshold requirement.
See generally Pl. Reply & Opp. All that is left for this Court to resolve, then, is whether
disclosure of the records "could reasonably be expected to constitute an unwarranted invasion of
personal privacy" under Exemption 7(C). See 5 U.S.C. § 552(b)(7)(C).

interest at stake belongs to the individual, not to the government agency, see DOJ v. Reps. Comm. for Freedom of the Press, 489 U.S. at 763-65, and disclosure of the withheld information must "compromise a substantial, as opposed to a de minimis, privacy interest." Nat'l Ass'n of Home Builders v. Norton ("Norton"), 309 F.3d 26, 33 (D.C. Cir. 2002) (quoting Nat'l Ass'n of Retired Fed. Emps. v. Horner ("Horner"), 879 F.2d 873, 874 (D.C. Cir. 1989)). Where "no significant privacy interest is implicated (and if no other Exemption applies), FOIA demands disclosure." Horner, 879 F.2d at 874.  But if there is a substantial privacy interest at stake if the information is disclosed, then the Court must "balance the . . . privacy interest against the public interest in disclosure." Elec. Priv. Info. Ctr. v. DOJ, 18 F.4th 712, 718 (D.C. Cir. 2021) (quoting Nat'l Archives & Recs. Admin. v. Favish, 541 U.S. 157, 171 (2004)).

When considering the public interest in disclosure, courts assess the extent to which disclosure would serve FOIA's core purpose of "contribut[ing] significantly to public understanding of the operations or activities of the government." Norton, 309 F.3d at 33 (quoting DOD v. Fed. Lab. Rels. Auth., 510 U.S. at 495); see also DOJ v. Reps. Comm. for Freedom of the Press, 489 U.S. at 773 (recognizing that the focus of the public interest analysis under FOIA is "the citizens' right to be informed about 'what their government is up to.'"). The public interest in disclosure may also include the extent to which the information would supplement the public's knowledge of how the government "handle[s] the investigation and prosecution of crimes that undermine the very foundation of our government." Citizens for Resp. & Ethics in Wash. v. DOJ, 746 F.3d 1082, 1093 (D.C. Cir. 2014).  It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest in disclosure must be significant.  See Shapiro v. DOJ, 34 F. Supp. 3d at 95 (citing Nat'l Archives & Records Admin. v. Favish, 541 U.S. at 172).

Applying the Exemption 7(C) analysis, the Court finds that CBP and USCIS properly withheld information pursuant to Exemption 7(C).

1. Privacy Interest

CBP and USCIS argue that confirmation of the very existence or non-existence of records relating to the third-party individuals mentioned in plaintiff's request—specifically, whether CBP or USCIS has records that mention Zarrab—is itself information subject to Exemptions 6 and 7(C). See Defs. Opp. & Mot. at 24. CBP therefore declined to "confirm or deny for which individual(s) listed in [p]laintiff's request it located responsive records or how many responsive records were located, as doing so would itself betray the privacy interests protected by Exemptions 6 and 7(C)." Id. at 19.[10] USCIS, for its part, issued a Glomar response in conjunction with Exemption 6, and now also invokes Exemption 7(C). See id. at 24.

CBP argues that its response was warranted under Exemptions 6 and 7(C) because "members of the public are likely to draw adverse inferences from the mere fact that an individual is mentioned in the files of a law enforcement agency such as CBP, as this may cast the individual in an unfavorable or negative light." Defs. Opp. & Mot. at 28 (citing Howard Decl. ¶ 51). Specifically, the "release of information about third parties" mentioned in CBP's records "could cause unsolicited and unnecessary attention or harassment to be focused on [those

---

[10]     Plaintiff asserts that "CBP waived its right to assert a Glomar response when, in October 2022, it advised that its search had 'produced records responsive to [plaintiff's] request.'" Pl. Mot. at 17 (quoting id. at Ex. 47) (emphasis in original). CBP concedes that "it admitted that a search was conducted, and that responsive records were located," Defs. Opp. & Mot. at 19 (citing Howard Decl. ¶¶ 25, 36, 37, 38), but argues that it "has not officially acknowledged the existence or nonexistence of responsive records as to any of the particular persons identified in the FOIA request." Id. The Court concludes that even though CBP has acknowledged the existence of responsive records, that admission is immaterial because CBP did not identify the individuals mentioned in those responsive documents, and properly withheld the responsive documents in their entirety pursuant to Exemptions 6 and 7(C).

third parties].” Id. (citing Howard Decl. ¶ 51).  And because CBP is the “law enforcement agency charged with protecting the U.S. border, [it] maintains sensitive personal information regarding individuals CBP encounters, and even acknowledging the existence of records related to third parties, such as the type or number of records that CBP maintains, could lead to adverse inferences regarding, and harassment of, the subject third party.”  Id. (citing Howard Decl. ¶ 51). CBP contends that “[t]he individuals addressed in records maintained by CBP” therefore “have strong privacy interests in not having their personal information disclosed without their authorization in response to FOIA requests.”  Id. (citing Howard Decl. ¶ 51).[11]

As for USCIS, it argues that it properly issued a Glomar response and denied plaintiff’s request in its entirety pursuant to Exemption 6—and now, Exemption 7(C)—to withhold information regarding whether or not USCIS maintains records for Zarrab.  Defs. Opp. & Mot. at 29 (citing Panter Decl. ¶ 35).  In denying plaintiff’s request, USCIS reasoned that “even acknowledging the existence of records for these individuals by USCIS would result in harm to an interest protected under Exemptions 6 and 7(C).”  Id. (citing Panter Decl. ¶ 35). Specifically, USCIS determined that “disclosing that [it] maintains records for [Zarrab] (if that were the case) would reveal [his] association with USCIS, thereby signifying that [he is] not [a] U.S. Citizen[ ] and/or that [he is] seeking immigration benefits on behalf of [himself] or others.” Id. (citing Panter Decl. ¶ 36).  Because plaintiff’s request “made clear” that Zarrab “served as [a] government witness[ ] in a sanctions evasion case . . . as part of a cooperation agreement,”

---

[11]     CBP further argues that disclosure of the information requested by plaintiff would implicate the privacy interests of other third parties, including law enforcement personnel. See Defs. Opp. & Mot. at 27-28.  But plaintiff counters that CBP “can easily redact the names of these employees, rather than withhold the documents wholesale.”  Pl. Mot. at 19 n.43.  Plaintiff asserts that “[h]ere, Zarrab’s privacy interests drive the issue.”  Pl. Reply & Opp. at 7.

USCIS determined that Zarrab has "a substantial privacy interest in the non-disclosure of whether USCIS maintains records pertaining to them." Id. at 30-31 (citing Panter Decl. ¶ 40).

USCIS further determined that disclosure would undermine Zarrab's confidence that his "personal information would be protected—which is critical when individuals serve as government witnesses." Defs. Opp. & Mot. at 31 (citing Panter Decl. ¶ 40). "Further, bad actors would be able to use the information to determine [Zarrab's] immigration status and/or whether [he] sought immigration benefits." Id. (citing Panter Decl. ¶ 40). USCIS claims that "[t]his information may be used to subject [Zarrab] to intimidation, harassment, unwarranted contact, reprisal for [his] testimony or involvement as a government witness, or even physical harm." Id. (citing Panter Decl. ¶ 40). Lastly, USCIS argues that disclosure would allow "bad actors to locate [Zarrab] by ascertaining (depending on the response or records) whether [he] intend[s] to stay in the United States or reside elsewhere." Id. (citing Panter Decl. ¶ 40).

Plaintiff counters that "Zarrab's privacy interest in his immigration records is minimal." Pl. Mot. at 19. First, plaintiff maintains that "Zarrab is a public figure who has already voluntarily thrust his private life—and immigration status—into the public sphere through conduct, including agreeing to testify at [a] high-profile trial." Id. at 20. Plaintiff argues that information about Zarrab's immigration status "is already in the public domain," and he therefore "ha[s] no privacy interest in [that] information." Id. (quoting Citizens for Resp. & Ethics in Wash. v. DOJ, 840 F. Supp. 2d 226, 233 (D.D.C. 2012)). Plaintiff notes, for example, that Zarrab testified in open court that he is a citizen of Iran, Türkiye, and North Macedonia, and that he entered the United States in March 2016. Id. (citing id. at Ex. 15 [Dkt. No. 26-17]. Plaintiff notes that Zarrab was granted authorization to work in the United States, see id. (citing id. at Ex. 33 [Dkt. No. 26-35]), and offers a news article discussing CBP's alleged involvement

in Zarrab's arrest when he entered the United States.  See id. (citing id. at Ex. 12 [Dkt.

No. 26-14]).  Lastly, plaintiff notes that "Zarrab publicly pleaded guilty to multiple felonies,

which typically require deportation."  Id. "Given these circumstances," plaintiff argues,

"Zarrab's "privacy interest[ ] with respect to his immigration records is negligible."  Id.

        The Court has carefully considered these arguments, but finds that Zarrab has a

substantial privacy interest in his immigration records.  First, the D.C. Circuit has "consistently

supported nondisclosure of names or other information identifying individuals appearing in law

enforcement records, including . . . witnesses [and] informants."  Schrecker v. DOJ, 349

F.3d 657, 661 (D.C. Cir. 2003).  And when "law enforcement information regarding third parties

is implicated," as it is in this case, the third parties' "privacy interests are particularly difficult to

overcome."  Blackwell v. FBI, 646 F.3d at 41 (quoting Martin v. DOJ, 488 F.3d at 457).

        Second, even if plaintiff is correct that Zarrab is a "public figure," see Pl. Mot.

at 20, Zarrab's privacy interest in his immigration records is not "so diminished by his public

statements as to be de minimis."  Heritage Found. v. DHS, 754 F. Supp. 3d 73, 79

(D.D.C. 2024).  "Like any foreign national," Zarrab "has a legitimate privacy interest in his

immigration status."  Id.; see also Bales v. U.S. Dep't of State, Civil Action No. 18-2779

(RC), 2020 WL 1078854, at *5 (D.D.C. Mar. 6, 2020) (recognizing that several "Afghan

witnesses" who testified in a military court proceeding maintained a "privacy interest in

information pertaining to their immigration status and activities.").  Though plaintiff makes

much of Zarrab's public admission that he is a citizen of Iran, Türkiye, and North Macedonia,

and that he entered the U.S. in March 2016, see Pl. Mot. at 20, these public statements about his

nationality and international travel "did not disclose, and therefore did not eliminate his interest

in keeping private, specific information regarding his immigration status."  Heritage Found. v.

DHS, 754 F. Supp. 3d at 79 (citing Behar v. DHS, 39 F.4th 81, 93 (2d Cir. 2022) (recognizing

that "Exemption 7(C) requires only that the agency establish that the privacy interest protected

by the exemption is an interest in avoiding disclosure of personal matters and keeping personal

facts away from the public eye.") (internal citations and quotations omitted)).  Defendants

therefore have demonstrated that Zarrab retains a privacy interest in his immigration records.

### 2.   Public Interest

Plaintiff argues that the public has a "substantial interest" in the disclosure of the

requested records.  See Pl. Mot. at 22.  Recall that with respect to FOIA exemptions, "[t]he

public interest" that courts must weigh "is the extent to which disclosure advances the basic

purpose of the [FOIA] to open agency action to the light of public scrutiny."  ACLU v. DOJ, 655

F.3d at 6.  Plaintiff contends that "the public has a strong interest in understanding how and why

their government allowed a man with a far-worse-than-checkered past (and perhaps present) to

stay [in the United States] for" so long.  Pl. Mot. at 23 (quoting Muchnick v. DHS, 225 F.

Supp. 3d 1069, 1077 (N.D. Cal. 2016)).  Plaintiff asserts that "release of Zarrab's records will

reveal whether this country's immigration agencies fulfilled their duties" given that, "[w]ith

respect to Zarrab, . . . it is public knowledge that U.S. authorities have not deported him despite

his pleading guilty to a slew of federal offenses that could subject him to decades in prison."  Id.

Plaintiff asserts that though CBP's and USCIS's handling of Zarrab's case is just one data point

regarding the agencies' performance of their duties, "Zarrab's file will shed light on whether the

'prominent' and financially connected 'are subjected to the same investigative scrutiny and

prosecutorial zeal as' those who are not."  Id. at 25 (quoting Citizens for Resp. & Ethics in

Wash. v. DOJ, 746 F.3d at 1094). Plaintiff argues that if defendants "have exercised discretion in

an unfair way by allowing an admitted noncitizen felon to live among the American public while other immigrants are deported for much lesser offenses, the public has a right to know why." Id.

Defendants counter that "[i]n most third-party FOIA requests, including this matter, there is no discernable public interest in disclosure of a particular individual's immigration information" because such information "would not shed enough light on an agency's conduct to overcome the individual's privacy interest in the nondisclosure of their information." Defs. Opp. & Mot. at 39 (quoting Panter Decl. ¶ 48); see also Howard Decl. ¶ 50 (stating that disclosure of plaintiff's requested information "would also not shed light on the actions of CBP," therefore there "is no public interest in the disclosure" of the information.).

After weighing Zarrab's privacy interest in his immigration records against the public interest in disclosure of those records, the Court agrees with defendants that the latter does not outweigh the former. As Judge Carl Nichols of this district explained in Heritage Found. v. DHS, 754 F. Supp. 3d 73, "[p]ublic disclosure of records about a single admission of a foreign national in the circumstances described above would provide the public, at best, limited information about [CBP's and USCIS's] general policy in admitting aliens." Id. at 80. Moreover, "the marginal public benefit of knowing that limited information is outweighed by the privacy interest [Zarrab] retains in his immigration status and records." Id.; see also DOD v. Fed. Lab. Rels. Auth., 510 U.S. at 496 (explaining that the public interest "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."); Webster v. FBI, Civil Action No. 24-387 (CRC), 2025 WL 2144099, at *5 (D.D.C. July 29, 2025) (finding that the disclosure of whether or not the FBI investigated one individual "would reveal nothing about FBI investigations generally," and therefore "would not 'contribut[e] significantly to public

understanding of the operations or activities of the government.'") (quoting Consumers'
Checkbook Ctr. for the Study of Servs. v. HHS, 554 F.3d 1046, 1051 (D.C. Cir. 2009)).

   To support its assertion that the public interest in disclosure of one individual's
immigration records may sometimes outweigh the individual's privacy interest in those records,
plaintiff points to Judge Charles Breyer's opinion in Muchnick v. DHS ("Muchnick"), 225 F.
Supp. 3d 1069.  There, the plaintiff sought immigration records for the former coach of the Irish
Olympic swim team, George Gibney, who was charged with multiple counts of sexual assault of
young swimmers.  See id. at 1073.  After the Irish Supreme Court held that the statute of
limitations had run on his crimes, Gibney left Ireland and moved to Florida.  See id.  Gibney's
alleged crimes were widely reported, and plaintiff sought Gibney's immigration records "to
uncover how American authorities allowed an alleged sexual predator to enter and reside in the
United States despite the scandal swirling around him in his native Ireland."  Id.  In balancing
Gibney's privacy interest in his immigration records with the public interest in the disclosure of
those records, Judge Breyer held that Gibney's privacy interests were diminished because "[t]he
world already knows about the sexual abuse allegations facing Gibney, lewd as they are."  Id.
at 1077.  As for the public's interest, Judge Breyer found that although plaintiff's request sought
information solely about one individual, the requested information would "shed[ ] light on
multiple decisions by multiple DHS personnel,"  id. at 1076, would "detail[ ] what they knew
about Gibney's past and when they knew it," and would "shed light on DHS's performance of its
statutory duties and most certainly [would] let[ ] citizens know what their government is up to."
Id. at 1077 (internal quotation marks omitted).  For those reasons, Judge Breyer granted
summary judgment in favor of the plaintiff, holding that the public interest in disclosure of the
immigration records outweighed Gibney's diminished privacy interests.  See id. at 1078.

In Heritage Found. v. DHS, Judge Nichols considered and rejected a similar plaintiff's reliance on Muchnick. See 754 F. Supp. 3d at 80-81. Unlike in Muchnick—where Judge Breyer held that Gibney had virtually no privacy interest in his records, see 225 F. Supp. 3d at 1076—Judge Nichols found that the Duke of Sussex "retain[ed] a privacy interest" in his immigration records and immigration status, despite his position as both a foreign national and a public figure. Heritage Found. v. DHS 754 F. Supp. 3d at 80-81. And unlike in Muchnick—where Judge Breyer held that the public has a strong interest in understanding why their government allowed an alleged criminal to remain in the United States, see 225 F. Supp. 3d at 1076—Judge Nichols found that the public did not have a strong interest in the disclosure of the Duke of Sussex's immigration records because information about "a single admission of a foreign national" does little to advance the public's knowledge of an agency's "general policy in admitting aliens." Heritage Found. v. DHS, 754 F. Supp. 3d at 80. Judge Nichols therefore held that Muchnick was inapposite to the case before him. See id. at 81. Rather than reiterate Judge Nichols' well-reasoned analysis, the Court will simply state that Muchnick is inapposite to the instant case for the same reasons identified by Judge Nichols.

### 3. Foreseeable Harm

Finally, CBP and USCIS must show that disclosing the withheld information would cause foreseeable harm. See Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th at 369 (citing 5 U.S.C. § 552(a)(8)(A)(i)(I)). The Court finds that CBP and USCIS have provided detailed, context-specific declarations explaining how disclosure of plaintiff's requested information, or even acknowledgment of the existence or non-existence of plaintiff's requested information, would lead to negative consequences for Zarrab and would deter individuals from engaging with law enforcement in the future. See Howard Decl. ¶ 51;

Panter Decl. ¶¶ 35, 36, 40.  The Court therefore finds that CBP and USCIS have established the foreseeable harm necessary to justify their withholdings under Exemptions 6 and 7(C).  See Ball v. United States Marshals Serv., Civil Action No. 19-1230 (JEB), 2021 WL 4860590, at *9 (D.D.C. Oct. 19, 2021) (explaining that "[w]hen Exemption 7(C) is invoked . . . the justifications for non-disclosure generally are also sufficient evidence of foreseeable harm."); see also Amiri v. Nat'l Sci. Found., Civil Action No. 20-2006 (TNM), 2021 WL 4438910, at *13 (D.D.C. Sept. 28, 2021) (noting that FOIA's foreseeable harm requirement may be met if "'the very context and purpose of' the withheld material 'make[s] the foreseeability of harm manifest.'") (quoting Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th at 372) (alteration in original).

In sum, the public interest in plaintiff's requested information is minimal and does not outweigh Zarrab's significant privacy interest in the information.  In addition, CBP and USCIS have satisfied FOIA's foreseeable harm requirement.  Exemptions 6 and 7(C) therefore both apply to the requested records.  And because disclosing whether USCIS's records mention Zarrab would clue the public in to information that they do not know about Zarrab, as discussed above, USCIS's disclosure of that information would infringe on Zarrab's privacy interest in his immigration records, without a sufficiently strong public interest in them.  The Court therefore grants summary judgment in favor of USCIS as to its Glomar response.

### C.  CBP and USCIS Met Their Segregability Obligations

To support its assertion that CBP and USCIS failed to conduct adequate segregability analyses, plaintiff simply states that "[i]t defies credibility to claim that all documents and all portions of [the withheld] documents fall within [a FOIA] exemption." Pl. Mot. at 29.  Even if some portions of responsive documents are exempt from disclosure under FOIA, agencies must still "consider whether partial disclosure of information is possible" even if

full disclosure is not.  Leopold v. DOJ, 94 F.4th 33, 37 (D.C. Cir. 2024) (quoting 5 U.S.C.

§ 552(a)(8)(A)(ii)).  Agencies must also take "reasonable steps" to "segregate and release

nonexempt information."  Id.  To satisfy this burden, agencies "need only show that the

information [they] ha[ve] withheld cannot 'reasonably' be further segregated."  Ezeah v. FBI,

Civil Action No. 24-00076 (TNM), 2025 WL 2377964, at *6 (D.D.C. Aug. 15, 2025) (quoting

Sussman v. Marshals Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007)).

        The Court finds that CBP and USCIS have met this burden through their

proffered declarations.  CBP attests that its personnel reviewed each responsive page line-by-line

to identify any information exempt from disclosure, and no reasonably segregable portions of the

relevant records were located.  See Howard Decl. ¶ 55.  And because USCIS properly issued a

Glomar response, it did not need to "perform any analysis to identify segregable portions" of any

records or documents.  Lindsey v. FBI, 271 F. Supp. 3d 1, 4 (D.D.C. 2017) (quoting People for

the Ethical Treatment of Animals v. NIH, 745 F.3d 535, 540 (D.C. Cir. 2014)).

### III.   CONCLUSION

        For the reasons discussed above, the Court finds that:  (i) ICE conducted an

adequate search for responsive records;  (ii) CBP and USCIS properly withheld information

pursuant to FOIA Exemptions 6 and 7(C); and (iii) CBP and USCIS have met their segregability

obligations.  Accordingly, it is hereby

        ORDERED that defendants' Cross-Motion for Summary Judgment [Dkt. No. 30],

as corrected by their ERRATA Cross-Motion for Summary Judgment [Dkt. No. 32] is

GRANTED; it is

FURTHER ORDERED that plaintiff's Motion for Partial Summary Judgment

[Dkt. No. 26] is DENIED.

SO ORDERED.

Paul L. Friedman

PAUL L. FRIEDMAN
United States District Judge

DATE:  1 | 9 | 26

33